Alexander Chen [SBN 245798]
Alexc@inhouseco.com
Katja M. Grosch [SBN 266935]
kmg@inhouseco.com
Theodore S. Lee [SBN 281475]
Tlee@inhouseco.com
**INHOUSE CO. LAW FIRM**
7700 Irvine Center Drive, Suite 800
Irvine, CA 92618
Telephone:  949-250-1555
Facsimile:   714-882-7770

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **TOPFIRE LIMITED**, a foreign company; **HK MIUSON INTERNATIONAL CO., LIMITED**, a foreign company; **JIANGGONGXIUSHENZHENGUOJI-MAOYIYOUXIANGONGSI**, a foreign company; foreign company; and **SHENZHENSHILINGBINQIPEI-YOUXIANGONGSI**, a foreign company.<br><br>        Plaintiffs,<br><br>v.<br><br>**BENJAMIN D. COOK.**, an individual; and **DOES 1 through 10**, inclusive.<br><br>Defendants.<br><br>_____<br><br>AND RELATED CROSS-ACTIONS | Case No. 2:23-cv-02503-DAD-JDP<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF** |

**TABLE OF CONTENTS**

I.     INTRODUCTION………………………………………………..   1

II.    OVERVIEW OF PATENT ……………………………………….   1

III.   PROSECUTION HISTORY AND PRIOR ART………………..………   3

IV.    LEGAL STANDARD…………………………………………….   5

V.     QUALIFICATIONS OF A PERSON OF ORDINARY SKILL
       IN THE ART………………………………………………….   7

VI.    AGREED UPON CONSTRUCTIONS………………..……………   8

VII.   RESPONSES TO CONSTRUCTION OF DISPUTED CLAIM TERMS…...   8

       1.   Disputed Claim Term/Phrase No. 1 – "cylindrical"………………….   9

       2.   Disputed Claim Term/Phrase No. 2 – "collar"………………………   11

       3.   Disputed Claim Term/Phrase No. 3 – "include a plurality of tabs"…….   13

       4.   Disputed Claim Term/Phrase No. 4 – "adapter base"…………………   13

       5.   Disputed Claim Term/Phrase No. 5 – "attachment member"………….   14

       6.   Disputed Claim Term/Phrase No. 6 – "a number of mounting holes"….   14

       7.   Disputed Claim Term/Phrase No. 7 – "a number of protrusions"……...   18

       8.   Disputed Claim Term/Phrase No. 8 – "mounting holes"……………….   23

       9.   Disputed Claim Term/Phrase No. 9 – "the hole of the at least one
            protrusion of the number of protrusions"…………………………….   23

       10.  Disputed Claim Term/Phrase No. 10 – "spacer"……………………….   24

VIII.  CONCLUSION………………………………………………..   25

INHOUSE CO. LAW FIRM

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**

# TABLE OF AUTHORITIES

**Case Law**

*AK Steel Corp.  v. Sollac*
    344 F.3d 1234, 1243 (Fed. Cir. 2003)……………………………………… 22

*CCS Fitness, Inc. v. Brunswick Corp.*
    288 F.3d 1359, 1366 (Fed. Cir. 2002)……………………………………… 5

*Chimie v. PPG Indus., Inc.*
    402 F.3d 1371, 1384 (Fed. Cir. 2005)……………………………………… 6

*CVI/Beta Ventures, Inc. v. Tura LP*
    112 F.3d 1146, 1586 (Fed. Cir. 1997)……………………………………… 8, 22

*Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*
    257 F.3d 1364, 1373 (Fed. Cir. 2001)……………………………………… 7

*Embrex, Inc. v. Serv. Eng'g Corp.*
    216 F.3d 1343, 1347 (Fed. Cir. 2000)……………………………………… 5

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*
    535 U.S. 722, 730–31 (2002)……………………………………………… 5

*Honeywell Int'l, Inc. v. ITT Indus.*
    452 F.3d 1312, 1319 (Fed. Cir. 2006)……………………………………… 16, 20

*Innogenetics, N.V. v. Abbott Labs.*
    512 F.3d 1363, (Fed. Cir. 2008)…………………………………………… 7

*Interactive Gift Express, Inc. v. CompuServe Inc.*
    256 F.3d 1323, 1331 (Fed. Cir. 2001)……………………………………… 5

*Marchon Eyewear v. Tura LP*
    522 U.S.1109 (1998)…………………………………………………….... 22

*Markman v. Westview Instruments, Inc.*
    52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd 517 U. S. 370 (1996)……….. 5, 7, 23

*Masco Corp. v. United States*
    303 F.3d 1316. 1324. 64 USPQ2d 1182.1186 (Fed. Cir. 2002)………………….. 5

*Microsoft Corp. v. Multi-Tech Sys., Inc.*
    357 F.3d 1340. 1350.  69 USPQ2d 1815 ( Fed. Cir. 2004)
    cert denied. 125 S. C. 61 (U.S. Oct. 4, 2004)………………………………….. 5, 6

*Monsanto Co.  v. Bayer Bioscience N.V.*
    363F.3d 1235, 1245 (Fed. Cir. 2004)……………………………………… 22

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**

INHOUSE CO. LAW FIRM

*Netword, LLC v. Central Corp.*
        242 F.3d 1347, 1352 (Fed. Cir. 2001)…………………………………… 12, 16, 20

*On-Line Technologies v. Bodenseewerk Perkin-Elmer Gmbh*
        386 F.3d 1133, 1138(2004)…………………………………………… 23

*Pfizer v. Teva Pharm.*
        429 F.3d 1364, 1374 (Fed. Cir. 2005)…………………………………… 16

*Phillips v. AWH Corp.*
        415 F.3d 1303, 1312 (Fed. Cir. 2005)…………………………………… 5-7, 9, 22

*Vitronics Corp. v. Conceptronic, Inc.*
        90 F.3d 1576, 1580 (Fed. Cir. 1996)…………………………………... 5, 7, 11

**Statutes**
        35 U.S.C. § 103…………………………………………………………... 4




INHOUSE CO. LAW FIRM

INHOUSE CO. LAW FIRM

Pursuant to the Court's Scheduling Order ("Scheduling Order") (ECF No. 24), Plaintiffs Topfire Limited, HK Miuson International Co., Limited, Jianggongxiushenzhenguojimaoyiyouxiangongsi, and Shenzhenshilingbinqipeiyouxiangongsi (collectively, "Plaintiffs") submit the following Response to Defendant's Opening Claim Construction Brief in the above-entitled matter.

## I.    INTRODUCTION

Defendant, Benjamin D. Cook ("Cook" or "Defendant"), is the owner of U.S. Patent No. 11,772,539 (the "539 Patent" or the "patent-in-suit") (See Declaration of Alexander Chen "Chen Decl." Exhibit 1), which is a continuation to Nonprovisional application Ser. No. 17/592,418, filed February 3, 2022 with a U.S. Patent No. 11,660,995 (the "995 Patent" or "Parent") (Chen Decl. Exhibit 2), which claims priority to provisional application no. 63/146,581, filed on February 6, 2021.

Defendant alleges that Plaintiffs copied Defendant's cupholder and asserts against Plaintiffs claims 1 through 7 of the 539 Patent, directed to a cupholder adapter. Defendant's allegation of infringement, however, is an attempt to impermissibly expand the scope of the 539 Patent to unfairly eliminate competition. As will be demonstrated herein, Plaintiffs' cupholder design uses a completely different internal mechanism than that of Defendant's 539 Patent. In fact, Plaintiffs' cupholder design allows for more adjustments to the rotation of the cupholder relative to the adapter base.

## II.    OVERVIEW OF THE PATENT

U.S. Patent No. 11,772,539 describes "[a] cupholder adapter configured for use with an existing cupholder on a vehicle" Chen Decl. Exhibit 1, Abstract. As an initial matter, Defendant incorrectly identified in its Claim Construction Brief ("Opening Brief") that the cupholder adapter of the 539 Patent comprises of "three (3) main parts: the large cupholder, an attachment member, and an adapter base." Dkt. No. 34 at 5. To avoid any potential confusion, Defendant's mislabeled figure is reproduced below with the correct label:



**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**

In its Opening Brief, Defendant confuses the "attachment member" with the "spacer," as shown above in its figures. Defendant also repeatedly refer to the "spacer" as the "attachment member" and further stated that "multiple attachment members can be attached to one another to allow the cupholder to extend to a higher position." Dkt. No. 34 at 6. This is incorrect. The *spacer* can be attached to one another to extend the height of the cupholder. The attachment member does not have such a function; instead, the attachment member provide rotational support and allow cupholder to have multiple configuration, as explained below.

The cupholder disclosed in the 539 Patent has a collar with multiple tabs to hold beverage containers of varying sizes. The spacer positioned between the cupholder and the adapter base enables the adjustment of the distance between the two, thereby adjusting the height of the cupholder adapter. The adapter base has multiple legs that can expand and retract to fit existing cupholders in different vehicles.

The attachment member (110) is located on the bottom of the cupholder (100) that couples the cupholder (100) to adapter base (200) via the spacer (202), as shown below:



FIG. 8

FIG. 10

FIG. 11

The multiple mounting holes (111) of the attachment member (110) enable the cupholder to have multiple configurations: "(a) the cylindrical cupholder's axis is aligned with the adapter base's axis; and, (b) the cylindrical cupholder's axis is not aligned with the adapter base's axis." 539 Patent, at 2: 36-39. In particular, it is the fact that there is more than one mounting hole (111) on the attachment member (110) and more than one protrusion (210) that allows the cupholder to have at least two configurations. Without the second mounting hole, the cupholder would only have one configuration. The specification of the 539 Patent clearly explains the necessity of having multiple mounting holes and the role the mounting holes play in providing multiple configurations:

INHOUSE CO. LAW FIRM

> "the number of mounting holes of the attachment member enables
> multiple configuration of the cylindrical cupholder in relation to the
> adapter base including an aligned configuration and off-set configuration."

Chen Decl. Exhibit 1, at 2:8-12. Additionally, as shown above, at least a second mounting hole (111) of the attachment member (110) and at least a second corresponding protrusion (210) couple to provide support to the cupholder (100) to sit on top of the adapter base (200): "[w]hen the fastener is used, the other protrusions provide support with their connection to the corresponding mounting holes." Chen Decl. Exhibit 1, 5:59-61. If there is only one mounting hole or one corresponding protrusions, the cupholder could have not multiple configurations and would rotate freely. In sum, at least two mounting holes with at least two corresponding protrusions are required, because they are needed to provide an alternative configuration and to provide support to the cupholder.

## III.    PROSECUTION HISTORY AND PRIOR ART

To fully understand and determine whether Plaintiffs' cupholders infringe upon the 539 Patent, a review of its prosecution history and selected prior art and that of the Parent, the 995 Patent, is not only relevant but crucial in understand the state of the art.  It is important to note that this field is highly saturated, with numerous iterations of cupholder and adapter base designs and prior art. During prosecution of the 995 Patent, the Patent Office rejected claim 1 as anticipated by U.S. Patent No. 11,254,253 in an March 3, 2023 Office Action (the "Office Action") See Chen Decl. Exhibit 3.

Specifically, U.S. Patent No. 11,254,253 ("Fan") (Chen Decl. Exhibit 4) discloses the same three components that are also found in both the parent and the 539 Patent: the cylindrical cupholder (2), the spacer (19), and the adapter base (1). Chen. Decl. Exhibits 4.

*Fan* also discloses a screw or fastener (16) that extends through the cupholder (2), the single mounting hole on the attachment member equivanlent (22), and the adapater base (1). In *Fan*, the crylindrical cupholder's axis is aligned with the adapter base's axis. Chen Decl. Exhibit 4.

INHOUSE CO. LAW FIRM



Accordingly, claim 1 of the 995 Patent was rejected under 35 U.S.C. 103 as being unpatentable over to *Fan*. See Chen Decl. Exhibit 4 at 4-6.

In response to the Office Action, the patentee amended claim 1 of the 995 Patent to include the limitations of dependent claims 5 and 6 to overcome *Fan*. In particular, dependent claims 5 and 6 include, in part, the following:

> wherein the attachment member comprises **a number of mounting holes** and the mounting spacer **comprises a number of protrusions** including a central protrusion having a hole, wherein a **mounting hole of the number of mounting holes** is configured to align with the central protrusion such that a fastener can extend through the mounting hole and the hole of the central protrusion.

See Chen Decl. Exhibit 5 (March 13, 2023 Response to Office Action, Amendments to the Claims) (emphasis added). In particular, to distinguish the cupholder adapter described in the 995 Patent from *Fan*, the patentee amended its Claim 1 such that it discloses two or more mounting holes on the attachment member with two or more corresponding protrusions on the adapter base. As such, the rotatable cupholder in the 995 Patent is secured by the second mounting hole and its corresponding

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**

INHOUSE CO. LAW FIRM

second protrusion. In contract, the cupholder in *Fan,* with only one mounting hole and one corresponding protrusion, rotates freely. Consequently, claim 1 of the 995 Patent differs from *Fan* in that the cupholder of the 995 Patent comprises of at least a second mounting holes and a second corresponding protrusions, whereas *Fan* teaches only one mounting hole and one corresponding protrusion.

The Patent Office allowed claim 1 of the 995 Patent after considering the amendment and argument. Thereafter, Patentee filed a continuation application that matured into the 539 Patent, the patent-in-suit. The only different between the parent and the patent-in-suit is that the parent discloses a center configuration in which the fastener is extended through the mounting hole and the hole of the central protrusion, whereas the 539 Patent discloses fastener that extends through any of the two or more mounting holes.

## IV.   LEGAL STANDARD

The patent monopoly "is a property right; and like any property right, its boundaries should be clear. This clarity is essential to promote progress, because it enables efficient investment in innovation. A patent holder should know what he owns, and the public should know what he does not." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 730–31 (2002). Thus, the purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd 517 U. S. 370 (1996). "The claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).

Claim construction is a question of law solely within the province of the Court. See *Markman*, at 970-971 (Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370 (1996). The focus of claim construction is at all times centered on the language of the claims. *Interactive Gift Express, Inc. v. CompuServe Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000).

INHOUSE CO. LAW FIRM

Usually, the words of a claim "'are generally given their ordinary and customary meaning[,]' . . . [which] is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-1313 (Fed. Cir. 2005) (en banc) (citation omitted). There are two exceptions to this general rule: (1) when a patentee sets out a definition and acts as his own lexicographer; or (2) when the patentee disavows the full scope of a claim term, either in the specification or during prosecution. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1580 (Fed. Cir. 1996). To act as its own lexicographer, a patentee must "clearly set forth a definition of the disputed claim term" other than its plain and ordinary meaning. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). The Court should first look to the intrinsic evidence of record, namely, the patent itself, including the claims, the specification, and, if in evidence, the prosecution history." *Vitronics*, 90 F.3d 1576 *at* 1582 (Fed. Cir. 1996). The Federal Circuit has also examined parent, grandparent, and other related applications as part of the intrinsic evidence. *See Masco Corp. v. United States*, 303 F.3d 1316. 1324. 64 USPQ2d 1182.1186 (Fed. Cir. 2002): *see also Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340. 1350. 69 USPQ2d 1815 ( Fed. Cir. 2004) cert denied. 125 S. C. 61 (U.S. Oct. 4, 2004) (narrowing claim terms based on related patent prosecution history events occurring after the patent-in-suit issued and indicating the district court treated the related patent prosecution history as intrinsic evidence.

The most important inquiry is to look at the language of the claims themselves. *Id.* The words of a claim are generally construed according to their "ordinary and customary meaning." *Phillips*, 415 F.3d at 1312. A claim term's meaning "may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. "[T]he claims themselves provide substantial guidance as to the particular claim terms." Id. "[T]he context in which a term is used in the asserted claim" and the "[o]ther claims of the patent in question are useful for understanding the ordinary meaning." *Id.*

Beyond the claims themselves, the specification "is the single best guide to the meaning of the disputed terms." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, (Fed. Cir. 2008). The person of ordinary skill in the art is deemed to read the claim terms in the context of the patent as a whole, including the specification. *Phillips*, 415 F.3d at 1313. The patent's specification is "always highly

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**

INHOUSE CO. LAW FIRM

relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1315 (quoting *Vitronics*, 90 F.3d at 1582).

The court should also consider the patent's prosecution history, which is used to supply the proper context for claim construction. *Phillips*, 415 F.3d at 1317 ("Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent.").The prosecution history "represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation[,]" and for that reason, may lack "the clarity of the specification[.]" Id. When this occurs, the prosecution history is less useful for claim construction purposes. *Id.* During prosecution, a patentee may limit the scope of the invention by making the claim scope narrower than it would otherwise be according to the claim language itself. *Id.*; *see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution.").

Finally, courts may consider extrinsic evidence in construing claims, such as "expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. However, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Phillips*, 415 F.3d at 1318. Further, "heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." *Id.* at 1321. Thus, a court should not rely on extrinsic evidence in construing claims to contradict the meaning of claims discernable from examination of the claims, the written description, and the prosecution history. *See Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*, 257 F.3d 1364, 1373 (Fed. Cir. 2001); *Vitronics*, 90 F.3d at 1583. If intrinsic evidence mandates the definition of a term that is at odds with extrinsic evidence, courts must defer to the definition supplied by the former. *Dow Chem Co.* at 1373.

## V.    QUALIFICATIONS OF A PERSON OF ORDINARY SKILL IN THE ART

Given the field of invention of the 539 Patent, a person of ordinary skill in the art is a person having at least an undergraduate degree in mechanical engineering or comparable field of study, with 1-2 years of experience researching, designing, developing, and/or testing consumer products.

## VI. AGREED UPON CONSTRUCTIONS

The Parties have agreed to the following constructions for each of the claim terms and phrases listed in the Joint Claim Construction and Pre-Hearing Statement. Plaintiffs respectfully request that the Court adopts these constructions agreed to by the parties.

| Term / Phrase | Agreed Proposed Construction |
|---|---|
| legs | Plain and ordinary meaning |
| diameter of the adapter base | Plain and ordinary meaning |
| a fastener | Plain and ordinary meaning |
| expand and retract via rotation of the cupholder | Plain and ordinary meaning |
| aligned configuration | Plain and ordinary meaning |
| off-set configuration | Plain and ordinary meaning |
| screw gear | Plain and ordinary meaning |

## VII. RESPONSES TOCONSTRUCTION OF DISPUTED CLAIM TERMS

In the Joint Claim Construction and Pre-Hearing Statement, the parties dispute the proper construction of ten (10) separate claim terms and/or phrases. In an effort to respect the Court's time and to conserve judicial resources, however, Plaintiffs accept the plain and ordinary meaning on several of the disputed terms, as laid out below.

All of the disputed terms appear in Claim 1 of the 539 Patent. The asserted Claim 1 of the 539 Patent recites:

A cupholder adapter configured for use with an existing cupholder on a vehicle, the cupholder adapter comprising:

a **cylindrical** cupholder having a hollow internal volume;

a **collar** attached to a top portion of the **cylindrical** cupholder, wherein the collar includes a plurality of tabs extending perpendicularly into the hollow internal volume;

an adapter base coupled to the cylindrical cupholder, wherein the adapter base includes a plurality of legs configured to expand and retract such that the diameter of the adapter base is configured to expand from a minimum diameter to a maximum diameter;

an attachment member positioned on a bottom surface of the **cylindrical** cupholder, wherein the attachment member enables the coupling of the adapter base and the **cylindrical** cupholder; and,

INHOUSE CO. LAW FIRM

> wherein the attachment member comprises **a number of mounting holes** and the adapter base or a spacer comprises **a number of protrusions**, at least one protrusion of the number of protrusions having a hole, wherein a mounting hole of the number of mounting holes is configured to align with the hole such that a fastener can extend through the mounting hole and **the hole of the at least one protrusion of the number of protrusions**.

*Id.*, 7:36-8:17 (emphasis added to indicate disputed terms for construction).

In this case the most important interpretation is whether the term "a number of" in "**a number of mounting holes**" (disputed term #6) and "**a number of protrusions**" (disputed term #7) means "one or more" or "two or more." In view of the specification, the parent application, the office action issued, the response to the office action, the amended claims, and the surrounding claims, "a number of" can only mean "two or more."   Language used in surrounding claims, even when there is no dependent relationship, is another source of intrinsic evidence, and the Federal Circuit has stated that a given term should be construed the same in each claim in which the term is recited. *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1586 (Fed. Cir. 1997). "The claims themselves and the context of the surrounding words can be "highly instructive" in resolving the meaning of the term. *Phillips,* 415 F.3d 1303 at 1314.

Adopting the Defendant's construction, as demonstrated below, would result in inconsistency and potentially invalidity, given the prior art. Accordingly, Plaintiffs respectfully urge the Court to adopt Plaintiffs constructions for the reasons set forth below.

### 1. Disputed Claim Term/Phrase No. 1 – "cylindrical"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Having the approximate form of a cylinder including variations in diameter along the length of the cylinder. |

Plaintiffs believe that no construction is needed for this term, as the ordinary meaning of the word adequately expresses what is covered by the claim. Defendant, in contrast, has proposed that this claim be altered by adding words "approximate form" and "including variations in diameter long the length of the cylinder" to expand its meaning.

Defendant has not proposed a clarification of the word, but has instead grafted on qualifying word to expand the meaning of the term that has no support in the intrinsic record. Defendant is attempting to substitute the word "approximately" for the word "generally" in the specification. These

INHOUSE CO. LAW FIRM

two words, however, have distinct meanings: "generally" means "considering the whole of someone or something, and not just a particular part of him, her, or it;"[1] while "approximately" means "in an approximate manner" with "approximate" to mean "nearly correct or exact: close in value or amount but not precise."[2] The claim term "cylindrical" appears 31 times throughout the specification and claims without being defined—clearly, the term is self-evidence and the plain and ordinary meaning is sufficient. "Cylindrical" is a claim term that has a meaning that is "readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.

Defendant readily admits in its Opening Brief that "the term 'cylinder' is ordinarily defined as a geometric shape having parallel circular bases connected by straight parallel sides." Dkt. No. 34 at 12. Defendant proceeds to explain that "[s]uch ordinary definition requires the diameter of the cylinder along its length to be exactly the same at every point." Dkt. No. 34 at 12. Plaintiffs would readily agree to this "ordinary definition" as stated by Defendant.

Specification: Defendant argues the specification of the 539 Patent expressly states that "the cupholder comprises a generally cylindrical house…" and that "generally" is used to denote that the cupholder is not a perfect cylinder. Dkt. No. 34 at 13. Defendant's argument is a red herring.

In view of the specification, the cupholder is used to hold cups and other beverage containers. Therefore, given that most beverage containers are cylindrical in shape, the cupholder is, naturally, cylindrical in shape as well. However, in order to accommodate a variety of beverage containers, including those with a handle, the cupholder's cylindrical housing contains a gap to accommodate for the beverage handle. Therefore, the use of the word "generally" here in the specification is to account for the gap in the cylindrical housing. "In fact, had the Defendant quoted the complete sentence, it would be abundantly clear that the term 'generally cylindrical housing' refers specifically to the gap in the cupholder: "In one embodiment, the cup holder 100 comprises a generally cylindrical housing 101 having a ***gap*** 102 enabling the use of beverage containers having handles to be used." 539 Patent at 4:17-20. The term "generally cylindrical housing" is exclusively used in the context of discussing the necessity for a gap to accommodate beverage containers with handles. This term does not appear again

---

[1] https://dictionary.cambridge.org/us/dictionary/english/generally
[2] https:// www.merriam-webster.com/dictionary/approximate#h1

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**

INHOUSE CO. LAW FIRM

throughout the specification. It is evident that the patentee intended the term "generally" to address the gap in the cylindrical housing.

Without intrinsic support, the Defendant seeks to improperly broaden the definition of the term "cylindrical" using only extrinsic evidence, such as manufacturing practices and interpretations from other cases. First, Defendant argues that "standard manufacturing practice dictates the addition of a draft angle...[which] causes variations in the diameter of the cylinder along its length." Dkt. No. 34 at 12. Defendant contends that because of such manufacturing practice, the word "cylinder" should not be construed as a cylinder. Defendant is conflating the issue—the problem is not that standard manufacturing practices prevent a perfect cylinder; the issue is that the patent design specifically calls for a cylinder. Plaintiffs do not challenge that the Defendant's final manufactured product deviates from the 539 Patent design. However, Defendant cannot assert that deviations in its manufactured product warrant expanding the 539 Patent's scope to include manufacturing variations. Allowing this would mean all patents could be stretched to cover any manufacturing variations, regardless of whether they are disclosed in the patent.

Second, the Defendant attempts to introduce claim constructions from other cases involving different patents and products. Although other courts may have construed the same word in various cases, those claim constructions do not apply outside the context of those specific cases. Terms in different patents can have distinct meanings, making them irrelevant and inapplicable across different cases.

Defendant's proposed construction is incorrect because the intrinsic evidence does not support the inclusion of terms that would expand the meaning to encompass cupholders of other shapes. As explained above, the intrinsic evidence[3] supports the finding of the use of the word "generally cylindrical" to account for the gap of the cupholder, rather than to the shape of the cupholder.

### 2. Disputed Claim Term/Phrase No. 2 – "collar"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Having two or more integrated cantilever structure extending towards the center portion of the lip | A band to hold tabs in place |

A patentee may act as his own lexicographer by using the specification to define terms either expressly or "by implication." *Vitronics*, 90 F.3d at 1582. Here, the collar referenced in this invention is

---

[3] Ex. 1, FIGS. 1-3; Col.4:17-20

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**

INHOUSE CO. LAW FIRM

not just any collar that holds something together. The patentee specifically disclosed a collar that is "attached to a top portion of the cylindrical cupholder" and has multiple "tabs extending perpendicularly into the hollow internal volume." *Ex. 1, Abstract.* Defendant attempts to impermissibly expand the meaning of the term, when the term has already been defined by the patentee. Both the claim language and the specification support Plaintiffs' position that the "collar" should be construed more precisely as having two or more integrated tabs.

<u>Claim Language</u>: Claim 1 of the 539 Patent clearly describes a cupholder adapter comprising "a collar attached to a top portion of the cylindrical cupholder, <u>wherein the collar includes a plurality of tabs extending perpendicularly into the hollow internal volume</u>." See *Id.*, *Claim 1*.

<u>Specification</u>: FIGS. 1-3 and 22-24 are all the figures in the specification that depicts the collar and all of the figures depict the collar with the tabs integrated into the collar and extending perpendicularly into the center, hollow internal volume. In fact, even when the collar is removed and depicted as removed from the rest of the cupholder, as in FIGS. 2 and 3 below, the tabs are depicted as an integral part of the collar. Accordingly, the collar with the tabs is a whole, integrated, complete structure; the collar does not "hold tabs in place," as the Defendant would like to argue.



Defendant points to the specification that explains that the tabs can be of different sizes, widths, and lengths as support that the collar has the function of holding the tabs in place. However, the claims cannot enlarge what is patented beyond what the inventor has described in the specification as the claimed invention. *Netword, LLC v. Central Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001). Defendant's argument is unconvincing. Firstly, the specification notes the varying lengths, sizes, and widths of the

INHOUSE CO. LAW FIRM

tabs to emphasize their collective function in enabling the cupholder to accommodate a broader range of beverage containers: "The plurality of tabs includes tabs of different lengths and widths which enables and accommodates wide, tall, and narrow beverage containers during vehicle use." *Ex. 1, Abstract.* The specification further explains the use of different tabs on the collar:

> The plurality of tabs of differing lengths and widths are attached at the top of the cupholder via the collar and point horizontally inward toward the center area of the cupholder. Advantageously, as the tabs are of varying lengths, they are configured to promote stabilization of beverage containers, such as travel cups, water bottles, juice bottles, and carbonated beverage cans of varying widths. The shorter tabs are configured to stabilize cups and cans that are relatively wide. By contrast, the adjacent tabs that are long and extend further inward stabilize containers that are narrow and that might otherwise tip or rattle about while the vehicle is in motion.

*Id.*, 4:24-36. Referring to FIG. 1, it clearly illustrates that the cupholder with the collar and the different tabs as described in the specification, whereas FIGS 2 and 3 illustrates the collar by itself (e.g. removed from the cupholder), yet still with the integrated tabs of varying lengths, sizes, and widths. The specification and the illustrations are clear that the tabs of different lengths, sizes, and widths are already present. A user does not need to remove the collar and change out the tabs. The tabs of different lengths, sizes, and widths are already integrated and are part of the collar. The collar does not "hold" the tabs as the tabs cannot be removed—and there is no need to remove the tabs.

     Accordingly, Plaintiffs respectfully request that this Court adopt their proposed construction.

### 3. Disputed Claim Term/Phrase No. 3 – "include a plurality of tabs"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Comprising two or more tabs |

     Plaintiffs propose that this claim language be given its plain and ordinary meaning, which is evidence when the term is read in context of the claims and the specification. Plaintiffs accepts Defendant's propose construction if the Court finds that the plain and ordinary meaning is insufficient.

### 4. Disputed Claim Term/Phrase No. 4 – "adapter base"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| n/a | An adapter configured to act as the base for the cupholder |

     In an effort to conserve the Court's previous resources and time, Plaintiffs accepts Defendant's proposed construction for this term.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**

INHOUSE CO. LAW FIRM

### 5. Disputed Claim Term/Phrase No. 5 – "attachment member"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Plain and ordinary meaning |

In an effort to conserve the Court's previous resources and time, Plaintiffs accepts plain and ordinary meaning for this term.

### 6. Disputed Claim Term/Phrase No. 6 – "a number of mounting holes"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "two or more holes capable of accepting the riser columns of the spacer or the adapter base" | One or more mounting holes |

As stated above at the beginning of this section, the term "a number of mounting holes" and the next term "a number of protrusions" are the two most important terms for interpretation for this case. In view of the specification, the parent application, the office action issued, the response to the office action, the amended claims, and the surrounding claims, "a number of" can only mean "two or more." Accordingly, Plaintiffs respectfully request that the term "a number of mounting holes" be construed to mean at least two or more mounting holes.

In support of its position, Defendant contends that "the ordinary and customary meaning of the term 'a number' is a singular reference to a single number" Dkt. 34 at 21. This is misleading. The "a" preceding "number" quantifies the noun "number," indicating that there is a single number—not referring to the quantity of holes. It is always a singular quantifier. No one is asserting that multiple numbers describe the number of holes. If we were to accept Defendant's position, the phrase "a group of us" would also imply a single person, as "a" before "group" is singular, and "one person" is also singular. Clearly, the Defendant's argument that "a number of" includes "one" is fundamentally flawed and unconvincing.

The ordinary and customary meaning of the term "a number of" refers to two or more. Standard English grammar dictates that when we say, "a number of options to choose from," it implies there are at least two or more options. Although it involves a singular noun "number," it functions similarly to quantifiers such as "several" or "many." Defendant argues that the ordinary and customary meaning of "a number of" includes "one," yet fails to provide any evidence to support this claim. In fact, contrary to Defendant's assertion, Merriam-Webster defines "a number of" as "more than two but fewer than

many: several."[4]  Collins Dictionary also defines "a number of" as "several or many."[5] Plaintiffs have yet to encounter a definition from any commonly accepted dictionary that would define "a number of" to include "one."

Finally, lacking intrinsic evidence and support for its position, Defendant relies on a construction from a different case in another court. This position is untenable. The intrinsic evidence and the ordinary and customary meaning contradict Defendant's construction, which cannot be overridden by extrinsic evidence.

Defendant's proposed construction is also untenable because it would eliminate a preferred embodiment disclosed in the specification and is contradicted by the prosecution history. Specifically, the cupholder cannot have both a centered configuration and an off-center configuration with only one mounting hole. The prosecution history of the parent patent shows that the proper construction requires at least two mounting holes; in the alternative, the prior art *Fan* would have anticipated the 539 Patent.

<u>Claim language</u>: The dependent claim 4 of the 539 Patent is clear that "the number of mounting holes of the attachment member ***enable*** multiple configurations of the cylindrical cupholder in relation to the adapter base including an aligned configuration and oft-set configuration." Chen Decl. Exhibit 1, claim 4 (emphasis added). In other words, it is the multiple mounting holes (i.e. two or more) and the multiple protrusions that enables or allows the multiple configurations of the cupholder in relation to the adapter base. Without multiple mounting holes and the multiple protrusions, multiple configurations are not possible.

<u>Specification</u>: Consistent with Plaintiffs' construction, "a number of mounting holes" is represented in the 539 Patent in FIGS. 8 and 9.



[4] www.merriam-webster.com/dictionary/a%20number%20of
[5] www.collinsdictionary.com/dictionary/english/a-number-of

- 15 -
**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**

INHOUSE CO. LAW FIRM

In particular, the specification provides that "[I]n one embodiment, the attachment member 100 includes four mounting holes 111, wherein the holes 111 are configured to align with a number of protrusions 210 provided in spacer 202. The hole/protrusion combination determines how the cupholder 110 sits on the adapter, i.e. centered or off-set." See Col.5:47-52(emphasis added). As described in the specification, how the hole and the protrusions are coupled determines how the cupholder sits on the adapter, thereby providing a center configuration or an off-set configuration. The specification, and logic, makes clear that at least two holes or more (and two protrusions or more) are required in order to have more than one configuration.

Additionally, even without having multiple configurations, the specification provides that there be at least two protrusions, because with only one protrusion, the rotatable cupholder will have no support spin freely on top of the base. As described in the specification, the second protrusion is required as it provides support by locking with the second mounting hole to lock the cupholder in place on top of the adapter or spacer: "Best seen in FIGS. 11 and 13, in one embodiment, the central protrusion of protrusion 210 includes a hole 211 such that a fastener 500 (FIG. 6) may be used to attach the cupholder to the spacer (and in turn the adapter). When the fastener is used, the ***other protrusions*** provide support with their connection to the corresponding mounting holes." Chen Decl. Exhibit 1, 5:55-61 (emphasis added). Without the "other protrusions" (i.e. second mounting protrusion), there is nothing for the mounting holes to couple with or connect to.

Defendant's attempt to construe this term to mean "one or more mounting holes" conflict with the clear teachings of the specification. Simply calling "a number of mounting holes" to include only one mounting hole does not make it so. Defendant contends that specification provides support for his position: "It should be understood, that although four mounting holes and eight corresponding protrusions are illustrated, the number of mounting holes and/or protrusions may vary." Chen Decl. Exhibit 1, 6:4-7. Plaintiffs do not dispute that the specification allows for variations in the number of mounting holes and/or protrusions. However, it does not consider the possibility of having only one mounting hole. The difference between "two or more mounting holes" and "one or more mounting holes" is significant. Defendant's proposed definition would include a cupholder with a fastener through the hole of the attachment member, with the cupholder free to rotate on top of the adapter or spacer, which is specifically  supported by the 539 Patent.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**

INHOUSE CO. LAW FIRM

The descriptions and examples in the specification are all consistent with "a number of mounting holes" to mean two or more mounting holes, as embodied in Plaintiffs' proposed construction. The construction of "one or more mounting holes" proposed by Defendant would read out the preferred embodiment of Columns 5 and 6, as well the other embodiments in the specification, and this is plainly incorrect. As the Federal Circuit has held, "A claim construction that excludes a preferred embodiment . . . is rarely, if ever correct.'" *Pfizer v. Teva Pharm.*, 429 F.3d 1364, 1374 (Fed. Cir. 2005) (internal quotations omitted).

Moreover, the claims cannot enlarge what is patented beyond what the inventor has described in the specification as the claimed invention. *Netword,* 242 F.3d 1347 at 1352. Even where a patentee expresses intention to include other embodiments, if "[n]o other [embodiment] is disclosed or suggested," the sole embodiment is limiting. *Honeywell Int'l, Inc. v. ITT Indus.*, 452 F.3d 1312, 1319 (Fed. Cir. 2006). Here, each and every embodiment disclosed by the patentee includes two or more mounting holes; there is no embodiment with only one mounting hole.

<u>Prosecution History</u>: As discussed above, during prosecution of the Parent patent, patentee narrowed the pending Claim 1 to being comprised of at least two (multiple) mounting holes, whereas the prior art, *Fan,* is comprises of only one mounting hole. The Patent Office allowed the Claim after considering the amendment and argument. The 539 Patent, being the continuation application of the Parent, also has the same claim language comprising of at least two (multiple) mounting holes.



FIG. 8

FIG. 4

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**

INHOUSE CO. LAW FIRM

As already discussed at length above, the cupholder in *Fan* discloses one mounting hole, whereas the present invention of the 539 Patent discloses two or more mounting holes. The 539 Patent would have been anticipated by *Fan*, if 539 Patent had disclosed only one mounting hole. Patentee had amended the claim to include at least two mounting holes with at least two corresponding protrusions in order overcome *Fan*. Accordingly, Plaintiffs respectfully requests that the Court adopts Plaintiffs' construction which is support by the intrinsic evidence[6] that "a number of mounting holes" means two or more mounting holes.

### 7.   Disputed Claim Term/Phrase No. 7 – "a number of protrusions"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| two or more riser columns | One or more protrusions |

Plaintiffs reiterate that the previous term "a number of mounting holes" and this term "a number of protrusions" are the two most crucial terms for interpretation for this case. In view of the specification, the parent application, the office action issued, the response to the office action, the amended claims, and the surrounding claims, "a number of" can only mean "two or more." Accordingly, Plaintiffs respectfully request that the term "a number of protrusions" be construed to mean two or more protrusions.

Plaintiffs' propose construction is supported by both the claim language and the specification. Defendant's proposed construction is untenable because it would read out a preferred embodiment disclosed in the specification and is contradicted by the prosecution history. Specifically, the cupholder cannot have a centered configuration and an off-center configuration with only one mounting hole with one corresponding protrusion. The prosecution history of the parent patent also shows that the proper construction is to construe the term to have at least two mounting holes. Taking Defendant's position that "a number of protrusions" means one or more protrusions would have rendered the 539 Patent being anticipated by *Fan*.

<u>Claim language</u>: The dependent claim 4 of the 539 Patent is clear that "the number of mounting holes of the attachment member ***enable*** multiple configurations of the cylindrical cupholder in relation to the adapter base including an aligned configuration and oft-set configuration." *Ex 1, claim 4* (emphasis added). Although the claim does not explicitly mention protrusions, a person of ordinary

---

[6] Ex. 1, Claims 1 and 4; FIGS 4, 6, 8-13

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**

skill in the art would understand that multiple mounting holes necessitate corresponding multiple protrusions. The mounting holes cannot function independently; it is the second mounting hole coupled with the second corresponding protrusion that provides the necessary support to the cupholder on top of the adapter base or spacer. In essence, it is the combination of multiple mounting holes (i.e., two or more) and multiple protrusions that allows for various configurations of the cupholder in relation to the adapter base. Without these multiple mounting holes and protrusions, such configurations would not be feasible.

Specification: As detailed in the specifications, the protrusions serve as counterparts to the mounting holes. They complement and function in conjunction with each other. Specifically, the specification provides that "[t]he hole/protrusion combination determines how the cupholder 110 sits on the adapter, i.e. centered or off-set." See Col.5:48-52.

As explained above, how the holes and the corresponding protrusions combine determines how the cupholder sits on the adapter, i.e. a center configuration or an off-set configuration. The specification makes clear that at least two protrusions with at least two holes are required in order to have more than one configuration.




Moreover, even without multiple configurations, the specification mandates at least two protrusions. With only one protrusion, the rotatable cupholder would lack support and spin freely on the base. As detailed in the specification, a second protrusion is necessary to provide the support needed to lock the cupholder in place on top of the adapter or spacer: "Best seen in FIGS. 11 and 13, in one embodiment, the central protrusion of protrusion 210 includes a hole 211 such that a fastener 500 (FIG. 6) may be used to attach the cupholder to the spacer (and in turn the adapter). When the fastener

INHOUSE CO. LAW FIRM

is used, the *other protrusions* provide support with their connection to the corresponding mounting holes." See Col.5:55-61 (emphasis added).

Defendant's attempt to interpret this language to mean "one or more protrusions" conflicts with the clear teachings of the specification. Defining "a number of protrusions" as "one or more protrusions" does not align with the intended meaning and the explicit requirements outlined in the specification. Defendant argues that the specification supports its position, citing the statement that "the number of mounting holes and/or protrusions may vary." See Col. 6:7. Plaintiffs do not dispute that the specification permits multiple holes and protrusions. However, Defendant's interpretation of "one or more protrusion" conflicts with the clear intent and detailed teachings of the specification. The specification does not suggest that "a number of protrusions" can be interpreted as "one or more protrusion."

These descriptions and examples in the specification consistently indicate that "a number of protrusions" to mean two or more protrusions, as reflected in Plaintiffs' proposed construction. The Defendant's construction of "one or more" would exclude the preferred embodiments in the specification, which is clearly incorrect. As the Federal Circuit has held, "A claim construction that excludes a preferred embodiment . . . is rarely, if ever, correct.'" *Pfizer,* 429 F.3d 1364 at 1374(internal quotations omitted).

Moreover, the claims cannot enlarge what is patented beyond what the inventor has described in the specification as the claimed invention. *Netword, LLC*, 242 F.3d 1347 at 1352. Even where a patentee expresses intention to include other embodiments, if "[n]o other [embodiment] is disclosed or suggested," the sole embodiment is limiting. *Honeywell Int'l, Inc*, 452 F.3d 1312 at 1319. Here, each and every embodiment disclosed by the patentee includes two or more protrusions or "riser columns"; there is no embodiment with only one protrusion or "riser column."

Prosecution History: Similar to the term 'a number of mounting holes,' the term 'a number of protrusions' serves as the counterpart, with each protrusion having a corresponding mounting hole. The protrusions engage with the mounting holes to support the cupholder on the adapter base. Consequently, to provide adequate support, at least two protrusions must couple with two mounting holes.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**

INHOUSE CO. LAW FIRM

As discussed above, during prosecution of the Parent, claim 1 was rejected over the prior art, *Fan*, which discloses a centrally located mounting hole. In response, Patentee amended the parent to discloses two or more mounting holes. The Patent Office allowed the Claim after considering the amendment and argument. The 539 Patent, being the continuation application of the Parent, also has the same claim language comprising of at least two mounting holes and therefore at least two corresponding protrusions.

As such, if we were to take Defendant's position that "a number of protrusions" can include one protrusion, then Defendant's design would have been anticipated by *Fan* and would have been dead on arrival. Below is a cupholder in exploded view of the cup holder as disclosed by *Fan*:



**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**

Below is a cross-section view of the cupholder as disclosed by *Fan*:



In view of *Fan* that discloses one protrusion corresponding to one mounting hole, it is clear that the term "a number of protrusions" in the 539 Patent must be construed to be "two or more risers." Otherwise, *Fan* would have anticipated the 539 Patent and the prosecuting examiner would not have allowed the invention over *Fan*.

Additionally, language used in surrounding claims, even when there is no dependent relationship, is another source of intrinsic evidence, and the Federal Circuit has stated that a given term should be construed the same in each claim in which the term is recited. *CVI/Beta Ventures, Inc.*, 112 F.3d 1146 at 1159; *Marchon Eyewear v. Tura LP,*522 U.S.1109 (1998) ("we are obliged to construe the term 'elasticity' consistently throughout the claims."); see also *Phillips* at 1324-25 (construing independent claim terms in light of other independent claims). But see *Monsanto Co. v. Bayer Bioscience N.V.*, 363F.3d 1235, 1245 (Fed. Cir. 2004) (court found it improper to apply construction from a previous case without examining the intrinsic evidence of the current patent); *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1243 (Fed. Cir. 2003). Here, the terms "a number of mounting holes" and "a number of protrusions" must be construed consistently. If "a number of" as it relates to mounting holes means two or more, than "a number of" as it relates to protrusions must also mean two or more.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**

INHOUSE CO. LAW FIRM

Accordingly, Plaintiffs respectfully requests that the Court adopts Plaintiffs' construction which is support by the intrinsic evidence[7] that "a number of protrusions" means two or more protrusions.

### 8. Disputed Claim Term/Phrase No. 8 – "mounting holes"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "fastening hole capable of accepting the riser columns of the spacer or the adapter base" | Plain and ordinary meaning |

In an effort to conserve the Court's previous resources and time, Plaintiffs accepts plain and ordinary meaning for this term.

### 9. Disputed Claim Term/Phrase No. 9 – "the hole of the at least one protrusion of the number of protrusions"

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| an open fastening hole at the top of a riser column | Plain and ordinary meaning |

Where the ordinary meaning of a term is not clear, the judge is required to perform claim construction so that the jury can understand. *Markman,* 517 U.S. 370 at 388. Further, claim construction is required when terms used in the claim lack generally accepted ordinary meaning. *On-Line Technologies,* 386 F.3d 1133 at 1138. Plaintiffs submit that there is no generally accepted ordinary meaning for "*the hole of the at least one protrusion of the number of protrusions.*"

Below, "the hole of the at least one protrusion of the number of protrusions" is represented in the 539 Patent in FIGS. 11, 12 and 13.



---

7 Ex. 1, Claims 1 and 4; FIGS 4, 6, 8-13

INHOUSE CO. LAW FIRM

INHOUSE CO. LAW FIRM

It is unclear how the term "hole" can be understood in relation to a protrusion without proper definition, particularly when multiple holes and protrusions are present in the design. Therefore, further clarification is necessary.

As discussed in the previous term for construction, the mounting holes mounting holes (111) located on attachment member (110) of the cupholder (100) are complementary to the protrusions (210) of the adapter base (200) or spacer, as described above. The mounting holes (111) of the attachment member (110) of the cupholder (100) work in conjunction with the corresponding protrusions (210) of the adapter base (200) or spacer to provides support by locking with the second mounting hole to lock the cupholder in place on top of the adapter or spacer. To attach the cupholder (100) and the adapter base (200), s fastener (500) (not shown) is extended through one of the mounting holes (111) of the attachment member (110) of the cupholder (100) through a hole (211) located on one of the many protrusions (210) of the adapter base (200) via spacer. This hole (211) located on one of the protrusions of the adapter base or spacer must be an *open* hole for the fastener to go through so that it can *fasten* the cupholder (100) to the adapter base (200) or spacer. In contrast, throughout the entire specification and as described in the Figures, including FIGS 11 and 13 above, not all the protrusions (210)  have an opening hole (211) that allows a fastener (500) to go through.

To accord a blind and broad ordinary meaning of "the hole of the at least one protrusion of the number of protrusions" in the present case will easily render the present invention inoperable. Plaintiff's proposed construction supports the purpose of clarification and proper construction as meant within the intrinsic scope of the patent.

**10. Disputed Claim Term/Phrase No. 10 – "spacer"**

| Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|
| a height extension ring not integrated with the adapter base having two or more riser columns wherein one or more of the riser columns has an open fastening hole at the top of the column | Plain and ordinary meaning |

In an effort to conserve the Court's previous resources and time, Plaintiffs accepts plain and ordinary meaning for this term.

## VIII.    CONCLUSION

In conclusion, navigating the fine line between using the specification to interpret claim terms and avoiding the importation of unnecessary limitations is challenging. As the Court in Phillips stated, "we recognize that the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice." *Phillips*, 415 F.3d at 1323.

However, *Phillips* provides clear guidance on this issue, stating, "the line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *Id.*

As such, Plaintiffs submit that "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." (Id., at 1316).

Based on the foregoing, Plaintiffs respectfully request that the Defendant's proposed constructions be rejected and that the Court adopts Plaintiffs' proposed claim constructions.

DATED: October 18, 2024                     INHOUSE CO. LAW FIRM

By: _____
            Alexander Chen, Esq.
            Katja M. Grosch, Esq.
            Theodore S. Lee, Esq.
            Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

I, Theodore Lee, am over the age of 18 years and am not a party to this action. I hereby state that on the date set forth below, I caused the foregoing document to be filed electronically, and notice hereof will automatically be sent to all counsel of record that participate in electronic filing, by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. In addition, if any attorneys are not participating in electronic filing, they are identified below and have been mailed, via first-class postage, notice hereof on the date this document is being electronically filed.

Dated: October 18, 2024

/Theodore S. Lee/

Theodore S. Lee

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF**