1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TOPFIRE LIMITED, et al.,                No.  2:23-cv-02503-DAD-JDP

12              Plaintiffs,

13        v.                                 CLAIM CONSTRUCTION ORDER

14   BENJAMIN COOK,                          (Doc. No. 33)

15              Defendant.

16   BENJAMIN COOK,

17              Counter-Claimant,

18        v.

19   TOPFIRE LIMITED, et al.,

20              Counter-Defendants.

21

22        This matter came before the court on December 17, 2024 for a hearing on the claim

23   construction dispute as to defendant and counter-claimant Benjamin Cook's U.S. Patent No.

24   11,772,539 ("the '539 patent").  (Doc. No. 33.)  Attorneys Theodore Lee and Alexander Chen

25   appeared at the hearing by video on behalf of plaintiffs and attorney Louis Teran appeared by

26   video on behalf of defendant.  After consideration of the record and the arguments of the parties,

27   the court adopts the constructions of the parties' disputed claim terms for the '539 patent as set

28   forth below.

1

## BACKGROUND

On October 30, 2023, plaintiffs and counter-defendants Topfire Limited, HK Miuson International Co., Limited, Jianggongxiushenzhenguoji-Maoyiyouxiagongsi, and Shenzhenshilingbinqipei-youxiangongsi filed their complaint initiating this patent action against defendant Benjamin Cook. (Doc. No. 1 at ¶¶ 47–51, 83–90.) In that complaint, among other claims asserted and relief sought, plaintiffs sought declaratory judgment that plaintiffs' cup expander products did not infringe defendant's '539 patent and that defendant's '539 patent was invalid. (*Id.* at 10, 14.) On December 7, 2023, defendant filed a counterclaim against all plaintiffs alleging that plaintiffs' cup expander products infringe on the '539 patent. (Doc. No. 5 at ¶¶ 15–22.) On December 21, 2023, plaintiffs filed the operative first amended complaint ("FAC") seeking only declaratory judgment as to their non-infringement claim with respect to the '539 patent and the unenforceability of the '539 patent. (Doc. No. 17.) The court adopted the Northern District of California's Patent Local Rules to manage this case and set a claim construction hearing for December 17, 2024. (Doc. No. 24.)

On August 23, 2024, the parties filed a joint statement of claim construction indicating which terms they had an agreed construction for and as to which terms constructions were disputed. (Doc. No. 33.) On October 4, 2024, in accordance with Northern District of California's Patent Local Rule 4-4, defendant Cook filed his opening brief supporting his claim construction. (Doc. No. 34.) On October 18, 2024, plaintiffs filed their responsive brief to defendant's opening brief.[1] (Doc. No. 37.) On November 4, 2024, defendant filed his reply thereto. (Doc. No. 39.)

The owner of the patent-in-suit, the '539 patent, is defendant Benjamin Cook. (Doc. No. 34-1 at 4.) The '539 patent defines the invention at issue in this action as a "cupholder adapter" which can be configured to be used on a vehicle's existing cupholder to accommodate a variety of beverage containers of different size. (*Id.*)

/////

---

[1] On October 4, 2024, plaintiffs had filed an opening brief in error and withdrew it on October 11, 2024. (Doc. Nos. 35, 36.)

Claim 1 of the '539 patent recites in relevant part:

> 1. A cupholder adapter configured for use with an existing cupholder on a vehicle, the cupholder adapter comprising:
>
> a cylindrical cupholder having a hollow internal volume;
>
> a collar attached to a top portion of the cylindrical cupholder, wherein the collar includes a plurality of tabs extending perpendicularly into the hollow internal volume;
>
> an adapter base coupled to the cylindrical cupholder, wherein the adapter base includes a plurality of legs configured to expand and retract such that the diameter of the adapter base is configured to expand from a minimum diameter to a maximum diameter;
>
> an attachment member positioned on a bottom surface of the cylindrical cupholder, wherein the attachment member enables the coupling of the adapter base and the cylindrical cupholder; and
> wherein the attachment member comprises a number of mounting holes and the adapter base or a spacer comprises a number of protrusions, at least one protrusion of the number of protrusions having a hole, wherein a mounting hole of the number of mounting holes is configured to align with the hole such that a fastener can extend through the mounting hole and the hole of the at least one protrusion of the number of protrusions.

(Doc. No. 34-1 at 25.)

Figure 5 included in the specification of the '539 patent illustrates the assembly of the invention claimed by the '539 patent.



FIG. 5

1  (*Id.* at 9.)  The invention consists of an adapter base (200) to fit the device into a vehicle's

2  cupholder.  (*Id.* at 24.)  This adapter base uses adjustable legs (201) to fit into the vehicle's

3  cupholder, by expanding or retracting as necessary to fill the space within the vehicle's

4  cupholder.  (*Id.*)  On top of this base is a spacer (202) which creates vertical space between the

5  vehicle's cupholder and the invention's cupholder.  (*Id.*)  This spacer appears to be a component

6  of an "adapter base" in claim 1 of the patent.  (*Id.* at 25.)  The cupholder then attaches to this

7  spacer via the usage of "mounting holes" and "protrusions."  (*Id.*)

8       Figures 8, 9, 10, and 11 of the '539 patent provide further detail of how the cupholder

9  attaches to this adapter base.



26  (*Id.* at 10–11.)  On the bottom of the cupholder (100) is an attachment member (110) which

27  consists of "mounting holes" (111).  (*Id.* at 24.)  On the top of the spacer (202) are protrusions

28  (210).  (*Id.*)  To secure the cupholder on top of the spacer, the protrusions in the spacer are

4

1    aligned with the mounting holes of the cupholder, in a similar way to how a plug fits into a wall

2    socket.  (*Id.*)  To provide additional stability, the specification includes a protrusion with a hole in

3    it (211) such that a fastener like a screw can be worked through a mounting hole on the

4    attachment member (110) into that hole.  (*Id.* at 24.)

5          The '539 patent is a resubmission of a previous patent, Patent No. 11,660,995, which had

6    been rejected by the United States Patent Office.  (Doc. No. 37-1 at 28–62.)  That earlier patent

7    was determined to be unpatentable under 35 U.S.C. § 103 on the basis that the innovations in

8    Patent No. 11,660,995 would have been obvious to someone with ordinary skill in the art who

9    was familiar with Patent No. 11,254,253 ("the Fan patent").  (*Id.* at 53–57.)  The Fan patent

10    similarly claims "a carrying bracket for a cup holder used in vehicles" such that a cupholder is

11    placed upon a base unit in the built-in cupholder of a vehicle to allow for larger or different-sized

12    cups to be placed in it.  (*Id.* at 81–82.)  As relevant here, in a dependent claim[2] the Fan patent

13    contemplates attaching its cupholder to the base unit by placing a screw through the cupholder

14    and fastening it to the base unit by means of a nut.  (*Id.* at 80.)  This is explicitly disclosed

15    through the Fan patent's dependent claim 8, which discloses the "carrying bracket" with the

16    additional limitation that "a screw rod is installed *in a center of the base unit*[.]"  (*Id.* at 82)

17    (emphasis added).  The Fan patent thus discloses a cupholder being fastened to the base unit by

18    means of a screw being placed through a single centralized hole in the cupholder to be fastened

19    into the base unit.[3]  (*Id.* at 64–82.)

20    /////

21    /////

22

23    [2]  "Patent claims come in two general forms:  independent claims and dependent claims. . . .
     Independent claims contain all the claim limitations in the individual claim and, as the name
24    implies, independently stand on their own with respect to the identification of the claim
     limitations. . . . Conversely, dependent claims incorporate by reference all the claim limitations of
25    a referenced [independent or dependent] claim, and include additional claim limitations uniquely
     set forth in the particular dependent claim."  *Intamin, Ltd. v. Magnetar Techs. Corp.*, 623 F. Supp.
26    2d 1055, 1065 (C.D. Cal. 2009) (internal citations omitted) (citing 35 U.S.C. § 112).

27    [3]  Plaintiffs also state that the Fan patent discloses specifically "a centrally located mounting
28    hole."  (Doc. No. 37 at 25.)

5

1

**LEGAL STANDARD**

2     Claim construction is a question of law.  *See Markman v. Westview Instruments, Inc.*, 517

3   U.S. 370, 384 (1996); *Ancora Techs., Inc. v. Roku, Inc.*, __F.4th__, 2025 WL 1679967, at *3 (Fed.

4   Cir. June 16, 2025) ("Claim construction is a question of law with underlying questions of fact.");

5   *Del Francia v. Stanthony Corp.*, 278 F.2d 745, 747 (9th Cir. 1960).  "The purpose of claim

6   construction is to 'determin[e] the meaning and scope of the patent claims asserted to be

7   infringed.'"  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir.

8   2008) (alterations in original) (citation omitted).  "Generally, a claim term is given its ordinary

9   and customary meaning—the meaning that a term would have to a person of ordinary skill in the

10   art in question at the time of the invention."  *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822

11   F.3d 1312, 1320 (Fed. Cir. 2016) (internal quotation marks and citation omitted).  "Courts

12   construe claims in the manner that 'most naturally aligns with the patent's description of the

13   invention.'"  *Regents of Univ. of Minn. v. LSI Corp.*, No. 5:18-cv-00821-EJD, 2023 WL 5520958,

14   at *2 (N.D. Cal. Aug. 25, 2023) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir.

15   2005)).

16     "The appropriate starting point . . . is always with the language of the asserted claim

17   itself."  *Simpson Strong-Tie Co. v. Oz-Post Int'l, LLC*, No. 3:18-cv-01188-WHO, 2020 WL

18   3187950, at *1 (N.D. Cal. June 15, 2020) (quoting *Comark Commc'ns, Inc. v. Harris Corp.*, 156

19   F.3d 1182, 1186 (Fed. Cir. 1998)).  "[T]he ordinary and customary meaning of a claim term is the

20   meaning that the term would have to a person of ordinary skill in the art in question at the time of

21   the invention, i.e., as of the effective filing date of the patent application."  *Id.* at *1 (alteration in

22   original) (quoting *Phillips*, 415 F.3d at 1312).  "In some cases, the ordinary meaning of claim

23   language as understood by a [person of ordinary skill in the art] may be readily apparent even to

24   lay judges, and claim construction in such cases involves little more than the application of the

25   widely accepted meaning of commonly understood words."  *DNA Genotek Inc. v. Spectrum Sols.*

26   *LLC*, 671 F. Supp. 3d 1105, 1116 (S.D. Cal. 2023) (quoting *Phillips*, 415 F.3d at 1314).

27   "However, in many cases, the meaning of a claim term as understood by persons of skill in the art

28   is not readily apparent," in which cases the court looks to sources available to the public to

6

1   determine how such persons would understand the disputed claim language.  *Id.* (quoting *O2*

2   *Micro*, 521 F.3d at 1360).

3       "[T]he person of ordinary skill in the art does not work from a blank slate—rather, she is

4   'deemed to read the claim term not only in the context of the particular claim in which the

5   disputed term appears, but in the context of the entire patent, including the specification.'"

6   *Regents of Univ. of Minn.*, 2023 WL 5520958, at *2 (quoting *Phillips*, 415 F.3d at 1313).  "The

7   specification is 'the single best guide to the meaning of a disputed term.'"  *Simpson Strong-Tie*

8   *Co.*, 2020 WL 3187950, at *2 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582

9   (Fed. Cir. 1996)).  "The specification 'is always highly relevant to the claim construction

10  analysis' and usually 'dispositive.'"  *Impinj, Inc. v. NXP USA, Inc.*, No. 19-cv-03161-YGR, 2022

11  WL 2125134, at *3 (N.D. Cal. Mar. 21, 2022) (quoting *Phillips*, 415 F.3d at 1315).

12      "There are only two exceptions to this general rule:  1) when a patentee sets out a

13  definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a

14  claim term either in the specification or during prosecution."  *Simpson Strong-Tie Co.*, 2020 WL

15  3187950, at *1 (quoting *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir.

16  2012)).  For the first exception to apply, the patentee "must 'clearly set forth a definition of the

17  disputed claim term' other than its plain and ordinary meaning."  *Thorner*, 669 F.3d at 1365

18  (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)).  However,

19  for both exceptions, "[s]uch redefinition or disavowal need not be *express* to be clear."  *Simpson*

20  *Strong-Tie Co.*, 2020 WL 3187950, at *1 (quoting *Trs. of Columbia Univ. v. Symantec Corp.*, 811

21  F.3d 1359, 1364 (Fed. Cir. 2016)) (emphasis added).

## ANALYSIS

23      In this case the parties dispute only the construction of terms in claim 1 of the '539 patent.

24  (Doc. No. 33.)  The court will first analyze the initially agreed-upon term constructions, and then

25  address each of the initially disputed term constructions in turn.

26  **A.    Agreed-Upon Term Constructions**

27      The parties have reached agreement on the appropriate constructions for the following

28  seven terms:

| CLAIM TERM | AGREED CONSTRUCTION |
|---|---|
| "legs" | Plain and ordinary meaning |
| "diameter of the adapter base" | Plain and ordinary meaning |
| "a fastener" | Plain and ordinary meaning |
| "expand and retract via rotation of the cupholder" | Plain and ordinary meaning |
| "aligned configuration" | Plain and ordinary meaning |
| "off-set configuration" | Plain and ordinary meaning |
| "screw gear" | Plain and ordinary meaning |

(Doc. No. 33 at 2.)

"[T]he court is not required to adopt a construction of a term proposed by the parties, even if the parties have stipulated to it." *Zoltar Satellite Sys. v. Motorola, Inc.*, No. 06-cv-00044-JW, 2007 WL 9812732, at *5 (N.D. Cal. Oct. 25, 2007) (citing *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005)). Nevertheless, it is common for courts to adopt the constructions stipulated to by the parties. *See, e.g.*, *Ingrid & Isabel, Inc. v. Baby be Mine, LLC*, No. 08-cv-02554-JCS, 2009 WL 928135, at *3 (N.D. Cal. Apr. 3, 2009); *see also Finjan, LLC v. Palo Alto Networks, Inc.*, No. 14-cv-04908-RS, 2024 WL 3012799, at *3 (N.D. Cal. June 14, 2024); *Intex Recreation Corp. v. Bestway USA, Inc.*, No. 2:19-cv-08596-JAK-E, 2023 WL 8881857, at *5 (C.D. Cal. Aug. 18, 2023). In addition, the Federal Circuit has held that a party agreeing to a claim construction is bound to that construction on appeal. *MyMail, Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1378 (Fed. Cir. 2007) ("Having agreed to that construction before the district court, MyMail 'cannot now argue against that claim construction simply because it resulted in an adverse ruling on summary judgment.'"). Because the parties have stipulated to the construction of the above terms and are seeking to adopt the plain and ordinary meaning of such terms, the court will adopt the parties' stipulated constructions. *See Zimmer, Inc.*, 822 F.3d at 1320 ("Generally, a claim term is given its ordinary and customary meaning—the meaning that a

/////

8

1    term would have to a person of ordinary skill in the art in question at the time of the invention.")

2    (internal quotation marks and citations omitted).

3         The court now turns to terms that were originally disputed between the parties.

4    **B.    "Cylindrical"**

| CLAIM TERM | PLAINTIFFS' PROPOSAL | DEFENDANT'S PROPOSAL | COURT CONSTRUCTION |
|---|---|---|---|
| "cylindrical" | Plain and ordinary meaning | Having the approximate form of a cylinder including variations in diameter along the length of the cylinder | Having the approximate form of a cylinder including variations in diameter along the length of the cylinder |

14   (Doc. No. 33 at 3.)

15        Claim 1 of the '539 patent recites that the cupholder adapter comprises, in part, "a

16   cylindrical cupholder having a hollow internal volume[.]"  (Doc. No. 34-1 at 25.)  Plaintiffs

17   propose that cylindrical should be understood as being of the same shape as the geometric shape

18   with parallel circular bases connected by straight parallel lines, in accordance with a dictionary

19   definition.  (Doc. No. 37 at 14.)  Defendant proposes an alternative construction that cylindrical

20   be understood as having a generally cylindrical shape where the diameter is allowed to vary to

21   some degree along the length of the cylinder.  (Doc. No. 34 at 12.)  Specifically, defendant

22   contends that standard manufacturing processes make it very difficult to create a "perfect

23   geometric cylinder" and that ordinarily in the field of manufacturing, cylindrical would be

24   understood as incorporating a draft angle[4] in the manufacturing process that leads to a varying

25   diameter.  (*Id.* at 12–13.)  Defendant Cook further notes that the specification describes one

26   embodiment where the cupholder is generally cylindrical.  (Doc. Nos. 34 at 13, 34-1 at 23.)

---

[4]  A draft angle is an angle incorporated into the design of a part to make it easier to eject from a
mold.  (Doc. No. 34-1 at 38.)

1    Plaintiffs argue that the term cylindrical should be narrowly construed by the court

2    because the intrinsic evidence does not support defendant's construction of that term.  (Doc. No.

3    37 at 14–15.)  "Intrinsic evidence includes the patent claims, the specification, . . ., the

4    prosecution history[,] . . . [and] the prior art cited in a patent or during the prosecution."

5    *Depomed, Inc. v. Ivax Corp.*, 532 F. Supp. 2d 1170, 1175 (N.D. Cal. 2007) (citing *Vitronics*

6    *Corp.*, 90 F.3d at 1582; *Kumar v. Ovonic Battery Co.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003)).  In

7    particular, plaintiffs contend that the phrase "generally cylindrical" does not refer to a changing of

8    diameter along the height of the cupholder but a gap which is constructed in the side of the

9    cupholder.  (*Id.*)  Plaintiffs argue that, even if the extrinsic evidence of manufacturing

10   requirements shows that any physical embodiment of the patent would not be perfectly

11   cylindrical, this is a flaw of the patent design and should not broaden the definition of cylindrical.

12   (*Id.* at 15.)  At the claim construction hearing held in this case, plaintiffs clarified their argument

13   by contending that laypeople understand the meaning of cylindrical and that a plain and ordinary

14   meaning of the term should therefore be adopted.

15    The court is unpersuaded by plaintiffs' arguments in this regard.  The patent specification

16   "is 'highly relevant' in claim construction and is the 'single best guide' for construing ambiguous

17   claim terms."  *Cal. Inst. of Tech. v. Hughes Commc'ns Inc.* ("*Caltech*"), 35 F. Supp. 3d 1176,

18   1180 (C.D. Cal. 2014) (quoting *Phillips*, 415 F.3d at 1317).  Here, the patent specification

19   describes one embodiment of the cupholder as comprising "a *generally cylindrical* housing

20   having a gap enabling the use of beverage containers having handles to be used."  (Doc. No. 34-1

21   at 23) (emphasis added).  The specification also notes that the term "generally" in the '539 patent

22   applies to "all numeric values, whether or not explicitly indicated[]" and that it is meant to

23   provide an error tolerance that an ordinary person with skill in the art would expect.  (*Id.*)

24   Plaintiffs' argument relies on the court importing the limitation in a single embodiment of the

25   '539 patent to all possible embodiments:  "[C]ourts should not import limitations from the

26   embodiment into the claims[]" because embodiments are merely a single example of the

27   invention encompassed by the claims in the patent.  *Caltech*, 35 F. Supp. 3d at 1184.  Plaintiffs'

28   reliance on an embodiment deviating from being cylindrical by having a gap in its side is

1  therefore unavailing because that is only one embodiment of the cylindrical cupholder envisioned

2  by the patent specification.  The court finds that this embodiment indicates that the specification

3  does not contemplate "cylindrical" to mean a perfect cylinder, because otherwise that

4  embodiment would be excluded by the specification itself.  Therefore, the intrinsic evidence

5  supports an understanding of the term "cylindrical" as used as being distinct from having the form

6  of a perfect cylinder.

7     The court therefore concludes then that "cylindrical" should be read as a description of a

8  three-dimensional shape which bears a substantial relationship to the form and properties of a

9  cylinder.  This is in accord with other courts, which have understood cylindrical in other patents

10  as meaning "shaped like a cylinder[]" or "having the approximate form of a cylinder."  *Cordelia*

11  *Lighting, Inc. v. Zhejiang Yankon Grp.*, No. 14-cv-00881-JGB-SP, 2015 WL 12656241, at *4

12  (C.D. Cal. 27, 2015) (quoting *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:02-cv-

13  00134-ARC, 2013 WL 1149230, at *12 (M.D. Pa. Mar. 19, 2013)).  Here, as in *Cordelia*

14  *Lighting, Inc.* and *Arlington Industries, Inc.*, plaintiffs' proposed construction would exclude the

15  defendant's preferred embodiment.  Because the ordinary understanding of cylinder could vary in

16  such a way as to exclude defendant's preferred embodiment, the court cannot adopt the plain and

17  ordinary meaning of the term as proposed by plaintiff.  Accordingly, the court will adopt

18  defendant's proposed construction.

19  **C.**  **"Collar"**

| CLAIM TERM | PLAINTIFFS' PROPOSAL | DEFENDANT'S PROPOSAL | COURT CONSTRUCTION |
|---|---|---|---|
| "collar" | A circular lip device having two or more integrated cantilever structures extending towards the center portion of the lip | A band to hold tabs in place | A circular lip device having two or more integrated cantilever structures extending towards the center portion of the lip |

1   (Doc. No. 33 at 4.)

2         Claim 1 of the patent recites that the cupholder adapter comprises in part "a collar

3   attached to a top portion of the cylindrical cupholder, wherein the collar includes a plurality of

4   tabs extending perpendicularly into the hollow internal volume[.]" (Doc. No. 34-1 at 25.)  The

5   parties' dispute as to the construction of this term centers on whether the collar consists of a

6   circular band which can hold tabs in place or whether the collar includes those tabs.  Defendant

7   contends that the ordinary meaning of collar should control and that plaintiffs' qualifications

8   included in their proposed construction of the term improperly and ambiguously limit the scope

9   of the specification.  (Doc. No. 34 at 14–15.)  Plaintiffs argue that the language of the claim itself

10  creates this limitation for the collar because of the use of the word "includes" when referring to

11  the tabs.  (Doc. No. 37 at 16.)  Plaintiffs also argue that the embodiment and figures provided in

12  the specification show the tabs as being part of the collar.  (*Id.*)

13        "Although the specification need not present every embodiment or permutation of the

14  invention and the claims are not limited to the preferred embodiment of the invention, . . . neither

15  do the claims enlarge what is patented beyond what the inventor has described as the invention."

16  *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001) (citing *Comark*

17  *Commc'ns*, 156 F.3d at 1186).  The word "including," though open-ended, has the same meaning

18  as "comprising" insofar as the "listed elements . . . are essential but other elements may be

19  added."  *Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1214 (Fed. Cir. 2008) (citing

20  *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1344–45 (Fed. Cir. 2003)); *see also*

21  *Barnes & Noble, Inc. v. LSI Corp.*, No. 11-cv-02709-EMC, 2014 WL 1365422, at *15 (N.D. Cal.

22  Apr. 7, 2014) (collecting cases addressing the use of the word "includes").  It is clear from the

23  claim's language that the "collar includes a plurality of tabs" (Doc. No. 34-1 at 25), and that the

24  collar structure envisioned by the patent would be incomplete without attached tabs.  *DNA*

25  *Genotek Inc.*, 671 F. Supp. 3d at 1116 (citing *Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370,

26  1373 (Fed. Cir. 2019)) (noting that proper construction of a claim requires looking first to the

27  claim language).  Including this limitation in the construction of the term "collar" would not

28  exclude the embodiments provided by defendant in his patent application.  Therefore, the court

12

will adopt the plaintiffs' construction of "collar" as meaning a circular lip device having two or more integrated cantilever structures extending towards the center portion of the lip.

**D.    "A plurality of tabs"**

| CLAIM TERM | PLAINTIFFS' PROPOSAL | DEFENDANT'S PROPOSAL | COURT CONSTRUCTION |
|---|---|---|---|
| "include a plurality of tabs" | Having two or more integrated cantilever structures extending towards the center portion of the lip | Comprising two or more tabs | Comprising two or more tabs |

(Doc. No. 33 at 4.)

Claim 1 of the patent recites that the cupholder adapter comprises in part "a collar attached to a top portion of the cylindrical cupholder, wherein the collar includes a plurality of tabs extending perpendicularly into the hollow internal volume[.]" (Doc. No. 34-1 at 25.) Plaintiffs do not dispute defendant's proposed construction should the court find the plain and ordinary meaning of "a plurality of tabs" to be insufficient. (Doc. No. 37 at 17.) At the December 17, 2024 claim construction hearing, plaintiffs clarified that they no longer disputed defendant's proposed construction of this term. (Doc. No. 40.) Accordingly, the court will adopt the construction that "includes a plurality of tabs" means "comprising two or more tabs."

/////

/////

/////

/////

/////

/////

/////

/////

1  **E.    "Adapter base"**

| CLAIM TERM | PLAINTIFFS' PROPOSAL | DEFENDANT'S PROPOSAL | COURT CONSTRUCTION |
|---|---|---|---|
| "Adapter base" | N/A | An adapter configured to act as the base for the cupholder[5] | An adapter configured to act as the base for the cupholder |

(Doc. No. 34 at 16.)

Claim 1 of the patent recites that the cupholder adapter is comprised in part of "an adapter base coupled to the cylindrical cupholder[.]"  (Doc. No. 34-1 at 25.)  Plaintiffs' original proposal for the construction of this claim interpreted it as a means-plus-function claim, which defendant opposed.  (Doc. Nos. 33 at 5–6; 34 at 17–18.)  In their response to defendant's opening claim construction brief, plaintiffs retracted their proposed construction and accepted defendant's construction.  (Doc. No. 37 at 17.)  Accordingly, the court will adopt the construction that "adapter base" should be interpreted as "an adapter configured to act as the base for the cupholder."

**F.    "Attachment member"**

| CLAIM TERM | PLAINTIFFS' PROPOSAL | DEFENDANT'S PROPOSAL | COURT CONSTRUCTION |
|---|---|---|---|
| "attachment member" | Plain and ordinary meaning | Plain and ordinary meaning | Plain and ordinary meaning |

(Doc. No. 33 at 6.)

/////

---

[5]  The court observes that this proposal differs from that listed in the parties' joint claim construction statement.  (Doc. No. 33 at 5.)  Nevertheless, this proposal is what plaintiffs also list in their response to the opening claim construction belief.  (Doc. No. 37 at 17.)  Accordingly, the court will treat this construction as the parties' accepted construction.

1    Claim 1 of the patent recites that the cupholder adapter comprises in part "an attachment

2    member positioned on a bottom surface of the cylindrical cupholder[.]"  (Doc. No. 34-1 at 25.)

3    Plaintiffs' original proposal for the construction of this claim interpreted it as a means-plus-

4    function claim, which defendant opposed.  (Doc. Nos. 33 at 6; 34 at 19–21.)  In their response to

5    defendant's opening claim construction brief, plaintiffs retracted their proposed construction and

6    accepted defendant's construction.  (Doc. No. 37 at 18.)  Accordingly, the court will adopt the

7    parties' construction that "attachment member" should be interpreted by its plain and ordinary

8    meaning.  *See Zimmer, Inc.*, 822 F.3d at 1320 ("Generally, a claim term is given its ordinary and

9    customary meaning—the meaning that a term would have to a person of ordinary skill in the art

10   in question at the time of the invention.")

11   **G.    "A number of"**

| CLAIM TERM | PLAINTIFFS' PROPOSAL | DEFENDANT'S PROPOSAL | COURT CONSTRUCTION |
|---|---|---|---|
| "a number of mounting holes" | Two or more holes capable of accepting the riser columns of the spacer or the adapter base | At least one mounting hole | At least one mounting hole |
| "a number of protrusions" | Two or more riser columns | At least one protrusion | At least one protrusion |

22   (Doc. No. 33 at 6–7.)

23   Claim 1 of the patent recites that the cupholder adapter comprises in part of "[an]

24   attachment member compris[ing] a number of mounting holes[.]"  (Doc. No. 34-1 at 25.)  Claim 1

25   of the patent also recites that the cupholder adapter comprises in part "[an] adapter base or a

26   spacer compris[ing] a number of protrusions, at least one protrusion of the number of protrusions

27   having a hole, wherein a mounting hole of the number of mounting holes is configured to align

28   with the hole[.]"  (*Id.*)  The parties' dispute as to the construction of these terms centers on

15

1    whether "a number of" requires that there be at least one mounting hole and/or protrusion or

2    requires that there be at least two mounting holes and/or protrusions.  Defendant argues that these

3    terms should be read as "a number," as in a singular number including one, because of both the

4    ordinary meaning of that phrase and the definition of "a" as "at least one" in the specification.

5    (Doc. No. 34 at 21.)  Plaintiffs argue that the ordinary and customary meaning of "a number of" is

6    at least two or more, following dictionary definitions of the idiomatic phrase.  (Doc. No. 37 at 18–

7    19.)  Because the arguments involving these two terms both center on the meaning of "a number

8    of," the arguments involving these terms are largely duplicative, and because the specification

9    relates the mounting holes to the protrusions that attach to the mounting holes, the court analyzes

10   these two terms together.

11        Plaintiffs argue that the claim language states that multiple configurations are possible

12   because of the number of mounting holes, implying that there must be at least two mounting holes

13   to allow multiple configurations.  (*Id.* at 19.)  Plaintiffs further contend that the specification's

14   description of an embodiment, namely that the cupholder adapter can be configured in multiple

15   ways, excludes the possibility of there being only one mounting hole and that no embodiment

16   provided has a single mounting hole.  (*Id.* at 20–21.)  Plaintiffs also argue that the prosecution

17   history of the '539 patent supports their construction because otherwise the Fan patent would be

18   infringed by the patent-in-suit.  (Doc. No. 37 at 21–22.)

19        Defendant contends that "a number of" should be read in the context of the whole

20   specification as being distinct from, and therefore having a different meaning than, "a plurality

21   of."  (Doc. No. 39 at 9–10.)  Defendant further argues that there has been no evidence or expert

22   testimony as to why multiple configurations are not possible with one or more mounting holes

23   and/or one or more protrusions:  In this regard, he asserts that the specification's language on

24   multiple configurations does not imply more than one mounting hole or more than one protrusion.

25   /////

26   /////

27   /////

28   /////

16

1   (*Id.* at 10–11.)[6]  Even assuming that multiple configurations were not possible with a single

2   mounting hole or single protrusion, defendant contends that limitation described in the

3   specification should not be read in to limit the claim.  (*Id.* at 11–12.)  Defendant also argues that

4   the prosecution history does not support plaintiffs' construction.  (*Id.* at 12.)  In this regard,

5   defendant argues that, although the Patent Office did require a modification to the original

6   application to prevent infringement of the Fan patent, that modification did not involve the

7   number of mounting holes or protrusions.  (*Id.*)

8          First, the court finds that consideration of the language of claim 1 weighs in favor of

9   defendant's proposed construction of this term.  When faced with an attempt to distinguish

10  between singular and plural, a court may look to the claim's use of parallel clauses to determine

11  the numerosity that a specific term implies.  *See Harari v. Lee*, 656 F.3d 1331, 1341 (Fed. Cir.

12  2011)) (finding that, where the patentee evinces a clear intent for "a" to be singular and "a

13  number of" to be plural, the court should construct the terms as such); *cf. Skillz Platform Inc. v.

14  Aviagames Inc.*, No. 21-cv-02436-BLF, 2023 WL 6542147, at *17 (N.D. Cal. Oct. 6, 2023)

15  (finding that a lack of parallel clauses cannot create an inference to depart from the general rule

16  that "a" means "one or more").  The Federal Circuit has held that, in the case of indefinite

17  articles, "[t]he written description supplies additional context for understanding whether the claim

18  language limits the patent scope to a single unitary [element] or extends to encompass a device

19  _____

20  [6]  At the claim construction hearing, defendant's counsel clarified how the cupholder could be
    installed in "multiple configurations" with only one protrusion and one mounting hole.

21  Defendant explained that an embodiment covered by the claims in the '539 patent under his
    proposed claim construction would be a cupholder with an off-center mounting hole, which

22  would allow installation of the cupholder either by mounting it directly on top of the adapter base
    or by mounting it off-set from and rotated away from the adapter base.  Defendant's

23  understanding of multiple configurations appears to be that the cupholder can be in a different
    spatial position relative to the adapter base, insofar as it could be directly above or off-set from

24  the adapter base.  An intuitive visualization of an off-center rotation would be a door's relation to
    its hinges.  When a door opens, it can be described as rotating about the hinges, allowing for

25  multiple spatial configurations of the door since it can be open or closed.  Plaintiffs' contention
    that the cupholder "cannot have both a centered configuration and an off-center configuration

26  with only one mounting hole" is unavailing.  (Doc. No. 37 at 19.)  However, below the court finds
    that the independent claim in the '539 patent does not have the limitation requiring multiple

27  configurations and thus this fact, while perhaps interesting, is not dispositive in the court's

28  analysis.

with multiple [elements]." *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) (alterations in original) (quoting *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1024 (Fed. Cir. 1997)).  Here, the claim draws a distinction between "a plurality of tabs"—which the court previously determined means two or more tabs—and "a number of protrusions," indicating that defendant had intended for there to be only one or more protrusions and not at least two.  (Doc. No. 34-1 at 25.)  The court's conclusion in this regard is strengthened by the description of that number of protrusions and holes only requiring at least one protrusion and at least one hole for fastening.  (*Id.*)  The claim language thus indicates that "a number of" should be constructed as one or more.

The court finds plaintiffs' argument that claim 4, as a dependent claim, contradicts this reading of "a number of" to be unpersuasive.  (Doc. No. 37 at 19.)  Plaintiffs argue that claim 4 requires that the number of mounting holes "enable multiple configurations," which plaintiffs contend requires multiple mounting holes.  (*Id.*)  However, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."  *Phillips*, 415 F.3d at 1315 (citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004)); *see also Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015) ("Additionally, the doctrine of claim differentiation disfavors reading a limitation from a dependent claim into an independent claim.").  The language of claim 4 indicates that it claims the cupholder adapter disclosed in claim 1 with the sole additional limitation that "the number of mounting holes . . . enable multiple configurations." (Doc. No. 34-1 at 25.)  Because this limitation is in the dependent claim, it cannot be a limitation on the independent claim.  *Nautilus Grp. v. Icon Health & Fitness, Inc.*, 308 F. Supp. 2d 1198, 1204 (W.D. Wash. 2003) (finding that the limitation of a dependent claim could not be imported into an independent claim during claim construction); *see also SunRace Roots Enter. Co. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003) ("[The presumption of claim differentiation] is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim.").  Therefore, the court rejects plaintiffs'

1   argument that claim 4 contradicts the meaning of "a number of" in the independent claim 1.

2       The court also finds plaintiffs' next argument—that because the preferred embodiment in

3   the specification has multiple mounting holes and multiple protrusions that "a number of" should

4   be read to require "at least two" of each—to be unpersuasive as well.  First, plaintiffs contend that

5   defendant's construction of "a number of" as meaning "at least one" would exclude the preferred

6   embodiments described in the '539 patent whereas plaintiffs' construction of "at least two" would

7   not do so.  (Doc. No. 37 at 20); *see, e.g.*, *Rambus Inc. v. Hynix Semiconductor Inc.*, Nos. 05-cv-

8   00334-RMW, 05-cv-02298-RMW, 06-cv-00244-RMW, 2008 WL 2955125, at *8–9 (N.D. Cal.

9   July 25, 2008) (collecting cases on how preferred embodiments should not be read out by claim

10  constructions).  The court observes that, because any embodiment which has "at least two"

11  protrusions by definition has "at least one" protrusion as well, plaintiffs' contention in this regard

12  is simply mathematically unsupported.  Second, plaintiffs' argument that, because the

13  specification contains only one embodiment, that embodiment is limiting, (Doc. No. 37 at 21),

14  misstates the law.  *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1321–22 (Fed. Cir. 2012) ("In

15  [*Phillips*, 415 F.3d 1303 at 1323], this court 'expressly rejected the contention that if a patent

16  describes only a single embodiment, the claims of the patent must be construed as being limited

17  to that embodiment.'"); *see also Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1342 (Fed.

18  Cir. 2010) ("[I]t is improper to read limitations from a preferred embodiment described in the

19  specification—even if it is the only embodiment—into the claims absent a clear indication in the

20  intrinsic record that the patentee intended the claims to be so limited.") (citation omitted)."), *cert.*

21  *denied on other grounds*, 564 U.S. 1018 (2011).  Therefore, while the embodiment described by

22  defendant has multiple protrusions and multiple mounting holes, this does not limit the scope of

23  claim 1 and does not outweigh the clear language of the claim itself.  The court therefore

24  concludes that the intrinsic evidence of the '539 patent supports defendant's construction of "a

25  number of" as "at least one."

26      "In addition to the claim language and the specification, the patent's prosecution history

27  may be considered if it is in evidence. . . .  The prosecution history consists of the complete

28  record of the proceedings before the [Patent and Trademark Office ('PTO')] and includes the

1   prior art cited during the examination of the patent." *Taction Tech., Inc. v. Apple Inc.*, 686 F.

2   Supp. 3d 995, 1017 (S.D. Cal. 2023) (alteration in original) (internal citations and quotation

3   marks omitted) (citing *Phillips*, 415 F.3d at 1317).  "[A] court should consult the patent's

4   prosecution history so that the court can exclude any interpretation that was disclaimed during

5   prosecution." *Sorenson v. Int'l Trade Comm'n*, 427 F.3d 1375, 1378 (Fed. Cir. 2005).  However,

6   evidence of the prosecution history cannot be used "for the purpose of varying or contradicting

7   the terms of the claims." *DNA Genotek Inc.*, 671 F. Supp. 3d at 1117 (internal quotation marks

8   omitted) (quoting *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1373 (Fed. Cir.

9   2022)).

10          As discussed above, the '539 patent was preceded by rejected patent application U.S.

11  Patent No. 11,660,995.  (Doc. No. 37 at 5.)  That patent application was denied as unpatentable

12  over the Fan patent, but the examiner found that the independent claim of that patent application

13  would be allowable if it included the limitations introduced by the dependent claims 5 and 6 of

14  that application.  (Doc. No. 37-1 at 60.)  Those limitations were that the cupholder adapter that

15  the 11,660,995 patent application disclosed must have "at least one spacer positioned between the

16  cylindrical cup-holder and the adapter base" and that the cupholder adapter must further have a

17  "plurality of legs . . . configured to expand and retract via rotation of the cupholder" and which

18  "[has] a screw gear . . . to enable [that] movement of the plurality of legs via rotation."  (Doc. No.

19  37-1 at 48.)  The examiner made no mention of requiring an alteration to the language in the

20  patent application regarding the "number of" mounting holes in order for the '539 patent to be

21  allowable.

22          Plaintiffs contend that the examiner would not have allowed the invention unless "a

23  number of" referred to at least two mounting holes and at least two protrusions, since otherwise

24  the invention would have been covered by the Fan patent.  (Doc. No. 37 at 26.)  It appears to the

25  court that plaintiffs' argument is that any cupholder adapter configuration which is achievable

26  with a single mounting hole and a single screw is covered by the Fan patent, and that therefore the

27  '539 patent must anticipate more than one mounting hole and more than one protrusion.  (*Id.* at

28  26.)  Indeed, the examiner found that U.S. Patent No. 11,660,995's claim 3, which claims the

cupholder adapter without the spacer or a plurality of legs but which did allow for "multiple configurations" because it could be installed "aligned with the adapter base's axis . . . [or] not aligned with the adapter base's axis[,]" was not patentable over the Fan patent. (Doc. No. 37-1 at 58.) The examiner found that while the Fan patent did not explicitly disclose a non-aligned configuration, it would have been obvious to someone with ordinary skill in the art to create the non-aligned configuration. (*Id.*) But this finding is not pertinent here. The question now before the court is whether the cupholder adapter of the '539 patent which *includes* the limitation of a spacer or plurality of legs requires more than one mounting hole and more than one protrusion. Plaintiffs' argument is akin to asserting that if there were a patent for a specific four-wheel vehicle design that any design for a vehicle can no longer have four wheels without infringing on the prior patent. This is obviously not the case. The court concludes that the prosecution history of the '539 patent does not weigh against defendant's proposed construction of the term "a number" as meaning "at least one."

Because the intrinsic evidence of the '539 patent supports defendant's construction, the court will adopt defendant's construction of "a number of."

**H.    "Mounting holes"**

| CLAIM TERM | PLAINTIFFS' PROPOSAL | DEFENDANT'S PROPOSAL | COURT CONSTRUCTION |
|---|---|---|---|
| "mounting holes" | Fastening hole capable of accepting the riser columns of the spacer or the adapter base | Plain and ordinary meaning | Plain and ordinary meaning |

(Doc. No. 33 at 8–9.)

Claim 1 of the patent recites that the cupholder adapter comprises in part "[an] attachment member compris[ing] a number of mounting holes . . . ." (Doc. No. 34-1 at 25.) In their response to defendant's opening claim construction brief, plaintiffs retracted that proposed construction

and accepted defendant's construction.  (Doc. No. 37 at 27.)  Accordingly, the court will adopt

the construction that "mounting holes" should be interpreted by its plain and ordinary meaning.

I.      **"Hole of the at least one protrusion of the number of protrusions"**

| CLAIM TERM | PLAINTIFFS' PROPOSAL | DEFENDANT'S PROPOSAL | COURT CONSTRUCTION |
|---|---|---|---|
| "the hole of the at least one protrusion of the number of protrusions" | An open fastening hole at the top of a riser column | Plain and ordinary meaning | An open fastening hole at the top of a protrusion |

(Doc. No. 33 at 9–10.)

Claim 1 of the patent recites that the cupholder adapter comprises, in part, "a number of

mounting holes and . . . a number of protrusions . . . at least one protrusion of the number of

protrusions having a hole, wherein a mounting hole of the number of mounting holes is

configured to align with the hole such that a fastener can extend through the mounting hole and

the hole of the at least one protrusion of the number of protrusions."  (Doc. No. 34-1 at 25.)  The

parties do not appear to dispute what this term is intended to capture but instead dispute only

whether the court must offer a construction of this term.  Defendant contends that the term "the

hole of the at least one protrusion of the number of protrusions" should be understood by its plain

and ordinary meaning and that plaintiffs' proposed construction improperly adds ambiguous

limitations to the term.  (Doc. No. 34 at 26.)  Plaintiffs argue that their construction is necessary

because there is no generally accepted ordinary meaning for "the hole of the at least one

protrusion of the number of protrusions" particularly in light of the design having multiple hole

structures.  (Doc. No. 37 at 27–28.)

The court will adopt an edited version of plaintiffs' proposed construction.  "[T]he

purpose of claim construction is to clarify the claim language, not to add ambiguous limitations."

*In re Townshend Pat. Litig.*, No. 02-cv-04833-JF, 2004 WL 1920049, at *4 (N.D. Cal. Aug. 26,

2004).  The court finds that the patent language in this respect is ambiguous because of the

repeated use of the term "hole" to refer to different structures.  (Doc. No. 34-1 at 25); *see also*

*Grupo Bimbo, S.A. B. De C.V. v. Snak King Corp.*, No. 13-cv-02147-AB-VBK, 2014 WL

12591935, at *6 (C.D. Cal. Dec. 2, 2014) (discussing how the use of different terms to refer to a

structure creates a presumption that they refer to different structures).  Under these circumstances,

failing to provide a construction of this term beyond plain and ordinary meaning would risk

confusing the jury.  *See, e.g.*, *Sealant Sys. Int'l, Inc. v. TEK Glob. S.R.L.*, Nos. 11-cv-00774-PSG,

11-cv-01649-PSG, 2012 WL 3763794, at *6 (N.D. Cal. Aug. 29, 2012) (discussing how two

different terms which refer to different structures should be given separate constructions to ensure

the jury does not confuse their functions).  The edited version of plaintiffs' proposed construction

makes it clear that the "hole" structure this term refers to is a hole in one of the protrusion

elements such that a fastening element can be placed into it and a mounting hole simultaneously

in order to join the elements of the cupholder adapter.

**J.   "Spacer"**

| CLAIM TERM | PLAINTIFFS' PROPOSAL | DEFENDANT'S PROPOSAL | COURT CONSTRUCTION |
|---|---|---|---|
| "spacer" | A height extension ring not integrated with the adapter base having two or more riser columns has an open fastening hole at the top of the column | Plain and ordinary meaning | Plain and ordinary meaning |

(Doc. No. 33 at 10.)

Claim 1 of the patent recites that the cupholder adapter comprises in part "[an] adapter

base or a spacer compris[ing] a number of protrusions . . . ."  (Doc. No. 34-1 at 25.)  In their

response to defendant's opening claim construction brief, plaintiffs retracted that proposed

construction and accepted defendant's construction.  (Doc. No. 37 at 28.)  Accordingly, the court

will adopt the construction that "mounting holes" should be interpreted by its plain and ordinary meaning.  *See Zimmer, Inc.*, 822 F.3d at 1320 ("Generally, a claim term is given its ordinary and customary meaning—the meaning that a term would have to a person of ordinary skill in the art in question at the time of the invention.")

**CONCLUSION**

For the reasons explained above, the court adopts the constructions for the claim terms as stated in this order.

IT IS SO ORDERED.

Dated:  __**June 25, 2025**__              _____

DALE A. DROZD
UNITED STATES DISTRICT JUDGE