Louis F. Teran (SBN 249494)
lteran@slclg.com
SLC LAW GROUP
1055 E. Colorado Blvd., Suite #500
Pasadena, CA 91106
Telephone:  (818) 484-3217 x200
Facsimile:  (866) 665-8877

Attorneys for Defendant
Benjamin D. Cook

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOPFIRE LIMITED, et al., <br><br>          Plaintiffs, <br><br>    v. <br><br> BENJAMIN D. COOK, <br><br>          Defendant. | Case No.:  2:23-cv-02503-DAD-JDP <br><br><br> **DECLARATION OF DEFENDANT'S DESIGNATED EXPERT WITNESS AMIR SADJADPOUR** |
| BENJAMIN D. COOK, <br><br>          Counter-Claimant, <br><br>    v. <br><br> TOPFIRE LIMITED, et al., <br><br>          Counter-Defendant | |

1

DEFENDANT'S EXPERT WITNESS DECLARATION

I, Amir Sadjadpour, declare, that if called as a witness, I could and would, competently testify under oath to the following, of which I have personal knowledge:

1.     I have been retained by Defendant Benjamin Cook to provide expert testimony in this action regarding, among other things, the infringement of U.S. Patent No. 11,772,539 by the product identified as an Adjustable Car Cup Holder Expander sold by Plaintiffs.

2.     I have personal knowledge of the facts set forth herein, and could and would testify competently thereto if sworn as a witness.

## I.     <u>QUALIFICATIONS</u>

3.     I am an engineering executive with over 25 years of experience working as an engineer with various complex technologies and scientific research.  I have a Ph.D. in Applied Mechanics and a Masters Degree in Mechanical Engineering both issued to me by the California Institute of Technology ("Caltech").  I have been a certified Professional Engineer since 2011 and have published numerous technical papers in the field of engineering.  Attached hereto as **Exhibit A** is a true and correct copy of my Curriculum Vitae.

## II.     <u>COMPENSATION</u>

4.     I am being paid $450 per hour for research and $650 per hour for deposition or trial appearances.

## III.     <u>DOCUMENTS REVIEWED</u>

5.     I have been provided with and reviewed the following materials regarding this case:

a.     U.S. Patent No. 11,772,539;

b.      The Claim Construction Order (ECF No. 44); and

c.      A sample of an Adjustable Car Cup Holder Expander sold by Plaintiffs Topfire Limited et al. through the website located on www.amazon.com under the Amazon Standard Identification Numbers ("ASIN")  B09NBKXSLL; B09N8K3H8Y; B0BFWJNNRL; B0CC1XPK1Z; B09GLVQZ1Q; and B0BD56KZ19 (hereinafter referred to the "Accused Product").

**IV.      OPINION**

6.      I have reviewed U.S. Patent No. 11,772,539, including claim 1 and all its elements.

7.      I also reviewed the Claim Construction Order.

8.      I compared all of the elements in claim 1 of U.S. Patent No. 11,772,539 to the Accused Product.

9.      As explained in detail below, it is my opinion with reasonable degree of probability that every element of claim 1 of U.S. Patent No. 11,772,539 is literally and unequivocally present in the Accused Product.

**A.      CLAIM 1 of U.S. Patent No. 11,772,539**

*i.      "A cupholder adapter configured for use with an existing cupholder on a vehicle"*

10.      The Accused Product is sold in a box which expressly identifies the Accused Product as an "Adjustable Car Cup Holder Expander."  A true and correct photograph of the package box in which the Accused Product is sold by Plaintiffs is attached hereto as **Exhibit B**.

11.     In addition, the Accused Product is sold with a "Quick Install Guide" in which "Step 1" expressly states, "Place the cup expander in the car's console cup holder and make sure the rotating base is aligned with the inner wall of the car's console cup holder."  A true and correct photograph of the Quick Install Guide is attached hereto as **Exhibit C**.

12.     Based on the foregoing, it is my opinion with reasonable degree of probability that the Accused Product is "a cupholder adapter configured for use with an existing cupholder on a vehicle."

## ii.     *"a cylindrical cupholder having a hollow internal volume"*

13.     The Accused Product comprises a cupholder as is identified by the Quick Install Guide.  See *Ex. C.*

14.     The cupholder of the Accused Product is largely cylindrical in shape with a top outside diameter measured at approximately 4.5 inches, a bottom outside diameter measured at approximately 4.4 inches, and a height of approximately 3 inches.  True and correct photographs of the cupholder of the Accused Product is attached hereto as **Exhibit D**.

15.     Therefore, the diameter of the cupholder varies by 0.1 inches from the top to the bottom of the cupholder over a height of 3 inches.  This means that the sidewall of the cupholder is angled at approximately 1.7 degrees.

16.     Based on the forgoing measurements, I would classify the cupholder to be cylindrical in shape.

17.     It is my understanding that the Parties in this case had a dispute over the meaning of the term "cylindrical" which the Court defined as, "Having the approximate form of a cylinder including variations in diameter along the length of the cylinder."

18.     Therefore, based on the measurements of the cupholder as indicated above and the Court's definition of the term "cylindrical", it is my opinion with reasonable degree of probability that the cupholder in the Accused Product is cylindrical.

19.     In addition, the box in which the Accused Product is sold expressly describes the Accused Product to have, "broaden top, fit for 3" – 4" bottles and cups." See *Ex. B*.

20.     Even more, the Quick Install Guide expressly states that the Accused Product "holds cups/bottles of diameter 3" – 4"."  See *Ex. C*.

21.     In fact, the cupholder of the Accused Product has a hollow internal volume that is over 4 inches in diameter and designed to fit therewithin a cup or bottle of 3 to 4 inches in diameter.  Essentially, the cupholder of the Accused Product is designed to hold a cup or bottle within the hollow internal volume.  See *Ex. D*.

22.     Accordingly, based on the foregoing, it is my opinion with reasonable degree of probability that the Accused Product has "a cylindrical cupholder having a hollow internal volume."

### iii.     *"a collar attached to a top portion of the cylindrical cupholder, wherein the collar includes a plurality of tabs extending perpendicularly into the hollow internal volume"*

23.     The Accused Product includes a cylindrical cupholder, as discussed above. Even more, the cylindrical cupholder of the Accused Product has a collar attached to the top portion thereof.  See *Ex. D*.

24.     The collar attached to the top portion of the cylindrical cupholder of the Accused Product has four (4) tabs extending perpendicularly into the hollow internal volume.  See *Ex. D*.

25.     More specifically, the tabs are made of rubber material and are integrated perpendicularly to the collar.  These tabs extend radially inward into the hollow internal volume or towards the center of the cupholder.  See *Ex. D.*

26.     It is my understanding that the Parties in this case had a dispute over the meaning of the term "collar" which the Court defined as, "a circular lip device having two or more integrated cantilever structures extending towards the center portion of the lip."

27.     The collar attached to the top portion of the cylindrical cupholder of the Accused Product is circular in shape and can reasonably be described as "a circular lip device."  See *Ex. D.*

28.     Based on my knowledge and experience, I understand the definition of the term "cantilever" to be a projecting beam or member that is supported at only one end.

29.     The tabs that extend perpendicularly from the collar are supported only at one end since only one end of each tab is attached or integrated to the collar.  Therefore, the tabs can reasonably be described as "cantilever structures."

30.     Even more, each tab in the Accused Product extends towards the center portion of the collar or circular lip device.  See *Ex. D.*

31.     Even further, each tab in the Accused Product is integrated to the collar or the circular lip device.  Based on my knowledge and experience, I understand the definition of the term "integrate" to be a verb meaning to form or blend into a functioning or unified whole.

32.     The tabs of the Accused Product can be reasonably described as being integrated to the collar or circular lip device because the tabs are attached thereto in a manner that forms or blends them into a unified whole with the collar or circular lip device.

33.     More specifically, the tabs and the circular lip device of the Accused Product appear to be separate parts.  But, when they are attached to the cupholder of the

Accused Product, the tabs and the circular lip device are integrated to form or blend into a unified whole.

34.    In fact, none of the tabs can be separated or removed from the circular lip device that is attached to the cupholder of the Accused Product.  Even more, nothing in the box of the Accused Product or the Quick Install Guide indicates or infers in any way whatsoever that the tabs and/or the circular lip device can be separated from the cupholder of the Accused Product.

35.    After close inspection, I determined that the collar or circular lip device and the tabs are permanently attached to the cupholder of the Accused Product.  More specifically, these parts appear to be attached by glue, welding, sonic welding, or other process.  As such, the tabs or cantilever structures are integrated to the circular lip device or collar.

36.    Accordingly, based on the foregoing, it is my opinion with reasonable degree of probability that the Accused Product has "a collar attached to a top portion of the cylindrical cupholder, wherein the collar includes a plurality of tabs extending perpendicularly into the hollow internal volume."

*iv.    "an adapter base coupled to the cylindrical cupholder, wherein the adapter base includes a plurality of legs configured to expand and retract such that the diameter of the adapter base is configured to expand from a minimum diameter to a maximum diameter."*

37.    It is my understanding that the Parties in this case had a dispute over the meaning of the term "adapter base" which the Court defined as, "an adapter configured to act as the base for the cupholder."

38.    The Accused Product has an adapter configured to act as the base of the cupholder.  More specifically, the Quick Install Guide identifies the adapter base an

"expandable base" that is coupled to the bottom of the cylindrical cupholder configured to act as the base thereof. See *Ex. C.*

39.    Even more, the Quick Install Guide of the Accused Product identifies the "expandable base" as having three (3) legs that expand or retract from a minimum diameter of 2.5 inches to a maximum diameter of 3.75 inches. See *Ex. C.*

40.    Upon reviewing the adapter base of the Accused Product, I found that it has three (3) legs that can be expanded or retracted from a minimum diameter to a maximum diameter. The expansion and retraction of the legs in the Accused Product are achieved by the rotation of the cupholder coupled to the adapter base. A true and correct photograph of the adapter base of the Accused Product is attached hereto as **Exhibit E**.

41.    Accordingly, based on the foregoing, it is my opinion with reasonable degree of probability that the Accused Product has "an adapter base coupled to the cylindrical cupholder, wherein the adapter base includes a plurality of legs configured to expand and retract such that the diameter of the adapter base is configured to expand from a minimum diameter to a maximum diameter."

v.    ***"an attachment member positioned on a bottom surface of the cylindrical cupholder, wherein the attachment member enables the coupling of the adapter base and the cylindrical cupholder"***

42.    The Accused Product has an attachment member positioned on the bottom surface of the cylindrical cupholder. This is shown in the picture attached hereto as **Exhibit D**.

43.    The attachment member in the Accused Product is positioned and extends from the bottom surface of the cylindrical cupholder and it enables to coupling of the adapter base and the cylindrical cupholder. See *Ex. D.*

44.     A true and correct photograph of the cupholder of the Accused Product coupled with the adapter base is attached hereto as **Exhibit F**.

45.     Accordingly, based on the foregoing, it is my opinion with reasonable degree of probability that the Accused Product has "an attachment member positioned on a bottom surface of the cylindrical cupholder, wherein the attachment member enables the coupling of the adapter base and the cylindrical cupholder."

### vi.    *"wherein the attachment member comprises a number of mounting holes"*

46.     The attachment member of the Accused Product has two (2) mounting holes that are directly adjacent to one another.  One of the mounting holes is at the center of the bottom surface of the cylindrical cupholder.  This is shown in the picture attached hereto as **Exhibit D**.

47.     It is my understanding that the Parties in this case had a dispute over the meaning of the term "a number of mounting holes" which the Court defined as, "at least one mounting hole."

48.     As discussed above, the attachment member of the Accused Product has two (2) mounting holes.  See *Ex. D.*

49.     Accordingly, based on the foregoing, it is my opinion with reasonable degree of probability that the "attachment member [of the Accused Product] comprises a number of mounting holes.

### vii.   *"the adapter base or a spacer comprises a number of protrusions"*

50.     The adapter base of the Accused Product has one (1) protrusion that extends upward from the center thereof.  See *Ex. E.*

51.     It is my understanding that the Parties in this case had a dispute over the meaning of the term "a number of protrusions" which the Court defined as, "at least one protrusion."

52.     As discussed above, the adapter base of the Accused Product has one (1) protrusion.  See *Ex. E.*

53.     Accordingly, based on the foregoing, it is my opinion with reasonable degree of probability that the "adapter base [of the Accused Product] comprises a number of protrusions."

***viii.*     *"at least one protrusion of the number of protrusions having a hole"***

54.     As discussed above, the adapter base of the Accused Product has one (1) protrusion.  See *Ex. E*

55.     In addition, that one protrusion in the adapter base of the Accused Product has a hole.  See *Ex. E.*

56.     Accordingly, based on the foregoing, it is my opinion with reasonable degree of probability that "at least one protrusion of the number of protrusions [of the Accused Product has] a hole."

***ix.*     *"wherein a mounting hole of the number of mounting holes is configured to align with the hole"***

57.     Coupling of the adapter base to the cylindrical cupholder of the Accused Product requires one of the two mounting holes in the attachment member to be aligned with the hole in the protrusion of the adapter base.

58.     After aligning the two, the protrusion in the adapter base is inserted into the mounting hole in the attachment member.  See *Ex. F.*

59.     Accordingly, based on the foregoing, it is my opinion with reasonable degree of probability that "a mounting hole of the number of mounting holes is configured to align with the hole."

**x.     *"such that a fastener can extend through the mounting hole and the hole of the at least one protrusion of the number of protrusions."***

60.     To complete the coupling of the adapter base to the cylindrical cupholder of the Accused Product, a screw is fastened through the mounting hole in the cylindrical cupholder and through the hole in the protrusion of the adapter base.

61.     In fact, the hole in the protrusion of the adapter base of the Accused Product has a brass insert with internal threads designed to receive a fastener or a screw.  See *Ex. E.*

62.     Accordingly, based on the foregoing, it is my opinion with reasonable degree of probability that "a fastener can extend through the mounting hole and the hole of the at least one protrusion of the number of protrusions."

63.     Based on the foregoing, it is my opinion with reasonable degree of probability that every element of claim 1 of U.S. Patent No. 11,772,539 is literally and unequivocally present in the Accused Product.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on 14 October, 2025, in Pasadena, California.


_Amir Sadjadpour_
Amir Sadjadpour

# EXHIBIT A

# Amir Sadjadpour (PhD, PE)

Pasadena, CA | Amir.Sadjadpour@gmail.com | Linkedin.com/in/amirs | (301)473-3555

## EXECUTIVE SUMMARY

Engineering executive with 25+ years of experience leading global teams in delivering $XB+ infrastructure design and design-build programs across the energy, aerospace, transportation, scientific research and advanced technology sectors. Demonstrated success in managing large, multidisciplinary engineering partnerships and driving projects from concept through construction with full accountability for cost, schedule, contracts, safety and quality under stringent federal regulatory frameworks. Expertise in systems engineering, program risk management, and complex cross-functional program leadership, consistently aligning program execution with business goals and measurable outcomes. Recognized for advancing program delivery excellence, fostering global collaborations, ensuring compliance in mission-critical environments, and contributing as an industry thought leader through active engagement in professional societies.

*Mega-Project Leadership:* Lead structural engineering of $3.5B TMT Int'l Observatory, directing global teams, vendors, and stakeholders across planning, design, procurement, construction & rigorous schedule/cost controls. Former engineering leader at Bechtel, delivering U.S. Nuclear Evolutionary Power Reactor and alternative-fuel energy megaprojects worldwide.

*Strategic & Safety Leadership:* Recognized for driving HSE culture and proactive safety leadership—developing and executing site- and project-specific safety initiatives across global sites. Champion of high-performance culture, stakeholder alignment, and seamless integration of sustainability and innovation into project delivery.

*Global, Cross-Functional Oversight:* Adept at building collaborative, accountable teams across internal, contractor, vendor and supplier network and client organizations, navigating regulatory environments (ASCE, ACI, IBC, AISC, ASME, NUREG), managing risk, cost and schedule and aligning diverse priorities for successful outcomes.

## PROFESSIONAL EXPERIENCE

*TMT International Observatory (Pasadena, CA) — Lead Structural/Mechanical Engineering Manager (2009 – Present)*

- Directed engineering efforts for International Observatory program, managing design, analysis, integration, and construction planning of the observatory structure interfacing with JPL and other U.S./Global partner agencies.
- Managed interface control, vendor selection, and contract negotiations; improving schedule predictability by 25%.
- Led seismic risk mitigation strategy interfacing with USGS, Caltech and other institutes to develop an Earthquake Early Warning System for Hawai'i, ensuring design compliance & operational safety on active geological terrain.
- Mentored engineering teams and coordinated engineering activities of the global partners across structural, mechanical, and civil disciplines, delivering design packages that met QA/QC and applicable regulatory standards.
- Published technical papers, chaired 50+ SPIE conference sessions, led peer review and content development.

*National Science Foundation I-Corps (Remote) — Industry Mentor (Part-Time) (2024 – 2025)*

- Advised I-Corps technology commercialization teams, guiding over 100s customer discovery interviews.
- Supported early-stage product-market fit, leveraging market research, competitive analysis & business model validation.

*Bechtel Power | Central Structural Analysis Group (Frederick, MD) — Senior Civil/Structural Engineer (2006 – 2009)*

- Delivered EPC design packages for $20B U.S. EPR facility, applying DOE-aligned QA/QC processes and ASME/IBC design standards. Supported DOE/NRC documentation, test verification, and compliance reporting.
- Directed project control reconciliation for WI's $2.3B Elm Road Generating Station, achieving <2% variance.
- Led multidisciplinary teams & subcontractors to integrate engineering datasets and finalize turnover packages.
- Led scope development & design coordination on ENR-awarded international combined cycle power plant project.
- Served as VP of training board; deployed knowledge-sharing & mentorship programs to upskill engineering talent.

- Built cross-disciplinary team delivering predictive AI analytics model for mission-critical transportation networks.
- Directed full program scope: technical roadmap, budget control, stakeholder reporting, and risk management.
- Negotiated licensing agreements and external partnerships; led development lifecycle from req. through delivery.
- Recruited and developed a high-performing team of data scientists, analysts, engineers, and designers.

*California Institute of Technology (Pasadena, CA) — Engineering Researcher, Mechanics of Materials Lab (2001 – 2006)*

- Pioneered a micromechanics-based constitutive model for Shape Memory Alloys; cited ~200 times.
- Conducted advanced materials modeling using finite element analysis (FEA) and continuum mechanics.
- Established research collaborations across U.S., Israel, and France; secured joint grants and publications.
- Designed and taught graduate-level coursework in applied mechanics, engineering labs, and entrepreneurship.

*University of Tehran — Civil / Structural Engineering Researcher, Numerical Analysis & Modeling Lab (1999 – 2001)*

- Developed uncertainty-resilient fuzzy-logic modeling algorithm for structural systems; awarded top thesis recognition.
- Co-founded peer-reviewed Journal of Civil and Structural Engineering; served as founding board member.

## EDUCATION

- Ph.D., Applied Mechanics (2003 – 2006) and M.S., Mechanical Engineering (2001 – 2003) — Caltech
- M.S., Structural Engineering (1999 – 2001) and B.S., Civil Engineering (1995 – 1999) — University of Tehran

## CERTIFICATIONS

- **Professional Engineer (PE) (2011 – Present) — Maryland Board for Professional Engineers**
- **Project Management Foundations (2023) — Project Management Institute (PMI)**
- Community Leadership Development Program (2022 – 2023) — Leadership Pasadena (LP)
- Lean Six Sigma Green Belt (2015 – 2016) — Professional Development Center (GCC)
- **Project Management Certificate (2013 – 2014) — Caltech Center for Technology & Management Education**
- Civil/Structural Engineering Advanced Training (2006 – 2009) — Bechtel Power Corporation
- **Management of Technology (2004 – 2005) — Caltech Center for Technology & Management Education**
- **Engineering Management (2004 – 2005) — Caltech Center for Technology & Management Education**

## SELECTED HONORS & AWARDS

- Winner, SolidWorks International Ocean Cleanup Design Contest
- Bechtel Design Innovation, Engineering Leadership & 110th Anniversary Project Awards (x3)
- Caltech Engineering Excellence & Community Leadership Awards (x2)
- Fanni Reunion Foundation (FRF)'s Hami Scholarship Award
- Society of American Iranian Engineers & Architects Award of Excellence in Architecture & Engineering (x2)
- Leadership Recognition (x4) U.S. House of Representatives Certificate of Congressional Recognition 27th / District State of California Senate / California Legislature Assembly / Leadership Pasadena 2022

## TECHNICAL & LEADERSHIP SKILLS

- **Leadership (SPIE, EEW, Caltech, Entrepreneurship), Technical Mentorship (I-Corps, TIO, Akamai, EYU), Stakeholder Communication (PEF, Leadership Pasadena, Caltech Y, U of T, Polytechnic, Civitas, L@W)**
- Analysis: Finite Element Method (FEM), Failure Mode Effects Analysis (FMEA), Structural Dynamics, GD&T
- Mathematical Modeling, Simulation & Programming: MATLAB, Mathcad, Mathematica, Python, APDL, VBA
- Codes & Standards: IBC, AISC, ACI, ASME, AASHTO, ASTM, NUREG, NIST, NFPA
- Engineering: ANSYS, SolidWorks, NWx, AutoCAD, JIRA, MS Project, Confluence, GT Strudl, STAAD, RISA



**EXHIBIT B**

## PACKAGE IN WHICH ACCUSED PRODUCT IS SOLD BY PLAINTIFFS



**EXHIBIT C**



# QUICK INSTALL GUIDE

## CAR CUP HOLDER & EXPANDER
Holds cups/bottles of diameter 3" - 4"



EASY INSTALLATION

**RUBBER COASTER**
To help eliminate rating noise

**CUP HOLDER**
To hold cups/bottles of diameter 3"-4"

**RUBBER TABS**
To help stabilize the cup

**U-SHAPE GROOVE**
To fit for mugs or bottles with a handle

**EXPANDABLE BASE**
To fit for diameter 2.5-3.75"
center console cup holder

STEP1
Place the cup expander in the car's console cup holder and make sure the rotating base is aligned with the inner wall of the car's console cup holder.

STEP2
Rotate the cup holder clockwise to expand until it fits perfectly with the car's console cup holder.

STEP3
Put the rubber coaster on the bottom of the cup holder and the installation is finished.

**UPGRADED DISPLACEMENT FUNCTION**

① ② ③

Tip: Please adjust the position of the cup holder according to the actual situation of your vehicle. If you need to use two different positions at the same time, please install the first cup holder as shown in picture③, and then install the second cup holder in the position shown in picture①.



# EXHIBIT D

# ACCUSED PRODUCT

## Cylindrical Cupholder with Collar and Tabs



# EXHIBIT E

## ACCUSED PRODUCT

## Adapter Base

Protrusion Having a Hole



Adapter Base

Legs at Maximum Diameter



Legs at Minimum Diameter

**EXHIBIT F**

**ACCUSED PRODUCT**

**Cupholder Coupled to Adapter Base**



**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 1055 East Colorado Blvd., Suite 500, Pasadena, CA 91106.  My electronic notification address is lteran@slclg.com.

On October 17, 2025, I served the within document(s) described as:

**DECLARATION OF DEFENDANT'S DESIGNATED EXPERT WITNESS AMIR SADJADPOUR**

on the interested parties in this action as stated below:

SEE ATTACHED SERVICE LIST

_X_    I placed a true copy of the foregoing document(s) in a sealed envelope addressed as set forth above.  I deposited each such envelop for mailing with USPS on that same day.

_X_    I emailed all of the pages of the above-entitled document to the recipients' emails as indicated in the attached service list.

____    I faxed all of the pages of the above-entitled document to the recipients' facsimile number as indicated in the attached service list.

____    I caused all of the pages of the above-entitled document to be delivered by hand to the offices of each recipient as indicated in the attached service list.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:  October 17, 2025

By:_____

Louis F. Teran

## SERVICE LIST
Topfire Limited et al. v. Benjamin D. Cook
Case No. 2:23-cv-02503-DAD-JDP


Alexander Chen
Alexc@inhouseco.com
Katja M. Grosch
kmg@inhouseco.com
Theodore S. Lee
Tlee@inhouseco.com
**INHOUSE CO. LAW FIRM**
7700 Irvine Center Drive, Suite 800
Irvine, CA 92618
Telephone:  949-250-1555
Facsimile:   714-882-7770




DATED:  October 17, 2025


By:_____

      Louis F. Teran

      Attorney for
      Defendant/Counter-Claimant
      Benjamin D. Cook

13