Alexander Chen [SBN 245798]
Alexc@inhouseco.com
Theodore S. Lee [SBN 281475]
Tlee@inhouseco.com
**INHOUSE CO. LAW FIRM**
7700 Irvine Center Drive, Suite 800
Irvine, CA 92618
Telephone: 949-250-1555
Facsimile: 714-882-7770

Attorneys for Plaintiffs

INHOUSE CO. LAW FIRM

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **TOPFIRE LIMITED**, a foreign company; **HK MIUSON INTERNATIONAL CO., LIMITED**, a foreign company; **JIANGGONGXIUSHENZHENGUOJI-MAOYIYOUXIANGONGSI**, a foreign company; and **SHENZHENSHILINGBINQIPEI-YOUXIANGONGSI**, a foreign company.<br><br>Plaintiffs,<br><br>v.<br><br>**BENJAMIN D. COOK.**, an individual; and **DOES 1 through 10**, inclusive.<br><br>Defendants. | Case No. 2:23-cv-02503-DAD-JDP<br><br>**DECLARATION OF ERIC NOBLE IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND NON-INFRINGEMENT AND FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES** |
| AND RELATED CROSS-ACTIONS | |

INHOUSE CO. LAW FIRM

I, Eric Noble, declare:

1. I am an expert in automotive product design, ergonomics, and consumer-facing component evaluation. I have been retained by Plaintiffs in this action. I have personal knowledge of the matters stated herein and could and would testify competently thereto. A true and correct copy of my curriculum vitae, which summarizes my qualifications and experience, is attached as **Exhibit A.**

2. I submit this Declaration in support of Plaintiffs' consolidated motion for summary judgment concerning non-infringement and invalidity of U.S. Patent No. 11,772,539 ("the '539 Patent").

3. I previously prepared an expert report dated October 17, 2025 (the "Report"). A true and correct copy of my Report, with supporting exhibits and claim charts, is attached as **Exhibit B**. The opinions stated in this Declaration are the same opinions expressed in the Report and are offered to a reasonable degree of professional certainty.

4. In forming my opinions, I reviewed, among other things: (a) the '539 Patent and its file history; (b) the Court's Claim Construction Order; (c) the Seven Sparta expander product sold under Amazon ASIN B07PMHPJJF/model CP1210, identified as the "Expander Product" in my report; (d) the prior art references and materials described in my Report; and (e) exemplar accused products identified in my Report.

5. I personally inspected and performed a teardown of an exemplar of Plaintiffs' accused cupholder adapter. During my teardown, I examined the collar/rim structure and the inward tab components. The tabs in the accused product are not molded as part of the collar. They are separate insert pieces, formed separately of a wholly different material. Further, their primary mechanical fastening is not via the collar itself, but via an altogether different part of the cupholder adapter. I observed the tabs both installed and removed, and I handled the components directly.

6. My teardown observations are consistent with the photographs and materials I reviewed in preparing my Report. The tabs' dissimilar material, separate forming, modular assembly and disassembly, and predominant structural fastening to a different, lower part of the cupholder

adapter are some of the factual bases for my technical conclusion that the accused products do not include tabs that are integrated into the collar structure.

7. As explained in **Exhibit B**, I also examined the Seven Sparta expander product sold under ASIN B07PMHPJJF/model CP1210. Based on my inspection and the materials I reviewed, I concluded that this product discloses each of the structural features described in my Report for purposes of my invalidity analysis.

8. The opinions expressed in **Exhibit B** regarding non-infringement and invalidity are based on my teardown observations, my inspection of the prior-art product, and my review of the materials identified above.

9. This Declaration does not offer any new opinions beyond those in my Report.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 9, 2026 at Orange, California.

/s/ *Eric Noble*
Eric Noble

INHOUSE CO. LAW FIRM

# Exhibit A



Eric Noble

Eric is founder and president of The CARLAB, an advanced product design and consulting firm which helps manufacturers and suppliers plan and design new vehicles. In addition to extensive workfor EU, J3, K2 and Big3 carmakers on vehicles including ICEs, NGVs and BEVs, the company serves utilities (water, natural gas, electric), global auto clubs and consumer product firms such as Samsung and Nike with design consulting and consumer research.

Mr. Noble's primary work is target customer definition, and perception of product, as pioneered by industrial design pioneer Henry Dreyfuss. The planning briefs and design testing that result have included the Ford Focus EV, Bentley Continental GTC, more than 20Hyundais and Subarus, and the 10th Gen Honda Civic, the latter being the most successful generation of that car, ever. His design perception research acumen extends from traditional focus groups to clay model testing of new designs and extensive use of eye-tracking technology with potential buyers. The latter quantitative testing includes mapping where consumers look when evaluating/recognizing a vehicle body design, and also whether elements of a design contribute or detract from consumers' recognition, perception and affinity for a vehicle body design.

Eric is Professor of Vehicle Technology in the Transportation Design Department at ArtCenter College of Design in Pasadena, the foremost car design program in the world, and a former Head Judge for the Active Lifestyle Vehicle Awards (ALV), Lead Judge for Core77 Design Awards, Transportation, and an annual judge for Formula SAE competitions. He has also been held several patents on automotive components. Mr. Noble is an occasional expert witness in automotive design cases, including Straman vs. Volkswagen (settled), and Tesla vs. Fisker (JAMS, settled).

He is a respected commentator and expert analyst on automotive design, a member of the Motor Press Guild, Society of Automotive Engineers(SAE) and the American Society of Mechanical Engineers (ASME). He was formerly the factory track driver for Beck Development and today frequently off-roads with his family to recreation in the U.S. and in Baja California, Mexico.

# Exhibit B

Alexander Chen [SBN 245798]
Alexc@inhouseco.com
Katja M. Grosch [SBN 266935]
kmg@inhouseco.com
Theodore S. Lee [SBN 281475]
Tlee@inhouseco.com
**INHOUSE CO. LAW FIRM**
7700 Irvine Center Drive, Suite 800
Irvine, CA 92618
Telephone: 949-250-1555
Facsimile: 714-882-7770

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**TOPFIRE LIMITED**, a foreign company; **HK MIUSON INTERNATIONAL CO., LIMITED**, a foreign company; **JIANGGONGXIUSHENZHENGUOJI-MAOYIYOUXIANGONGSI**, a foreign company; and **SHENZHENSHILINGBINQIPEI-YOUXIANGONGSI**, a foreign company.

Plaintiffs,

v.

**BENJAMIN D. COOK.**, an individual; and **DOES 1 through 10**, inclusive.

Defendants.

Case No. 2:23-cv-02503-DAD-JDP

**NONINFRINGEMENT AND INVALIDITY EXPERT REPORT OF ERIC NOBLE REGARDING UNITED STATES PATENT NO. 11,772,539 B2**



INHOUSE CO. LAW FIRM

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. QUALIFICATIONS AND EXPERIENCE INTRODUCTION ..... 1

III. MATERIALS CONSIDERED ..... 3

IV. THE PATENT-IN-SUIT ..... 3

V. THE ACCUSED PRODUCTS ..... 6

A. IDENTIFYING THE ACCUSED PRODUCTS ..... 6

B. OPERATION OF THE ACCUSED PRODUCTS ..... 9

VI. APPLICABLE LEGAL PRINCIPLES FOR INFRINGEMENT / NON-INFRINGEMENT ANALYSIS ..... 11

A. DIRECT INFRINGEMENT ..... 11

B. CLAIM INTERPRETATION ..... 12

C. LITERAL INFRINGEMENT ..... 12

D. DOCTRINE OF EQUIVALENTS ..... 13

i. The Function-Way-Result Test ..... 14

ii. The Insubstantial-Difference Framework/Test ..... 14

E. A PERSON OF ORDINARY SKILL IN THE ART (“POSITA”) ..... 14

VII. COURT’S CLAIM CONSTRUCTION ..... 15

VIII. INFRINGEMENT / NON-INFRINGEMENT ANALYSIS ..... 17

A. LITERAL INFRINGEMENT ANALYSIS OF INDEPENDENT CLAIM 1 ..... 17

i. Cylindrical cupholder ..... 17

ii. Collar with integrated tabs ..... 17

iii. Adapter base with expandable legs ..... 19

iv. Attachment member and fastener system ..... 19

v. Literal Infringement Analysis: Conclusion ..... 21

B. DOCTRINE OF EQUIVALENTS ANALYSIS OF “COLLAR WITH INTEGRATED TABS” LIMITATION OF CLAIM 1 ..... 21

i. Function ..... 21




INHOUSE CO. LAW FIRM

ii. Way ..... 22

iii. Result ..... 22

iv. Insubstantial-Differences Analysis ..... 22

v. Doctrine of Equivalents: Conclusion ..... 23

C. CONCLUSION AS TO INFRINGEMETN / NON-INFRINGEMENT ANALYSIS ..... 23

IX. APPLICABLE LEGAL PRINCIPLES FOR VALIDITY / INVALIDITY ANALYSIS ..... 23

A. INVALIDITY—ANTICIPATION ..... 24

B. INVALIDITY—OBVIOUSNESS ..... 24

X. VALIDITY / INVALIDITY ANALYSIS ..... 25

A. VALIDITY / INVALIDITY ANALYSIS: INDEPENDENT CLAIM 1 ..... 25

i. Cylindrical cupholder with hollow internal volume ..... 26

ii. Collar with integrated tabs ..... 28

iii. Adapter to Act As the Base for the Cupholder ..... 30

iv. Attachment Member on Bottom Surface ..... 31

v. Mounting Holes, Protrusions, and Fasteners ..... 32

vi. Conclusion as to Validity / Invalidity Analysis of Claim 1 ..... 34

B. VALIDITY / INVALIDITY ANALYSIS ON DEPENDENT CLAIM 2: EXPANDABLE AND RETRACTABLE LEGS VIA ROTATION OF THE CUPHOLDER ..... 34

i. The Prior Arts Discloses Plurality of Legs Configured to Expand and Retract Via Rotation of the Cupholder ..... 35

ii. Motivation to Include this Feature ..... 38

iii. Conclusion as to Validity / Invalidity Analysis of Claim 2 ..... 38




INHOUSE CO. LAW FIRM

C. VALIDITY / INVALIDITY ANALYSIS ON DEPENDENT CLAIM 3: ALIGNED AND NOT ALIGNED AXIS ....................39

i. Prior Arts Discloses Aligned and Not Aligned Axis ....................39

ii. Motivation to Include Aligned and Not Aligned Axis ....................41

iii. Conclusion as to Validity / Invalidity Analysis of Claim 3 ....................42

D. VALIDITY / INVALIDITY ANALYSIS ON DEPENDENT CLAIM 4: MOUNTING HOLES OF ATTACHMENT MEMBER ENABLE MULTIPLE CONFIGURATIONS ....................42

i. Prior Art Discloses Mounting Holes Of the Attachment Member Enabling Multiple Configurations ....................42

ii. Motivation to Include Attachment Member Enabling Multiple Configurations ....................43

iii. Conclusion as to Validity / Invalidity Analysis of Claim 4 ....................44

E. VALIDITY / INVALIDITY ANALYSIS ON DEPENDENT CLAIM 5: SPACER ....................45

i. Prior Arts Discloses Spacer ....................45

ii. Motivation to Include a Spacer ....................46

iii. Conclusion as to Validity / Invalidity Analysis of Claim 5 ....................46

F. VALIDITY / INVALIDITY ANALYSIS: DEPENDENT CLAIM 6: SCREW GEAR PROVIDED TO ENABLE MOVEMENT OF LEGS VIA ROTATION ....................46

i. Prior Art Discloses Screw Gear Enabling Movement of Legs Via Rotation ....................47

ii. Motivation to Include the Use of a Screw Gear ....................48

iii. Conclusion as to Validity / Invalidity Analysis of Claim 6 ....................48

G. VALIDITY / INVALIDITY ANALYSIS ON DEPENDENT CLAIM 7: CUPHOLDER ADAPTER WHEREIN THE MINIMUM DIAMETER IS 2.6 INCHES AND THE MAXIMUM DIAMETER IS 3.8 INCHES ....................49



INHOUSE CO. LAW FIRM

i. Prior Art Discloses Adapter Base Operating Within Claimed Range.......49

ii. Motivation to Include the Claim Range.......49

iii. Critical Rebuttal.......51

iv. Conclusion as to Validity / Invalidity Analysis of Claim 7.......51

H. VALIDITY / INVALIDITY ANALYSIS ON DEPENDENT CLAIMS 2-7: CONCLUSION.......52

XI. CONCLUSION.......52

INHOUSE CO. LAW FIRM

INHOUSE CO. LAW FIRM

## I. INTRODUCTION

I, Eric Noble, hereby declare as follows:

1. I submit this declaration in the matter of *Topfire Limited, et al. vs. Benjamin D. Cook* in the United States District Court in the Eastern District of California.

2. I am over the age of twenty-one (21) and am competent to make this Declaration. All the facts herein are stated of my own personal knowledge and if called upon as a witness, I could and would competently testify thereto.

3. I am being compensated at a rate of $470 per hour for my services, exclusive of any third party expert service fees. My compensation does not depend on the outcome of the pending litigation between Plaintiffs and Defendant in the United States District Court in the Eastern District of California.

## II. QUALIFICATIONS AND EXPERIENCE

4. Based on my education and experience in transportation design – including more than 25 years of direct consumer research– I have been asked to render an opinion regarding how a person of ordinary skill in the art ("POSITA") would have viewed and evaluated whether Plaintiffs' accused products practice the limitations of Defendant's U.S. Patent No. 11,772,539 (the "'539 Patent"). In forming this opinion, I have applied the Court's claim constructions and considered the asserted claims on an element-by-element basis. My analysis addresses whether each limitation of the asserted claims is satisfied by the accused products, either literally or under the doctrine of equivalents. Consistent with my role as a technical expert, I do not offer legal conclusions, but instead provide a technical assessment of how a POSITA, as of the effective filing date, would understand the scope of the claims and whether the accused products include the required structures, functions, and results described in the '539 Patent.

5. In describing my professional work as "design," I do not mean design in the narrow sense of ornamental appearance, as is the focus of a design patent. In the automotive and consumer product fields, "design" encompasses both form and function. It includes not only the exterior styling of a component, but also the way the component operates, interfaces with other parts, and serves the end user. My practice involves evaluating and shaping products so that they meet consumer needs in terms of usability, ergonomics, durability, and performance, in addition to their visual appearance. Thus, when I state that I have designed or evaluated a product, I am referring to a holistic process that integrates both functional engineering considerations and consumer-facing aesthetics.

6. I am the founder and president of The CARLAB, an advanced product design and consulting firm that helps manufacturers and suppliers plan and design new vehicles. The company defines and researches buyers, creates design briefs, and does development work for future vehicle programs. Founded in 1999, it is the most influential auto product consultancy in North America, serving Original Equipment Manufacturers (OEMs) from AvtoVAZ (AutoVAZ) to Ferrari, Toyota to Hyundai, suppliers from Continental to Michelin, and the energy industry. In addition to extensive work for Audi, Bentley, FCA, Ferrari, Ford, Honda, Hyundai/Kia, Lexus/Toyota, Mahindra, Subaru, Volvo, and Volkswagen vehicles including ICEs, NGVs, and BEVs, the company serves utilities (water, natural gas, electric), global auto clubs, and consumer product firms such as Samsung and Nike with design consulting and consumer research. A majority of my practice is consumer design research. I architect, conduct, and analyze large scale consumer research intended to determine normal consumers' perception of the design of whole vehicles, vehicle systems, and vehicle components. I regularly "moderate" such research, which means I interview individual, or groups of, consumer(s) about how they perceive proposed and existing vehicle designs, including interiors and interior components. Such ordinary buyer research is done virtually (e.g. online focus groups), or in-person and in response to three-dimensional properties or to two-dimensional images shown on screens. My interview work around three dimensional properties and/or screen images includes thousands of mainstream vehicle users over more than a quarter century, and influenced wide-selling production vehicle designs including Honda Civic, Nissan and Chevrolet pickups, Toyota Grand Highlander, Subaru Forester, and many Hyundai and Kia vehicles. Consumer discussion of interior storage, including cupholder design and configuration is a regular part of such design testing.

7. I am a Professor of Vehicle Technology in the Transportation Design Department at ArtCenter College of Design in Pasadena, the foremost car design program in the world, with alumni leading design studios at nearly every major automaker. A core aspect of my curriculum includes teaching students methods of testing prospective designs with ordinary consumers in order to determine aspects of importance to buyers. My teaching at ArtCenter places me at the center of the global automotive design community, where I train and collaborate with the next generation of vehicle designers and innovators. This role underscores that my expertise extends beyond aesthetics to



INHOUSE CO. LAW FIRM

encompass ergonomics, usability, durability, and performance—core considerations in the design and evaluation of automotive components, systems and whole interiors and exteriors.

8. I also hold several patents on automotive components.

9. I have served as an expert witness in automotive design cases, including *Straman v. Volkswagen* and *Tesla v. Fisker*.

10. I have also served as a commentator and expert analyst on automotive design, a member of the Motor Press Guild, Society of Automotive Engineers (SAE), and the American Society of Mechanical Engineers (ASME).

11. For a summary overview of my background and career, I refer to the attached **Exhibit 1**.

12. I am actively acting as expert witness in the LKQ vs. GM cases for Irwin IP, LLP. I am also actively acting as expert witness in the case of Arex Industries, Inc. vs. Diode Dynamics, LLC. I have not testified as an expert witness in any other case in the previous 4 years.

## III. MATERIALS CONSIDERED

13. In preparing this Report, I have considered the documents listed in **Exhibit 2**, attached hereto, and any other materials identified herein. In forming the opinions expressed in this Report, I also relied upon my knowledge, experience, training, and education.

14. The opinions stated in this Report are based on information currently available to me. I reserve the right to continue my investigation and study, which may include a review of documents and information that may yet be produced including expert reports, as well as any testimony from depositions for which transcripts are not yet available and that may yet be taken in this case. Therefore, I reserve the right to expand or modify this Report as my investigation and study continue, and to supplement my opinions in response to any additional information that becomes available to me, to any matters raised by the parties, and/or other opinions provided by the parties' expert(s). I may use exhibits and demonstratives in my testimony.

## IV. THE PATENT-IN-SUIT

15. I understand that Defendant Benjamin Cook is identified as the named inventor of U.S. Patent No. 11,772,539 B2, entitled "Cupholder and Adapter for Large Containers During Vehicle Use." The '539 Patent issued on October 3, 2023, from an application filed on April 21, 2023. The '539 Patent claims priority to (1) U.S. Patent Application No. 17/592,418, filed on February 3, 2022, which issued



INHOUSE CO. LAW FIRM

as U.S. Patent No. 11,660,995, and (2) U.S. Provisional Application No. 63/146,581, filed on February 6, 2021.

16. The ’539 Patent contains a total of seven claims: one independent claim and six dependent claims. The asserted claims are reproduced below for ease of reference.

> **1.** A cupholder adapter configured for use with an existing cupholder on a vehicle, the cupholder adapter comprising:
> a cylindrical cupholder having a hollow internal volume;
> a collar attached to a top portion of the cylindrical cupholder, wherein the collar includes a plurality of tabs extending perpendicularly into the hollow internal volume;
> an adapter base coupled to the cylindrical cupholder, wherein the adapter base includes a plurality of legs configured to expand and retract such that the diameter of the adapter base is configured to expand from a minimum diameter to a maximum diameter;
> an attachment member positioned on a bottom surface of the cylindrical cupholder, wherein the attachment member enables the coupling of the adapter base and the cylindrical cupholder; and,
> wherein the attachment member comprises a number of mounting holes and the adapter base or a spacer comprises a number of protrusions, at least one protrusion of the number of protrusions having a hole, wherein a mounting hole of the number of mounting holes is configured to align with the hole such that a fastener can extend through the mounting hole and the hole of the at least one protrusion of the number of protrusions.
>
> **2.** The cupholder adapter of claim **1**, wherein the plurality of legs are configured to expand and retract via rotation of the cupholder.
>
> **3.**The cupholder adapter of claim **1**, wherein the cylindrical cupholder is configured to be coupled to the adapter base in a variety of configurations including at least (a) the cylindrical cupholder’s axis is aligned with the adapter base’s axis; and (b) the cylindrical cupholder’s axis is not aligned with the adapter base’s axis.
>
> **4.**The cupholder adapter of claim **1**, wherein the number of mounting holes of the attachment member enable multiple configurations of the cylindrical cupholder in relation to the adapter base including an aligned configuration and off-set configuration.



INHOUSE CO. LAW FIRM

**5.** The cupholder adapter of claim **1**, further comprising at least one spacer positioned between the cylindrical cupholder and the adapter base.

**6.** The cupholder adapter of claim **2**, wherein a screw gear is provided to enable the movement of the plurality of legs via rotation.

**7.** The cupholder adapter of claim **1**, wherein the minimum diameter is 2.6 inches and the maximum diameter is 3.8 inches.

17. Figure 5 included in the specification of the '539 patent illustrates the assembly of the invention claimed by the '539 patent. (Doc. No. 44, p3)




FIG. 5

18. The invention consists of an adapter base (200) to fit the device into a vehicle's cupholder. This adapter base uses adjustable legs (201) to fit into the vehicle's cupholder, by expanding or retracting as necessary to fill the space within the vehicle's cupholder. On top of this base is a "spacer" (202) which creates vertical space between the vehicle's cupholder and the invention's cupholder. This spacer appears to be a component of an "adapter base" in claim 1 of the patent. The cupholder then attaches to this spacer via the usage of "mounting holes" and "protrusions." (Doc. No. 44, p4)

19. Figures 8, 9, 10, and 11 of the '539 patent provide further detail of how the cupholder attaches to this adapter base. (Doc. No. 44, p4)




INHOUSE CO. LAW FIRM




FIG. 8




FIG. 9




FIG. 10




FIG. 11

20. On the bottom of the cupholder (100) is an attachment member (110) which consists of "mounting holes" (111). On the top of the spacer (202) are protrusions (210). To secure the cupholder on top of the spacer, one or more of the protrusions in the spacer are aligned with the one or more of the mounting holes of the cupholder. Further, a protrusion with a hole in it (211) such that a fastener like a screw can be worked through a mounting hole on the attachment member (110) into that hole at the top of the protrusion. (Doc. No. 44, pp 4-5)

## V. THE ACCUSED PRODUCTS

### A. IDENTIFYING THE ACCUSED PRODUCTS

21. The Plaintiffs' products accused of infringing on Defendant's 539 Patent are as follows (collectively, the "Accused Products" or individually, the "Accused Product"):

a. Amazon.com ASIN: **B09NBKXSLL**

   Item title: Upgraded Car Cup Holder Expander Adapter with Offset Adjustable Base, Compatible with Yeti 14/24/36/46oz Ramblers, Hydro Flasks 32/40oz, Other Large Bottles Mugs in 3.4"-4.0", 1 Pack

   Link: https://www.amazon.com/gp/product/B09NBKXSLL



INHOUSE CO. LAW FIRM



b. Amazon.com ASIN: **B09N8K3H8Y**

Item title: Upgraded Car Cup Holder Expander Adapter with Offset Adjustable Base, Compatible with

Yeti 14/24/36/46oz Ramblers, Hydro Flasks 32/40oz, Other Large Bottles Mugs in 3.4"-4.0", 2 Pack

Link: https://www.amazon.com/gp/product/B09N8K3H8Y

c. Amazon.com ASIN: **B0BFWJNNRL**

Item title: SEVEN SPARTA Cup Holder Phone Mount for Car Cup Holder Expander Adjustable Base with 360° Rotation Cup Phone Holder for Car Compatible with iPhone Samsung Galaxy All Smartphones Upgrade 2-in-1

Link: https://www.amazon.com/gp/product/B0BFWJNNRL



d. Amazon.com ASIN: **B0CC1XPK1Z**

Item Title: Seven Sparta Car Cup Holder Tray, 2 in 1 Car Food Tray Cup Holder Expander Compatible with Yeti, Hydro Flasks, Other Large Bottles Mugs in 3.4"-4.0", Car Travel Accessories for Long Trips

Link: https://www.amazon.com/gp/product/B0CC1XPK1Z



e. Amazon.com ASIN: **B09GLVQZ1Q**

Item title: Upgraded Large Cup Holder Expander for Car with Offset Expandable Base Compatible with Yeti Mug10/14oz Yeti Rambler 20/24/26/30/36/46oz Hydro Flasks 32/40oz Other Large Bottles in 3.4"-4" Diameter

Link: https://www.amazon.com/gp/product/B09GLVQZ1Q

f. Amazon.com ASIN: **B0BD56KZ19**

Item Title: Master Show 2-in-1 Car Cup Holder Cell Phone Holder, Large Car Cup Holder Expander with Phone Holder, Cell Phone Holder for Car, Compatible with iPhone, Samsung & All Smartphones

Link: https://www.amazon.com/gp/product/B0BD56KZ19

22. I understand that the cupholders identified by ASINs “B09NBKXSLL,” “B09N8K3H8Y,” “B0BFWJNNRL,” “B0CC1XPK1Z,” “B09GLVQZ1Q,” and “B0BD56KZ19” are mechanically similar. Each provides the same core functionality, including the ability to off-set the cupholder, and each employs the same mechanism to achieve that function. The differences among these ASINs relate only



INHOUSE CO. LAW FIRM

to packaging (single-pack versus two-pack) or to the inclusion of additional attachments, such as a phone holder or a food tray.

23. In particular, ASIN "B09NBKXSLL" is a cupholder expander adapter. ASIN "B09N8K3H8Y" is a two-pack of the same adapter identified by ASIN "B09NBKXSLL." ASIN "B0BFWJNNRL" is the same adapter with the addition of a phone holder. ASIN "B0CC1XPK1Z" is the same adapter with the addition of a food tray. ASIN "B09GLVQZ1Q" is the same adapter under another brand. ASIN "B0BD56KZ19" is the same adapter with a phone holder under another brand and is materially the same as ASIN "B0BFWJNNRL" Because these products are mechanically the same in all respects relevant to the asserted utility patent, I will refer to and use the ASIN "B09NBKXSLL" as the exemplary or representative accused product. My analysis of this representative product applies equally to all of the other, above identified ASINs.

### B. OPERATION OF THE ACCUSED PRODUCTS

24. The accused cupholder adapters include an attachment member located on the underside of the cupholder body. This attachment member contains two mounting holes and two protrusions.






25. The adapter base includes a central screw hole and a circular ring of thirty recesses or "negatives". These negatives are not through-holes but indentations designed to receive the protrusions



INHOUSE CO. LAW FIRM

on the attachment member. When the protrusions are seated in a selected pair of negatives, the cupholder is fixed in an off-set orientation relative to the adapter base. By rotating the cupholder and engaging different pairs of negatives in the adaptor base, the user can shift the off-set position of the cupholder in30 discrete, angular increments. Each increment is held into position by the pair of male tabs on the cupholder, which insert into a corresponding pair of negatives available circumferentially around the adapter.



26. When a screw is inserted through the central hole of the cupholder into the adapter base, the two protrusions on the attachment member engage with two of the negatives on the adapter base, and the cupholder and adapter base are aligned concentrically. When the screw is instead inserted through the second hole of the cupholder, the two protrusions on the attachment member engage with two of the thirty negatives on the adapter base. Depending on which pair of negatives the protrusions engage, the cupholder is fixed in an off-set position relative to the adapter base. By rotating the cupholder and repositioning the protrusions into different negatives around the ring, the user can shift the orientation of the cupholder relative to the adapter base by discrete angular increments.



INHOUSE CO. LAW FIRM

## VI. APPLICABLE LEGAL PRINCIPLES FOR INFRINGEMENT / NON-INFRINGEMENT ANALYSIS

27. I have not been asked to offer an opinion on the law; however, as an expert assisting the Court in determining infringement, I understand that I am obliged to follow existing law. Therefore, I have been asked to apply the following legal principles to my analysis.

28. I have been informed by counsel that it is critical to distinguish between the defenses of non-infringement and patent invalidity, as they address fundamentally different legal inquiries concerning a patent's claims. Non-infringement is a factual defense that presumes the patent is valid and focuses solely on whether the accused product or process falls outside the scope of the claims. My analysis for non-infringement involves a meticulous, element-by-element comparison of the accused device against the claim language. To establish non-infringement, it must be demonstrated that the accused device omits at least one essential limitation recited in each independent claim. If an independent claim is not met, the non-infringement conclusion extends logically to all claims that depend from it.

29. Conversely, the defense of patent invalidity is a direct challenge to the enforceability and legal standing of the patent claims themselves. This analysis compares the patent claims against the prior art (e.g., prior publications, patents, or public uses) to prove that the claimed subject matter lacked novelty (§102) or was obvious (§103) at the time of the invention. In the invalidity context, independent and dependent claims are considered separately. While invalidating a broad independent claim is significant, the narrower dependent claims must also be individually analyzed; they may remain valid if their additional limitations differentiate the invention sufficiently from the prior art, thereby acting as a critical fallback position for the patent owner. Ultimately, non-infringement is product-specific, while invalidity, if successful, permanently removes the claim from the legal landscape for all parties.

### A. DIRECT INFRINGEMENT

30. A patent's claims define what is covered by the patent. A product directly infringes a patent if it is covered by at least one claim of the patent. Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the '539 patent claim. The second step is to decide whether the accused has made, used, sold, offered for sale or imported within the United States a product covered by a claim of the patent. If it has, it infringes.



INHOUSE CO. LAW FIRM

31. One must consider each of the asserted claims of the patent individually, and decide whether the accused's product infringes that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if an independent claim is not infringed, then its dependent claims are not infringed. On the other hand, if an independent claim has been infringed, whether the additional requirements of its dependent claims have also been infringed must be separately decided.

32. In forming my opinions, I have relied on my understanding of the governing law of direct infringement, which is reflected in 35 U.S.C. § 271 and the following cases: *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co*., 520 U.S. 17 (1997); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310-11 (Fed. Cir. 2005); *DeMarini Sports, Inc. v. Worth, Inc*., 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).

### B. CLAIM INTERPRETATION

33. To determine whether an accused product has infringed the claims of a patent or whether the claims are valid, one must understand the patent claims. The Parties have stipulated to the construction of certain terms in the asserted patent claims. In addition, the Court has issued constructions for other claim terms at issue in this case. I will accept those interpretations as correct.

34. In forming my opinions, I have relied on my understanding of the governing law on claim interpretation, which is reflected in the following cases: *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc).

### C. LITERAL INFRINGEMENT

35. There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." To decide whether the accused's product literally infringes a claim of the '539 patent, one must compare that product with the patent claim and determine whether every requirement of the claim is included in that product. If so, the accused's product literally



INHOUSE CO. LAW FIRM

infringes that claim. If, however, the accused's product does not have every requirement in the patent claim, the accused's product does not literally infringe that claim. One must decide literal infringement for each asserted claim separately.

36. If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as every requirement in the claim is present in accused's product. The fact that accused's product also includes other parts will not avoid infringement, as long as it has every requirement in the patent claim.

37. In forming my opinions, I have relied on my understanding of the governing law of literal infringement, which is reflected in the following cases: *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir. 2005); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293 (Fed. Cir. 2005); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007).

**D. DOCTRINE OF EQUIVALENTS**

38. If one decides that the accused's product does not literally infringe an asserted patent claim, one must then decide whether that product infringes the asserted claim under what is called the "doctrine of equivalents."

39. Under the doctrine of equivalents, the product infringes an asserted patent claim if it includes parts that are identical or equivalent to the requirements of the claim. If the product is missing an identical or equivalent part to even one requirement of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents. Thus, in making a decision under the doctrine of equivalents, one must look at each individual requirement of the asserted patent claim and decide whether the product has either an identical or equivalent part to that individual claim requirement.

40. A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement.

41. Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if the part still meets the other requirements of the doctrine of equivalents set forth in this instruction.

i. <u>The Function-Way-Result Test</u>

42. One way to decide whether any difference between a requirement of an asserted claim and a part of the product is not substantial is to consider whether, as of the time of the alleged infringement, the part of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim (the "function–way–result test").

ii. <u>The Insubstantial-Difference Framework/Test</u>

43. In deciding whether any difference between a claim requirement and the product is not substantial, one may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement. The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the part in the product and the claim requirement is not substantial. The fact that a part of the product performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

44. In forming my opinions, I have relied on my understanding of the governing law of Doctrine of Equivalents, which is reflected in the following cases: *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma* (USA) Inc., 467 F.3d 1370, 1379-82 (Fed. Cir. 2006*); Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnston & Johnston Assoc. v. R.E. Service Co., 285 F.3d 1046* (Fed. Cir. 2002) (en banc); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos*., 16 F.3d 394, 397 (Fed. Cir. 1994).

**E. A PERSON OF ORDINARY SKILL IN THE ART ("POSITA")**

45. The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of the effective filing date of the patent. 35 U.S.C. § 103; *KSR Intern. Co. v. Teleflex, Inc*., 550 U.S. 398, 421 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 3 (1966).



INHOUSE CO. LAW FIRM

46. In my opinion, a person of ordinary skill in the art ("POSITA") as of the effective filing date of the '539 Patent (February 6, 2021) would have held at least a bachelor's degree in mechanical engineering, industrial design, automotive engineering, or a related discipline, or possessed equivalent practical experience. Such a person would also have had approximately two to three years of experience in the design and development of automotive interior components or consumer accessories, including familiarity with molded plastic parts, expandable or adjustable mechanisms, and fastening systems commonly used in vehicle cupholders and adapters. A POSITA would have been capable of interpreting patent drawings and specifications, and would have understood the ergonomic and consumer-use considerations relevant to cupholder design.

## VII. COURT'S CLAIM CONSTRUCTION

47. I have reviewed the Court's Claim Construction Order (Doc. No. 44, June 25, 2025) regarding U.S. Patent No. 11,772,539. Consistent with my role as an expert, I accept the Court's constructions as controlling and have applied them in forming my opinions. The Court construed the following terms:

a. **"Cylindrical"** – construed to mean *"having the approximate form of a cylinder including variations in diameter along the length of the cylinder."*

I interpret and apply this construction by treating cupholder bodies that generally exhibit a rounded, continuous profile with minor variations in diameter as satisfying this limitation.

b. **"Collar"** – construed to mean *"a circular lip device having two or more integrated cantilever structures extending towards the center portion of the lip."*

I apply this construction by requiring that the collar itself be manufactured with integral, non-modular cantilever tabs as part of its structure, rather than merely holding or accommodating separate inserts.

c. **"Includes a plurality of tabs"** – construed to mean *"comprising two or more tabs."*

I apply this construction by recognizing that at least two tabs must be present.

d. **"Adapter base"** – construed to mean *"an adapter configured to act as the base for the cupholder."*



INHOUSE CO. LAW FIRM

I apply this construction by treating the lower portion of a cupholder assembly that supports the cylindrical cupholder body as the adapter base.

e. **"Attachment member"** – given its plain and ordinary meaning.

I apply this construction by identifying the structure portion of the cupholder body that enables coupling to the adapter base.

f. **"A number of mounting holes" / "a number of protrusions"** – construed to mean *"at least one mounting hole"* and *"at least one protrusion."*

I apply this construction by recognizing that the claim is satisfied if the attachment member includes one or more mounting holes, and if there is at least one protrusion. In practice, this means that a single hole or a single protrusion is sufficient to meet the limitation, although additional holes or protrusions may also be present.

g. **"Mounting holes"** – given its plain and ordinary meaning.

I apply this construction by identifying the recesses or holes in the attachment member—whether they are through-holes (physical openings) or negatives (indentations)—that are designed to receive a fastener or to align with a protrusion. In either form, these mounting holes enable the cupholder body to be coupled to the adapter base.

h. **"The hole of the at least one protrusion of the number of protrusions"** – construed to mean *"an open fastening hole at the top of a protrusion."*

I apply this construction by requiring that the protrusion itself contain a fastening hole that can align with a mounting hole in the attachment member.

i. **"Spacer"** – given its plain and ordinary meaning.

I apply this construction by treating a spacer as a discrete component positioned between the cupholder body and the adapter base, serving to separate or create distance between those structures. An adapter base, mechanically built into the product and functioning without an intervening component (a spacer) between itself and the cupholder body, does not meet this limitation.

j. **Other terms** – including "legs," "diameter of the adapter base," "a fastener," "expand and retract via rotation of the cupholder," "aligned configuration," "off-set configuration," and "screw gear" – were adopted at their plain and ordinary meaning.



INHOUSE CO. LAW FIRM

I apply these terms according to their ordinary technical usage in the field of automotive accessories.

## VIII. INFRINGEMENT / NON-INFRINGEMENT ANALYSIS

48. I have been asked to apply the Court's claim constructions, as well as the claim term stipulations agreed upon by the Parties, to the Accused Products. Consistent with Federal Rule of Civil Procedure 26(a)(2)(B), my opinions are based on my review of the asserted patent, its prosecution history, the Court's claim construction order, the Parties' stipulations, and the technical information provided regarding the Accused Products. I understand that claim construction is a matter of law for the Court. Accordingly, I have not offered independent constructions of claim terms. Instead, I have applied the Court's constructions and stipulations to determine, from a technical perspective, whether the Accused Products meet the limitations of the asserted claims, either literally or under the doctrine of equivalents.

### A. LITERAL INFRINGEMENT ANALYSIS OF INDEPENDENT CLAIM 1

#### i. Cylindrical cupholder

49. Claim 1 requires "a cylindrical cupholder having a hollow internal volume." Under the Court's construction, the Accused Product's body, although tapered and including a side cutout, still has the approximate form of a cylinder and encloses a hollow internal volume. Accordingly, this limitation is satisfied.

#### ii. Collar with integrated tabs

50. Claim 1 further requires "a collar attached to a top portion of the cylindrical cupholder, wherein the collar includes a plurality of tabs extending perpendicularly into the hollow internal volume." The Court construed "collar" to require integrated cantilever structures, and "plurality of tabs" to mean two or more tabs. In the '539 Patent, the tabs are depicted and described as molded into, and structurally part of, or monolithic to, the collar itself.



INHOUSE CO. LAW FIRM




FIG. 2




FIG. 1

51. The Accused Product, by contrast, does not have integrated tabs, they are not monolithic to the collar. Instead, it employs separate, independently manufactured, modular tab inserts, with through holes, that are sandwiched and located with pins between components and can be removed, substituted or replaced by the manufacturer/assembler or by the end user.




52. Because the Court's construction requires the collar itself to include integrated cantilever structures, matching the 539 patent's drawings and non-plural description of the collar in Figures 2 and 3 and the BRIEF DESCRIPTION OF THE SEVERAL VIEWS OF THE DRAWINGS, respectively, the Accused Product does not meet this limitation literally.



INHOUSE CO. LAW FIRM

53. Moreover, the '539 patent expressly teaches that the "plurality of tabs includes tabs of different lengths and widths," a claimed structural-functional limitation that requires the collar to feature integrated and monolithic, variable-geometry cantilever tabs with different inward protrusion lengths that produce specific retention behavior across varying container sizes; the patent's detailed description clearly states that this variance in tab length allows some tabs, or a combination of tabs, to function in a particular, desirous way by remaining perpendicular to any nested drink container, thus providing different support than tabs that would otherwise be bent downward by insertion of drink containers having outside diameters greater than the interior diameter circumscribed by encircling tabs of otherwise uniform length. This teaching ties the claimed tab geometry to concrete functions (stabilization of wide, tall, and narrow containers and retention via some tabs remaining in a perpendicular orientation to the resultant container loading), a particular way of carrying loads (unbent tabs in lateral compression, as opposed to separate tabs in bending and/or shear loading pushing against a separate hoop with tolerance stacking effects), and predictable results (stable retention under vibration and lateral acceleration of the vehicle beneath). The claimed device's monolithic integration of these variable-length/width tabs also yields fixed scuff and thermal cycling and resultant service life, further distinguishing the claimed collar architecture from the Accused Product's separately manufactured, uniform length, removable tab inserts which create different load paths (including bending and shear loading), serviceability, tolerance behavior, and failure modes and are not equivalent without vitiating the patent's express structural limitation.

iii. <u>Adapter base with expandable legs</u>

54. Claim 1 also requires "an adapter base coupled to the cylindrical cupholder, wherein the adapter base includes a plurality of legs configured to expand and retract such that the diameter of the adapter base is configured to expand from a minimum diameter to a maximum diameter." Under the Court's construction of "adapter base," the Accused Product does include a base with expandable legs. This limitation appears to be satisfied.

iv. <u>Attachment member and fastener system</u>

55. Claim 1 further requires "an attachment member positioned on a bottom surface of the cylindrical cupholder, wherein the attachment member enables the coupling of the adapter base and the cylindrical cupholder," and specifies that the attachment member comprises mounting holes aligned




INHOUSE CO. LAW FIRM

with protrusions such that a fastener can extend through. The Court construed “a number of mounting holes” and “a number of protrusions” to mean “at least one mounting hole” and “at least one protrusion,” and “the hole of the at least one protrusion” to mean “an open fastening hole at the top of a protrusion.”




56. Applying these constructions, the Accused Product’s fastener interface satisfies the numerosity requirement so long as it provides one or more mounting holes and one or more protrusions with a fastening hole at the top that can be aligned to accept a fastener.



INHOUSE CO. LAW FIRM

57. On that basis, the Accused Product meets this element.

v. Literal Infringement Analysis: Conclusion

58. Because the Accused Product does not include a collar with integrated cantilever tabs as required by the Court's construction of Claim 1, it cannot literally infringe Claim 1. This limitation is not met. Accordingly, the Accused Product does not literally meet all the limitation of Claim 1 of the '539 Patent.

## B. DOCTRINE OF EQUIVALENTS ANALYSIS OF "COLLAR WITH INTEGRATED TABS" LIMITATION OF CLAIM 1

59. To a reasonable degree of engineering certainty, the accused architecture with separately formed, uniform length, replaceable tab modules attached via a pin-and-through-hole fastening system to a collar is not equivalent to a collar having tabs integrated into (formed monolithically as part of) the collar body. Applying the function–way–result test confirms substantial differences. The two designs (1) serve different functions at the claim-element level, (2) operate in a materially different way with distinct load paths, interfaces, and tolerance behavior, and (3) yield measurably different results in serviceability, durability, positional accuracy, and failure modes.

i. Function

60. The claimed design requires tabs that are formed as part of the collar itself, creating a single, monolithic structure. The function of this element is to provide tab geometry as an intrinsic feature of the collar body so that the collar and tabs act as a single continuous member. This ensures fixed alignment, continuous hoop stiffness, and precludes field substitution that could alter performance.

61. The Accused Product, by contrast, employs non-integrated rubber inserts that are separately manufactured and sandwiched between a rigid plastic lip and the cupholder body. The function of these inserts is not to form part of the collar body, but to provide modularity and serviceability—allowing users to install, remove, or exchange inserts of different shapes, lengths, or stiffness. Thus, the claimed function of structural monolithicity is absent, and the accused function of modularity is different in kind, not merely in degree.

62. This is not a trivial variation but a deliberate design choice: it allows the manufacturer and user to exchange tab inserts of different shapes, lengths, stiffness and materials, or to remove the inserts entirely if desired, and to replace worn inserts without replacing the entire collar.



INHOUSE CO. LAW FIRM

ii. Way

63. In the claimed design, loads such as radial retention, insertion/extraction forces, and torque are carried through a continuous hoop with no interfaces. Stress is distributed uniformly through the collar's uninterrupted cross-section, with predictable stiffness, a single tolerance stack, and uniform thermal expansion. In the accused design, loads are partitioned and transferred across mechanical, pin and through-hole joints. Stress passes through fastener clearances, adhesive layers, or snap-fit lands, introducing joint compliance, stress concentrations, and multi-stack tolerances. Collar and tab may even have different coefficients of thermal expansion and forced vibration damping, leading to varying performance under thermal or vibrational cycling. The "way" of achieving tab engagement is therefore materially different: one relies on a continuous monolithic hoop, the other on an interface-mediated assembly with manifold variables.

iii. Result

64. The integrated design yields stable retention force over vibration and thermal cycles, low positional variance, and predictable failure modes at the tab root. It does not permit field modularity. The patented design provides a single, permanent configuration with fixed performance characteristics. The accused design yields different and measurable results: serviceability (field replacement of tabs), configurability (interchangeable geometries altering retention profiles), potentially greater retention decay over time due to joint relaxation, higher positional variance, and distinct failure modes such as fastener loosening or adhesive creep not found in the patented design. These are not insubstantial differences; they change the consumer experience, product life, and introduce performance variability. Consumers can customize the grip to fit different containers, enjoy the option to remove or replace tabs, and extend the product's useful life by swapping out, worn inserts.

iv. Insubstantial-Differences Analysis

65. Even apart from the function–way–result framework, the differences between the claimed integrated-tab design and the accused replaceable-insert design are substantial, not insubstantial. Under the insubstantial-differences test, the question is whether the Accused Product is "substantially different" from what is claimed, from the perspective of a person of ordinary skill in the art. The test is designed to prevent competitors from avoiding infringement through trivial modifications, while still requiring an element-by-element analysis to ensure that meaningful structural



INHOUSE CO. LAW FIRM

and functional distinctions are respected. Here, the accused design introduces new capabilities—field serviceability, configurability, and modular replacement—that the claimed design expressly excludes by requiring integration. These are not cosmetic or incidental changes; they alter how the product is manufactured, maintained, and experienced by consumers. A person of ordinary skill in the art would understand that the accused design reflects a different engineering choice with different trade-offs in durability, tolerance behavior, and failure modes. Because these differences materially affect performance, lifecycle, and user experience, they cannot be dismissed as insubstantial variations of the claimed structure.

v. Doctrine of Equivalents: Conclusion

66. While both designs ultimately stabilize a container, they do so with different functions, in different ways, and with different results. Treating separately formed, removable, sandwiched inserts as equivalent to integrated molded tabs would vitiate the Court's construction of "integrated" and erase a key limitation. A person of ordinary skill in the art would recognize that the accused design reflects a different engineering choice, not an interchangeable substitute. Accordingly, the accused non-integrated, replaceable-tab architecture is not equivalent to a collar with tabs integrated into the collar body under either the function–way–result test or the insubstantial-differences framework.

### C. CONCLUSION AS TO INFRINGEMENT / NON-INFRINGEMENT ANALSYSIS

67. While the Accused Product may satisfy certain limitations of claim 1, it does not meet the requirement of a collar with integrated cantilever tabs. This is not a minor difference but a fundamental structural distinction. Nor can it be bridged under the doctrine of equivalents without vitiating the Court's construction. For these reasons, it is my opinion that the Accused Product does not meet all the limitations of claim 1 of the '539 Patent, either literally or under the doctrine of equivalents. Because claim 1 is not met, none of the limitations of the dependent claims (claims 2–7) can be met, as each incorporates all of the limitations of claim 1.

## IX. APPLICABLE LEGAL PRINCIPLES FOR VALIDITY / INVALIDITY ANALYSIS

68. I have been informed by counsel that in order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether claim(s) of the patent are anticipated or obvious. Prior art may include items that were publicly known or that have been used or offered for sale, or



INHOUSE CO. LAW FIRM

references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention. 35 U.S.C. § 102(a)(1)-(2); 35 U.S.C. § 102(b)(1)-(2).

**A. INVALIDITY—ANTICIPATION**

69. Anticipation must be determined on a claim-by-claim basis. Accused must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a POSITA in the technology of the invention, looking at that one reference, could make and use the claimed invention.

70. If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

71. In forming my opinions, I have relied on my understanding of the governing law of anticipation, which is reflected 35 U.S.C. § 102 and in the following cases: *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1343 (Fed. Cir. 2018); *Finisar Corp. v. DirectTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008); *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1369-70 (Fed. Cir. 2008).

**B. INVALIDITY—OBVIOUSNESS**

72. Not all innovations are patentable. A patent claim is invalid if the claimed invention would have been obvious to a POSITA as of the effective filing date of the claimed invention. In deciding the level of ordinary skill, one should consider all of the evidence, including: (1) the levels of education and experience of persons working in the field; (2) the types of problems encountered in the field; and (3) the sophistication of the technology.

73. A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

74. One must decide what difference, if any, existed between the claimed invention and the prior art.

75. I have also considered whether there is any evidence of objective indicia of non-obviousness, sometimes referred to as "secondary considerations." These include: (1) commercial



INHOUSE CO. LAW FIRM

success of a product due to the merits of the claimed invention; (2) a long-felt but unsolved need addressed by the claimed invention; (3) unsuccessful attempts by others to solve the same problem; (4) copying of the claimed invention by others; (5) unexpected or superior results attributable to the claimed invention; (6) industry praise or licensing of the claimed invention; (7) other evidence tending to show non-obviousness; (8) independent invention of the claimed invention by others at or about the same time; and (9) other evidence tending to show obviousness. 35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Intern. Co. v. Teleflex, Inc.*, 550 U.S. 398, 407 (2007); *Circuit Check v. QXQ Inc.*, 795 F.3d 1331, 1335 (Fed. Cir. 2015); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986); *Pentec. Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed. Cir. 1985). See *Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1219-20 (Fed. Cir. 2002); *Wang Labs. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993); *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d. 1254, 1256 (Fed. Cir. 2007); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

76. At this time, I have not been presented with any evidence relating to these secondary considerations. Accordingly, my opinions regarding obviousness are based on the prior art, the level of ordinary skill in the art, and the differences between the asserted claims and the prior art, as set forth above. Should evidence of secondary considerations be introduced, I reserve the right to supplement my opinions to address such evidence.

## X. VALIDITY / INVALIDITY ANALYSIS

### A. VALIDITY / INVALIDITY ANALYSIS: INDEPENDENT CLAIM 1

77. For ease of reference, I have prepared an invalidity chart (**Exhibit 10**) that maps each limitation of the asserted claims of the '539 Patent to the disclosures in the prior art. My narrative analysis below corresponds to and expands upon that chart.

78. I understand that the effective priority date of the '539 Patent is February 6, 2021. The Expander Product was publicly available and on sale as of March 13, 2019, as verified by Amazon



INHOUSE CO. LAW FIRM

records. Because this date is more than two years before the priority date, the Expander Product qualifies as prior art under 35 U.S.C. §§ 102 and 103.

79. I have applied the Court's claim construction order (Doc. No. 44) in forming these opinions and applied these constructions in the analysis below.

i. <u>Cylindrical cupholder with hollow internal volume</u>.

80. The Court construed "cylindrical" to mean "[h]aving the approximate form of a cylinder including variations in diameter along the length of the cylinder." (Doc. No. 44)

81. The Car Cup Holder Expander, sold on Amazon.com under ASIN B07PMHPJJF, was publicly available prior to the priority date of the '539 patent. For clarity, I refer to the Car Cup Holder Expander sold on Amazon under ASIN B07PMHPJJF as the "Expander Product." According to Amazon's product listing, as documented in contemporaneous printouts, the product was first available in March 13, 2019. (*see* ***Exhibit 3****; Amazon.com product page for ASIN B07PMHPJJF, "Date First Available: March 13, 2019"*). I obtained a physical unit of the Expander Product prior to preparing this report, which I reviewed in forming my opinions.

82. The product includes a cylindrical cupholder body with a hollow internal volume, an expandable base designed to fit different vehicle cupholders, and inward-extending, rubber tabs integrated around the collar to stabilize containers. It also provides a slot to accommodate mugs with handles and supports larger beverage containers.





83. In addition to these features, the product further includes three mounting holes at the bottom of the cupholder body and the adapter base has three corresponding protrusions. Three screws pass through the mounting holes and into the protrusions of the adapter base to fix the cupholder body

INHOUSE CO. LAW FIRM

INHOUSE CO. LAW FIRM

and the adapter base together. These features demonstrate that expandable bases, collar-mountedretention tabs, modular stabilization structures, and screw-mounted coupling between the cupholder body and adapter base were known and implemented in practice before the asserted patent.









84. The Expander Product discloses a cupholder body molded in the approximate form of a cylinder, with tapering (variation) in diameter along its length to facilitate insertion of beverage containers. The body encloses a hollow internal cavity for receiving containers. *See Exhibit 3 (printout at "About this item" stating "FIT MOST 32 OUNCE – 40 OUNCE WIDE BOTTLES AND DIAMETER 3.4"-3.8") and product image showing cylindrical body with hollow cavity).* This meets the Court's construction of "cylindrical."Accordingly, the Expander Product anticipates this limitation of claim 1.

85. U.S. Patent 4,854,468 (Dahlquist, II), filed April 14, 1987, claims a cupholder body shaped in the form of a cylinder tapering (variation) in diameter along its length to facilitate insertion of beverage containers. *See* ***Exhibit 4****; U.S. Patent 4,854,468, issued August 8, 1989* ("Dahlquist, II" or

"the '468 Patent"). As shown in Figure 1 of the '468 Patent (reproduced below), the body encloses a hollow internal cavity for receiving containers. Claim 10 of the '468 Patent recites "…support cone having a top rim and smaller base rim…" (col. 6, ll. 39–40). Accordingly, Patent '468 Patent anticipates this limitation of Claim 1.




ii. <u>Collar with integrated tabs</u>

86. The Court construed "collar" to mean "[a] circular lip device having two or more integrated cantilever structures extending towards the center portion of the lip," and "include a plurality of tabs" to mean "[c]omprising two or more tabs." The Expander Product includes a collar at the top rim of the cupholder with multiple inwardly extending rubber tabs. These tabs are molded as part of the collar and extend into the hollow volume to grip bottles. See Exhibit 3, printout at "About this item" ('rubber tabs around the top of the cup holder hold the cup firmly in place without tipping or spilling').



INHOUSE CO. LAW FIRM

This matches the Court's construction of "collar" and "plurality of tabs." This matches the Court's construction directly. Accordingly, the Expander Product anticipates this limitation of Claim 1.





87. U.S. Patent 11,254,253 B1 (Fan), filed Jan. 6, 2021, claims a circular device with integrated cantilever structures extending towards the center portion of the lip. *See* ***Exhibit 5****; U.S. Patent No. 11,254,253 B1, issued February 22, 2022* ("Fan" or "the '253 Patent"). Claim 9 of the '253 Patent recites "… wherein the outer wall of the top of the base unit comprises a pivotal circular wall, and the pivotal circular wall comprises a plurality of longitudinal protruding teeth." (col. 8, ll. 27–30). As shown in Figure 1 of the '253 Patent (reproduced below), these tabs are molded as part of the collar and extend into the hollow volume to grip bottles. This also matches the Court's construction directly. Accordingly, the '253 Patent anticipates this limitation of Claim 1.




FIG. 1



INHOUSE CO. LAW FIRM

iii. Adapter to Act As the Base for the Cupholder

88. The Court construed "adapter base" as "[a]n adapter configured to act as the base for the cupholder." The Expander Product discloses an adapter base with multiple segmented legs that expand and retract by rotation. *See Exhibit 3 (printout at "About this item" stating "EXPANDABLE BASE FOR DIAMETER 2.5"–3.75"CAR CENTRE CONSULE CUP" and product image showing segmented legs extended)*. Focusing specifically on the nature of this item, it is clearly an adapter, the role of which is to act as the base for the cupholder affixed to, and above, it. This limitation is therefore at least obvious in view of the Expander Product.

89. U.S. Patent 5,655,742 (Whitman), filed April 12, 1995, claims an adapter base for the cupholder. *See **Exhibit 6**; U.S. Patent 5,655,742, issued August 12, 1997* ("Whitman" or "the '742 Patent"). Claim 1 of the '742 Patent recites "a cylindrically shaped base having an upper mounting surface…" (col. 5, ll. 1-2). The cupholder body mounts directly to this base, as shown in figures 1 and 2 of the '742 Patent (reproduced below). This also matches the Court's construction directly. Accordingly, the '742 Patent anticipates this limitation of Claim 1.






INHOUSE CO. LAW FIRM

iv. Attachment Member on Bottom Surface

90. The Court gave "attachment member" its plain and ordinary meaning. The Expander Product includes an attachment structure, or member, on the bottom (underside) of the cupholder body that fixes the cupholder body to the base.



This structure enables the coupling of the two components. Even if the precise geometry differs from the '539 Patent, a POSITA would have recognized that providing an attachment member on the bottom surface is a standard way to connect a cupholder body to a base. This limitation would have been obvious.

91. The '742 Patent (Whitman) claims a cupholder with an attachment member on its bottom surface. See Exhibit 6, Figure 4 (reproduced below). Claim 1 of the '742 Patent recites "said opening is further provided with a first coupling means to couple said base to a body…" (col. 5, ll. 5-7). This coupling attachment member, labeled 40 in Figure 4, takes the form of a protruding shaft with an upper lip that interlocks with a planar ring in the base below the cupholder, mounting the cupholder securely to the base. This also matches the Court's construction directly. Accordingly, the '742 Patent anticipates this limitation of Claim 1.



INHOUSE CO. LAW FIRM

Coupling attachment member

FIG. 4




v. Mounting Holes, Protrusions, and Fasteners

92. The Court construed "a number of mounting holes" and "a number of protrusions" to mean "[a]t least one mounting hole" and "[a]t least one protrusion." and "the hole of the at least one protrusion of the number of protrusions" to mean "[a]n open fastening hole at the top of a protrusion."The Court further construed "mounting holes" to have its plain and ordinary meaning. The Expander Product discloses these structures in detail:

a. **Mounting holes:** The attachment member at the bottom (underside) of the cupholder body includes three distinct mounting holes. Because the claim requires only "at least one," the disclosure of three falls squarely within the scope of the Court's construction.





INHOUSE CO. LAW FIRM

b. **Protrusions:** The adapter base includes three protrusions, each corresponding to a mounting hole. Again, because the claim requires only "at least one protrusion," the disclosure of three is fully encompassed.




c. **Holes in protrusions:** Each protrusion contains an open fastening hole located at its top. This matches the Court's construction of "the hole of the at least one protrusion."

d. **Alignment:** The design of the Expander Product requires that the mounting holes of the attachment member align with the holes in the protrusions. This alignment enables the fastening mechanism to function as intended.

e. **Fastener(s):** the Expander Product uses three screws that extend through the three mounting holes into the three protrusion holes. The claim requires only "a fastener," which under the Court's construction encompasses one or more. The presence of three screws necessarily includes at least one screw, and therefore falls within the scope of the claim. The use of multiple screws does not exclude the claim but rather exemplifies a common fastening approach in the art.



INHOUSE CO. LAW FIRM




vi. Conclusion as to Validity / Invalidity Analysis of Claim 1

93. Based on the foregoing analysis, it is my opinion that Claim 1 of U.S. Patent No. 11,772,539 is anticipated under 35 U.S.C. §102 by the Expander Product. As shown, each limitation of Claim 1 is disclosed in the prior art, either explicitly or inherently. Accordingly, Claim 1 lacks novelty and is unpatentable.

**B. VALIDITY / INVALIDITY ANALYSIS ON DEPENDENT CLAIMS 2: EXPANDABLE AND RETRACTABLE LEGS VIA ROTATION OF CUPHOLDER**

94. Each dependent claim must be analyzed separately. I apply the Court's constructions for '539 Patent. Dependent claims incorporate all limitations of claim 1 and add the limitations recited in Claims 2–7.

95. Claim 2 depends from Claim 1 and requires that "the plurality of legs are configured to expand and retract via rotation of the cupholder." The Court construed this limitation to mean that the expansion and retraction of the adapter base legs must be actuated by rotating the cupholder body.



INHOUSE CO. LAW FIRM

i. Prior Art Discloses Plurality of Legs Configured to Expand and Retract Via Rotation of the Cupholder

96. The Expander Product expressly discloses this feature. The product photo show segmented legs at the base that expand outward when the upper cupholder body is rotated. This is the same mechanism described in the ’539 Patent: rotation of the cylindrical cupholder causes the threaded or geared interface to drive the legs outward or inward, thereby adjusting the base diameter.




97. Even if the precise internal gearing differs from the ’539 Patent’s embodiment, the Expander Product achieves the same function (expansion/retraction), in the same way (rotation of the cupholder body), to achieve the same result (adjusting the base diameter to fit different OEM cupholders). As shown, each limitation of Claim 2 is disclosed in the prior art, either explicitly or inherently. Accordingly, Claim 2 of U.S. Patent No. 11,772,539 is anticipated under 35 U.S.C. §102 by the Expander Product and thus lacks novelty and is unpatentable.

98. Additionally, Patent No. 9,220,349 (“Cashin”), filed March 19, 2015, discloses a cupholder adapter that is secured or released by rotating the cupholder, which causes the pivoting arms to adjust via a clamping mechanism. *See* ***Exhibit*** *7; U.S. Patent No. 9,220,349, issued Dec. 29, 2015* (“Cashin” or “the ‘349 Patent”).

99. As shown in figures 1 and 8 of the ‘349 patent (reproduced below), the adapter includes a base with multiple mounting holes, a cylindrical cupholder body with an integral adjustment screw, and a clamping mechanism comprising pivoting arms actuated by a threaded drive hub. The design allows the adapter to be secured or released by rotating the cupholder, and it can support both beverage containers and accessory devices such as closed-captioning displays. Cashin demonstrates that

INHOUSE CO. LAW FIRM

expandable clamping mechanisms, screw-actuated drive hubs, and integrated cylindrical cupholder structures were known in the art prior to the asserted patent.



FIG 1



FIG 8

100. Moreover, Fan (U.S. Patent No. 11,254,253 B1) also discloses expandable units actuated by rotation of the cupholder. Specifically, each expansion unit includes a moving part and a wall support, with guide blocks that engage the spiral groove such that rotation of the unit causes the expansion members to extend outward through corresponding through holes in the base. Rotating unit of Fan's carrying bracket includes a spiral guide groove that interfaces with guide blocks on each expansion unit.




INHOUSE CO. LAW FIRM

As shown in figure 2 of the '253 Patent (reproduced below), when the upper cupholder is rotated, the guide blocks travel along the spiral groove, causing the expansion units in the base to move linearly outward through corresponding through-holes in the base. As shown in figure 4 and 6 of the '253 Patent (reproduced below), this mechanism enables the bracket to press securely against the inner wall of a vehicle's cupholder, thereby achieving adjustable fixation through rotation.




FIG. 2




FIG. 4




FIG. 6

INHOUSE CO. LAW FIRM

INHOUSE CO. LAW FIRM

ii. Motivation to Include and Combine this Feature

101. A POSITA would have been motivated to configure expandable legs to actuate via rotation of the cupholder body for routine, predictable reasons. The Expander Product (ASIN B07PMHPJJF) already discloses expandable legs that adjust through rotation of the cupholder, satisfying this limitation.

102. Fan (U.S. Patent No. 11,254,253) further confirms that rotational actuation of expansion units using spiral grooves is a well-understood mechanism in vehicle cupholder accessories. *See Exhibit 5*. Cashin (U.S. Patent No. 9,220,349) also teaches a rotational interface between the cupholder and base, where rotation causes pivoting arms to adjust through a clamping mechanism. *See Exhibit 7*. A POSITA would have recognized that these mechanisms instructions - are ergonomically intuitive, requiring no tools, and are standard in consumer-grade adjustable fixtures where they are often labeled, "twist to tighten." Moreover, rotational actuation ensures secure fitment across a wide range of OEM cupholder diameters without redesigning the base for every car's cupholder aperture dimension, thereby reducing manufacturing and distribution complexity by integrating the adjustment mechanism into the body of the base itself. These factors would have provided strong motivation to adopt and refine rotational expansion designs, and reinforce that the claimed feature was not only known, but expected in the field.

iii. Conclusion as to Validity / Invalidity Analysis of Claim 2

103. Claim 2 is anticipated under 35 U.S.C. §102 by the Expander Product (ASIN B07PMHPJJF), which discloses expandable legs configured to actuate via rotation of the cupholder body. *See Exhibit 3.* This mechanism is present in the commercial product and satisfies the limitation of Claim 2. Accordingly, Claim 2 is not novel. Even if the Court were to conclude that the Expander Product does not literally disclose every detail of the expansion mechanism, Claim 2 is nonetheless obvious under 35 U.S.C. §103. A POSITA would have found it obvious to configure expandable legs to actuate by rotation of the cupholder body in view of the Expander Product, further in view of Fan (U.S. Patent No. 11,254,253), which teaches spiral groove-based rotational expansion, and further in view of Cashin (U.S. Patent No. 9,220,349), which teaches rotational clamping mechanisms for cupholder adapters. *See Exhibits 5, 7.* Each reference independently reinforces the ergonomic, mechanical, manufacturing and distributional advantages of rotational actuation. Therefore, Claim 2 is anticipated

under §102 and, in the alternative, is rendered obvious under §103 in view of the Expander Product alone or in combination with Fan and/or Cashin.

**C. VALIDITY / INVALIDITY ANALYSIS ON DEPENDENT CLAIM 3: ALIGNED AND NOT ALIGNED AXIS**

104. Claim 3 depends from Claim 1 and requires that the cylindrical cupholder be configured to be coupled to the adapter base in a variety of configurations, including at least: (a) the cylindrical cupholder's axis aligned with the adapter base's axis; and (b) the cylindrical cupholder's axis not aligned with the adapter base's axis. The Court construed this to require both concentric (aligned) and off-set (not aligned) orientations between the cupholder and the adapter base.

i. Prior Art Discloses Aligned and Not Aligned Axis

105. The Expander Product discloses a cupholder adapter with a upholder body and base mounted concentrically. Additionally, Cashin discloses a cup holder adapter designed to be mounted within an existing cup holder with a base (12) and cupholder body (24) mounted concentrically. *See Exhibit 4, U.S. Patent No. 9,220,349, date issued Dec. 29, 2015*. Both the Expander Product and Cashin satisfy the "aligned" configuration. *See Exhibit 3 and 7*. A POSITA would recognize this as the standard concentric attachment.

106. Additionally, Fan discloses a modular base unit and rotating unit with a spiral guide groove and interchangeable accessories. While Fan does not use the term "off-set," its modular accessory mounting inherently allows alternate orientations, including off-set, depending on how the accessory is attached. A POSITA would understand Fan to teach the functional outcome of multiple coupling orientations.

107. Pre-priority commercial adapters expressly disclose off-set mounting. Specifically, CARSA Cupholder discloses a rotatable upper adapter that laterally shifts the secondary cupholder relative to the base, clearing console lids and obstructions. *See **Exhibit 8**; Amazon.com product page for ASIN B08H86W469, "Date First Available: Sept. 2, 2020"* ("CARSA Cupholder"). The product includes a cylindrical cupholder body with a hollow internal volume, a rotatable adapter that can swivel 360° to reposition a secondary cupholder, and expandable brackets designed to accommodate bottles and mugs of varying diameters. The product also provides a slot to accommodate mugs with handles and functions as a storage compartment for small items such as phones, glasses, or keys. These features



INHOUSE CO. LAW FIRM

demonstrate that multi-cup adapters, rotatable bases, expandable retention structures, and modular stabilization mechanisms were known and implemented in practice before the asserted patent.





108. Additionally, Automaze Cupholder discloses a Similar 360° rotatable adapter enabling lateral off-set of the secondary cupholder relative to the base. *See Exhibit 9; Amazon.in product page for ASIN B084GTHNWC, "Date First Available: Feb. 2020"* ("Automaze Cupholder"). the product includes a cylindrical cupholder body with a hollow internal volume, an expandable base designed to fit different vehicle cupholders, and a rotatable adapter that allows a secondary cupholder to be repositioned. The product also provides adjustable brackets to accommodate bottles and mugs of varying diameters, as well as a slot to accommodate mugs with handles. These features demonstrate that expandable bases, rotatable adapters, and modular stabilization structures were known and implemented in practice before the asserted patent.

109.



INHOUSE CO. LAW FIRM




110. Cashin, Fan, the CARSA Cupholder, and the Automaze Cupholder directly disclose the "not aligned" configuration required by Claim 3 and demonstrate widespread, pre-priority use of off-set orientations. *See Exhibits 5, 7-9.*

ii. <u>Motivation to Include Aligned and Not Aligned Configuration</u>

111. Claim 3 is rendered obvious under 35 U.S.C. §103. The Expander Product (ASIN B07PMHPJJF) discloses all elements of Claim 1 and serves as a primary reference. However, it does not disclose the specific limitation of Claim 3 — namely, that the cylindrical cupholder is configured to be coupled to the adapter base in both aligned and off-set configurations. This limitation is disclosed in multiple prior art references, including Fan (U.S. Patent No. 11,254,253), Cashin (U.S. Patent No. 9,220,349), Automaze (ASIN B084GTHNWC), and CARSA (ASIN B08H86W469), each of which teaches mechanisms for adjusting the orientation of a cupholder relative to its base. *See Exhibits 5, 7-9.*

*112.* A person of ordinary skill in the art ("POSITA") would have been motivated to combine the Expander Product with any of these references for routine, predictable reasons: (i) enabling both aligned and off-set configurations improves compatibility with varied vehicle interiors and console layouts; (ii) such adjustability enhances user ergonomics and accessibility; (iii) the mechanical means for achieving alignment or off-set — such as indexed rotation, multiple mounting holes, or pivoting interfaces — were well-known and commercially viable at the time; and (iv) integrating this feature does not alter the fundamental operation of the Expander Product, but rather extends its utility in a



INHOUSE CO. LAW FIRM

manner consistent with consumer expectations. Accordingly, Claim 3 is obvious in view of the Expander Product in combination with Fan, Cashin, Automaze, and/or CARSA. *See Exhibits 3, 5, 7-9.*

iii. <u>Conclusion as to Validity / Invalidity Analysis of Claim 3</u>

113. Claim 3 is not anticipated under 35 U.S.C. §102 because the Expander Product does not disclose the limitation requiring both aligned and off-set coupling configurations. However, Claim 3 is nonetheless obvious under 35 U.S.C. §103. The Expander Product serves as a primary reference disclosing all other limitations of Claim 1. The "aligned and not aligned" coupling configurations of Claim 3 are taught in multiple prior art references: Fan (U.S. Patent No. 11,254,253) teaches modular, reconfigurable attachment systems; Cashin (U.S. Patent No. 9,220,349) provides aligned mounting; and Automaze (ASIN B084GTHNWC) and CARSA (ASIN B08H86W469) disclose off-set mounting configurations. Each reference independently supports the practical and ergonomic benefits of orientation flexibility. A POSITA would have found it obvious to incorporate these features into the Expander Product using well-known mechanical means such as indexed rotation or multiple mounting holes. Therefore, Claim 3 is obvious under §103 in view of the Expander Product in combination with Fan, Cashin, Automaze, and/or CARSA. *See Exhibits 3, 5, 7-9.*

## D. VALIDITY / INVALIDITY ANALYSIS ON DEPENDENT CLAIM 4:MOUNTING HOLES OF ATTACHMENT MEMBER ENABLE MULTIPLE CONFIGURATIONS

114. Claim 4 depends from Claim 1 and requires that "the number of mounting holes of the attachment member enable multiple configurations of the cylindrical cupholder in relation to the adapter base including an aligned configuration and off-set configuration." This limitation focuses not just on the ability to reposition the cupholder, but on the structural means — specifically, mounting holes — that enable such flexibility.

i. <u>Prior Art Discloses Mounting Holes Of the Attachment Member Enabling Multiple Configurations</u>

115. Fan (U.S. Patent No. 11,254,253) discloses a modular base unit and rotating unit with a spiral guide groove and interchangeable accessories. While Fan does not use the term "mounting holes," its modular attachment system inherently allows the user to reposition accessories in alternate orientations, including off-set, depending on how the components are coupled. A POSITA would



INHOUSE CO. LAW FIRM

understand Fan to teach the functional outcome of multiple coupling configurations enabled by structural features such as indexed grooves, guide blocks, and modular interfaces — all of which serve the same purpose as mounting holes in facilitating aligned and off-set attachment. See Exhibit 5.

*116.* Pre-priority commercial adapters expressly disclose off-set mounting enabled by structural attachment features. Specifically, the CARSA Cupholder (ASIN B08H86W469) includes a rotatable upper adapter that laterally shifts the secondary cupholder relative to the base, clearing console lids and obstructions. The product achieves this through a combination of indexed rotation and modular attachment points, which allow the cupholder to be secured in multiple orientations. These attachment features functionally correspond to mounting holes and demonstrate that multi-position coupling — including off-set — was implemented in practice before the asserted patent. *See Exhibit 8 (Amazon.com product page, "Date First Available: Sept. 2, 2020").*

*117.* Similarly, the Automaze Cupholder (ASIN B084GTHNWC) discloses a 360° rotatable adapter enabling lateral off-set of the secondary cupholder relative to the base. The product includes a cylindrical cupholder body, an expandable base, and a rotatable adapter that allows the cupholder to be repositioned and secured in different orientations. The attachment mechanism relies on modular interfaces and indexed positions that serve the same function as mounting holes — enabling multiple configurations of the cupholder relative to the base, including aligned and off-set. These features were known and commercially available prior to the asserted patent. *See **Exhibit 9** (Amazon.in product page, "Date First Available: Feb. 2020").*

ii. <u>Motivation to include and Combine Multiple hole-based configurations</u>

118. The Expander Product (ASIN B07PMHPJJF) discloses a cylindrical cupholder, an adapter base, and an attachment member with multiple mounting holes and protrusions. See Exhibit 3. While it does not expressly disclose both aligned and off-set configurations, it provides the structural framework for modular attachment using hole-and-tab interfaces. The limitation of Claim 4 is satisfied when the Expander Product is considered in view of prior art references that teach off-set mounting enabled by structural attachment features.

119. Fan (U.S. Patent No. 11,254,253) discloses a modular base unit and rotating unit with a spiral guide groove and interchangeable accessories. See Exhibit 5. While Fan does not use the term "off-set," its modular attachment system inherently allows alternate orientations depending on how the



INHOUSE CO. LAW FIRM

accessory is coupled. A POSITA would understand Fan to teach the functional outcome of multiple coupling configurations enabled by structural features analogous to mounting holes.

120. Commercial products such as the CARSA Cupholder (ASIN B08H86W469) and Automaze Cupholder (ASIN B084GTHNWC) expressly disclose off-set mounting enabled by rotatable adapters and modular interfaces. See Exhibit 8. These products include cylindrical cupholder bodies, expandable bases, and attachment mechanisms that allow the cupholder to be secured in different orientations. Although they do not use the term "mounting holes," their indexed rotation and modular coupling features serve the same function — enabling multiple configurations of the cupholder relative to the base, including aligned and off-set.

121. A POSITA would have been motivated to provide multiple mounting holes for routine, predictable reasons:

- To allow the same cupholder body to be mounted in different orientations without redesigning the base.
- To provide clearance for console lids, shifter handles or obstructions by shifting the cupholder laterally.
- To give users flexibility in positioning for ergonomics and convenience.
- To reduce costs by enabling modularity and interchangeability through simple hole patterns.

122. Therefore, Claim 4 is obvious under 35 U.S.C. §103 in view of the Expander Product in combination with Fan, CARSA, and/or Automaze. See Exhibits 3, 5, 8, 9. The claimed use of mounting holes to enable multiple configurations reflects well-understood design principles and does not confer patentable distinction over the prior art.

iii. <u>Conclusion as to Validity / Invalidity Analysis of Claim 4</u>

123. Claim 4 is not anticipated under 35 U.S.C. §102 because the Expander Product does not expressly disclose that the mounting holes of the attachment member enable multiple configurations, including aligned and off-set orientations. However, Claim 4 is nonetheless obvious under 35 U.S.C. §103. The Expander Product serves as a primary reference disclosing all other limitations of Claim 1 and includes a multi-hole attachment interface. *See Exhibit 3.* Fan (U.S. Patent No. 11,254,253) teaches modular, reconfigurable attachment systems; CARSA (ASIN B08H86W469) and Automaze (ASIN



INHOUSE CO. LAW FIRM

INHOUSE CO. LAW FIRM

B084GTHNWC) both disclose off-set mounting enabled by rotatable adapters and modular interfaces. A POSITA would have been motivated to incorporate multiple mounting holes to enable flexible orientation for ergonomic, spatial, and manufacturing reasons. *See Exhibits 5, 8, 9.* Therefore, Claim 4 is obvious under §103 in view of the Expander Product in combination with Fan, CARSA, and/or Automaze. *See Exhibits 3, 5, 8, 9.*

**E. VALIDITY / INVALIDITY ANALYSIS ON DEPENDENT CLAIM 5: SPACER**

124. Claim 5 depends from Claim 1 and requires "at least one spacer positioned between the cylindrical cupholder and the adapter base." The Court adopted the plain and ordinary meaning of "spacer," i.e., a discrete intervening component that separates two structures to create space or provide an attachment interface.

i. Prior Art Discloses Spacer

125. In addition to the structural base separating the cupholder from the adapter, Cashin (U.S. Patent No. 9,220,349) discloses an O-ring (element 33) positioned between the bottom of the cylindrical cupholder and the top surface of the adapter base. *See Exhibit 7.* This O-ring is a discrete intervening component that creates vertical separation and provides a frictional interface between the two structures. It cushions the cupholder, prevents loosening of the clamping mechanism, and stabilizes the assembly. A POSITA would recognize that this O-ring satisfies the "spacer" limitation of Claim 5, both functionally and structurally, as it separates the cupholder from the adapter base and facilitates attachment.

126. Cashin also describes a multi-hole base structure that supports interchangeable accessories, including cupholders and closed-captioning devices. *See Exhibit 7.* This base acts as a spacer by creating vertical separation and providing a mounting interface between the cupholder and the underlying clamping mechanism. The combination of the O-ring and the base structure provides multiple spacer-like functions consistent with the Court's construction.

127. Fan (U.S. Patent No. 11,254,253) similarly discloses a spacer element in the form of a receiving base positioned between the rotating cupholder unit and the lower adapter base. *See Exhibit 5.* Critically, the rotating unit does not rotate atop the adapter base unit. The rotating unit, sits on, and rotates atop the receiving base, which is positioned as a spacer between the cupholder unit and the

adapter base, maintaining vertical space between the two. This discrete structural component would be recognized by POSITA as a spacer under the Court's definition.

ii. Motivation to include a spacer

128. The rationale for including a spacer between the cylindrical cupholder and the adapter base was well known to a POSITA. First, spacers accommodate deepset OEM cupholders by raising the cupholder height, ensuring ergonomic access for the taller user. Second, they allow clearance for console lids, gear shifter handles and other obstructions — a need explicitly illustrated in the '539 patent itself at Fig. 20. Third, spacers provide a stable attachment interface for accessories such as trays, phone holders, or closed-captioning devices. Fourth, they enable modularity and interchangeability, allowing manufacturers to adapt a common base design to multiple cupholder configurations without redesigning the entire lower assembly. These routine design considerations would have made the inclusion of a spacer both obvious and expected to a POSITA.

iii. Conclusion as to Validity / Invalidity Analysis of Claim 5

129. Claim 5 is not anticipated under 35 U.S.C. §102 because the Expander Product does not expressly disclose a discrete spacer positioned between the cylindrical cupholder and the adapter base. However, Claim 5 is nonetheless obvious under 35 U.S.C. §103. Cashin discloses an O-ring and a multi-hole base structure that function as spacers, while Fan discloses a receiving base that provides vertical separation, rotation and attachment functionality. *See Exhibits 5, 7.* A POSITA would have been motivated to incorporate such spacer elements for routine, predictable reasons including improved stability, modularity, and ease of assembly. Therefore, Claim 5 is obvious under §103 in view of the Expander Product in combination with Cashin and/or Fan. *See Exhibits 3, 5, 7.*

**F. VALIDITY / INVALIDITY ANALYSIS: DEPENDENT CLAIM 6: SCREW GEAR PROVIDED TO ENABLE MOVEMENT OF LEGS VIA ROTATION**

130. The patent recites in Claim 6 depends from Claim 2 and recites that "a screw gear is provided to enable the movement of the plurality of legs via rotation." The Court construed this limitation to require a mechanism that converts rotational input into radial movement of the legs through a screw gear or equivalent threaded interface.




INHOUSE CO. LAW FIRM

i. Prior Art Discloses Screw Gear Enabling Movement of Legs Via Rotation

131. The Expander Product discloses exactly this mechanism. Its product description states: "EXPANDABLE BASE FOR DIAMETER 2.5"-3.75' CAR CENTRE CONSOLE CUP HOLDER" to fit different vehicles. *See Exhibit 3 (Expander Product Amazon listing printout, "About this item")*. The accompanying product images show segmented legs at the base that expand outward when the cupholder body is rotated. A POSITA would recognize that this expansion is achieved through a screw-gear or threaded interface: rotation of the cylindrical cupholder body drives a threaded shaft or cam that forces the legs radially outward or inward. This is a standard and predictable way to implement rotation-actuated expansion in consumer cupholder adapters.

132. Even if the precise geometry of the Expander Product's screw/scroll mechanism differs from the embodiment in the '539 Patent, the function, way, and result are the same:

- **Function:** convert rotation of the cupholder body into radial movement of the legs.
- **Way:** through a screw-gear or threaded interface that translates rotary motion into linear/radial displacement.
- **Result:** expansion and retraction of the base diameter to fit different OEM cupholders.

A POSITA would recognize this as satisfying the Court's construction of Claim 6.

133. Cashin (U.S. Patent No. 9,220,349) discloses a screw-based expansion mechanism. The cylindrical cupholder includes an integral adjustment screw (element 26) that passes through the base and engages a threaded drive hub (element 40). *See Exhibit 7*. When the cupholder is rotated, the drive hub travels along the screw, forcing pivot arm assemblies (elements 22a–d) radially outward to clamp against the inner wall of the OEM cupholder (Cashin, Col. 4:10–35; FIGS. 1–2, 7–9). This mechanism converts rotational input into radial expansion of the legs and satisfies the screw gear limitation of Claim 6.

134. Fan (U.S. Patent No. 11,254,253) does not disclose a traditional screw gear with a threaded shaft. However, it teaches a rotational actuation mechanism that a POSITA would recognize as functionally equivalent. *See Exhibit 5.* Specifically, Fan discloses a rotating unit (element 2) with a spiral guide groove (element 21) that receives guide blocks (element 314) attached to expansion units (element 3). As the rotating unit turns, the guide blocks travel along the spiral groove, causing the



INHOUSE CO. LAW FIRM

expansion units to move linearly and protrude outward through the base's through-holes (Fan, FIGS. 1–2, 4–7B; Col. 5:10–45). This mechanism converts rotary motion into radial displacement of the legs.

135. Under the function-way-result framework:

- **Function:** Convert rotation of the cupholder assembly into radial movement of the legs.
- **Way:** Using a spiral guide groove and guide blocks instead of a threaded shaft.
- **Result:** Expansion and retraction of the base diameter to fit different OEM cupholders.

136. A POSITA would understand this spiral groove mechanism as an alternative, well-known approach to achieving the same result as a screw gear. Therefore, even if not literally a "screw gear," Fan's mechanism satisfies the limitation of Claim 6 under the doctrine of equivalents or renders it obvious in view of known design alternatives.

ii. <u>Motivation to use a screw gear</u>

137. A POSITA would have been motivated to employ a screw gear mechanism to enable movement of expandable legs via rotation for routine, predictable reasons. First, screw gears are the most common and reliable means of converting rotary motion into linear or radial displacement, a principle widely used in clamps, jacks, chucks and adjustable fixtures. Second, they offer fine control and secure locking, ensuring that once the legs are expanded to fit a vehicle's OEM cupholder, they remain stable during use. Third, screw gear mechanisms are inexpensive to manufacture and easily integrated into consumer-grade plastic or metal assemblies, making them ideal for mass-market automotive accessories. Fourth, the use of a screw gear complements the rotation-actuated design already disclosed in Claim 2, allowing the round cupholder body itself to serve as the actuator without requiring additional levers or buttons. Finally, a POSITA would recognize that alternative rotational actuation systems — such as the spiral groove mechanism disclosed in Fan — achieve the same functional outcome and could be substituted without inventive effort. These motivations reflect well-established engineering practices and consumer product design principles, and would have made the inclusion of a screw gear mechanism both obvious and expected at the time of invention.

iii. <u>Conclusion as to Validity / Invalidity Analysis of Claim 6</u>

138. Claim 6 is anticipated under 35 U.S.C. §102 by the Expander Product, which discloses a screw gear or threaded actuation mechanism that enables the movement of the plurality of legs via rotation. *See Exhibit 3.* Even if the Court were to conclude that the Expander Product does not literally



INHOUSE CO. LAW FIRM

disclose every detail of the screw gear geometry, Claim 6 is nonetheless obvious under 35 U.S.C. §103. Cashin discloses a literal screw gear mechanism, and Fan discloses a spiral groove mechanism that a POSITA would recognize as functionally equivalent. *See Exhibits 5, 7.* Therefore, Claim 6 is anticipated under §102 and, in the alternative, is rendered obvious under §103 in view of the Expander Product alone or in combination with Cashin and/or Fan. *See Exhibits 3, 5, 7.*

**G. VALIDITY / INVALIDITY ANALYSIS ON DEPENDENT CLAIM 7: CUPHOLDER ADAPTER WHEREIN THE MINIMUM DIAMETER IS 2.6 INCHES AND THE MAXIMUM DIAMETER IS 3.8 INCHES**

139. Claim 7 depends from Claim 1 and recites that "the minimum diameter is 2.6 inches and the maximum diameter is 3.8 inches." The Court adopted the plain and ordinary meaning of this limitation, which requires that the adapter base be capable of expanding from at least 2.6 inches to at most 3.8 inches in diameter.

i. Prior Art Discloses Adapter Base Operating Within Claimed Range

140. The Expander Product prior art (ASIN B07PMHPJJF) expressly discloses an expandable base designed to fit vehicle cupholders ranging from approximately 2.5 inches to 3.75 inches in diameter. *See Exhibit 3 (Amazon.com product page, "Date First Available: March 13, 2019")*. This range substantially overlaps with the claimed 2.6–3.8 inch range.

141. Under Manual of Patent Examining Procedure (MPEP) §2131.03(I), "[w]hen, as by a recitation of ranges or otherwise, a claim covers several compositions, the claim is 'anticipated' if one of them is in the prior art." The Federal Circuit has consistently held that disclosure of a single point or overlapping range anticipates a claimed range. See *Titanium Metals Corp. v. Banner*, 778 F.2d 775, 782 (Fed. Cir. 1985); *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1345 (Fed. Cir. 2012).

142. Here, the prior art's 2.5–3.75 inch range overlaps nearly entirely with the claimed 2.6–3.8 inch range. Because the patentee has not demonstrated any criticality or unexpected results tied to the precise endpoints of 2.6 and 3.8 inches, the overlap is sufficient to anticipate Claim 7 under 35 U.S.C. §102.

ii. Motivation to Include this Feature

143. Even if the Court were to conclude that the Expander Product (Exhibit 3) does not literally anticipate Claim 7, the claim is nonetheless obvious. MPEP § 2144.04(IV)(A) explains that a



INHOUSE CO. LAW FIRM

change in size is generally recognized as being within the level of ordinary skill in the art. The Federal Circuit has repeatedly held that discovering optimum or workable ranges of result-effective variables is ordinarily obvious. See *In re Peterson*, 315 F.3d 1325, 1329 (Fed. Cir. 2003) (overlapping ranges render claims prima facie obvious); *In re Aller, 220 F.2d 454, 465 (C.C.P.A. 1955)* (routine optimization of ranges is obvious). The Supreme Court in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007), further emphasized that predictable variations and routine optimization fall squarely within §103.

144. A person of ordinary skill in the art ("POSITA") would have been motivated to design a cupholder adapter with a minimum diameter of approximately 2.6 inches and a maximum diameter of approximately 3.8 inches for routine, predictable reasons:

- **Alignment with OEM Standards:** These dimensions correspond to common OEM cupholder sizes found in passenger vehicles, which typically range from 2.5 to 4.0 inches in diameter.
- **Broad Compatibility Without Over-Extension:** Selecting this range ensures compatibility across vehicle interiors without requiring excessive expansion that could compromise mechanical integrity or user experience.
- **Balance of Stability and Adaptability:** A 2.6–3.8 inch range balances stability and adaptability. Designing to a broader range of "outlier" diameters would likely involve negative trade-offs of stability in the most commonly occurring ones.
- **Industry Norms and Consumer Expectations:** This range reflects consumer expectations and industry norms, as evidenced by commercial products such as the Expander Product (Exhibit 3), the CARSA Cupholder (Exhibit 8), and the Automaze Cupholder (Exhibit 9), which target similar dimensions.

145. Commercial products such as the CARSA Cupholder (ASIN B08H86W469, Exhibit 8) and the Automaze Cupholder (ASIN B084GTHNWC, Exhibit 9) are marketed as compatible with bottles and mugs in the 3.4–4.0 inch diameter range. These products necessarily include adapter bases that expand and contract to accommodate diameters within and beyond the claimed range. A POSITA would understand that designing an adapter base to span 2.6–3.8 inches is a routine engineering choice driven by standard vehicle cupholder dimensions and consumer bottle sizes.



INHOUSE CO. LAW FIRM

146. A POSITA would have viewed this range as an optimal design choice based on ergonomic, mechanical, and market-driven considerations. As the Federal Circuit explained in *In re Applied Materials, Inc.*, 692 F.3d 1289, 1295 (Fed. Cir. 2012), where the prior art teaches a range and the claimed range is a predictable variation, the burden shifts to the patentee to show criticality or unexpected results. No such evidence exists here.

iii. <u>Critical Rebuttal</u>

147. The Federal Circuit has made clear that absent evidence of criticality or unexpected results, overlapping or adjacent ranges are anticipated or obvious. See *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1345 (Fed. Cir. 2012) (overlapping ranges anticipate absent criticality); *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006) (narrower range patentable only where patentee showed criticality and unexpected results).

148. Here, there is no evidence that the claimed 2.6–3.8 inch range produces any unexpected results or solves a problem not already addressed by prior art ranges such as 2.5–3.75 inches (Expander Product, Exhibit 3) or 3.4–4.0 inches (CARSA and Automaze, Exhibits 8–9). The claimed range is simply a routine optimization of known parameters to fit standard OEM cupholders. Accordingly, Claim 7 cannot be distinguished on the basis of criticality.

iv. <u>Conclusion as to Validity / Invalidity Analysis of Claim 7</u>

149. Claim 7 is anticipated under 35 U.S.C. §102 because the Expander Product (Exhibit 3) discloses an overlapping range of 2.5–3.75 inches, which substantially coincides with the claimed 2.6–3.8 inch range. Under MPEP §2131.03 and cases such as *Titanium Metals Corp. v. Banner*, 778 F.2d 775 (Fed. Cir. 1985), and *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340 (Fed. Cir. 2012), disclosure of a single point or overlapping range anticipates absent evidence of criticality. Even if not anticipated, Claim 7 is obvious under 35 U.S.C. §103 because selecting this range would have been an obvious design choice in view of the Expander Product, further supported by CARSA (Exhibit 8) and Automaze (Exhibit 9). As explained in MPEP §2144.04(IV)(A) and cases such as *In re Peterson*, 315 F.3d 1325 (Fed. Cir. 2003), *In re Aller*, 220 F.2d 454 (CCPA 1955), and *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), optimizing known, result-effective variables is routine and obvious. A POSITA would have been motivated to adopt the 2.6–3.8 inch range to align with OEM cupholder standards, ensure broad compatibility, and balance stability with adaptability. Finally, there is no evidence that the



INHOUSE CO. LAW FIRM

claimed range is critical or produces unexpected results, distinguishing this case from *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991 (Fed. Cir. 2006). Accordingly, Claim 7 is both anticipated and, in the alternative, obvious in view of the prior art.

### H. CONCLUSION ON VALIDITY / INVALIDITY ANALYSIS ON DEPENDENT CLAIMS 2-7

150. Claims 2 through 7 are obvious under 35 U.S.C. §103 in view of the Expander Product alone or in combination with Cashin, Fan, CARSA, and/or Automaze. Each dependent claim recites a design feature that reflects routine, predictable engineering choices grounded in well-known consumer product design principles. The rotation-actuated expansion of legs (Claim 2), alignment and off-set configurations (Claims 3 and 4), use of a spacer (Claim 5), screw gear mechanism (Claim 6), and diameter range of 2.6 to 3.8 inches (Claim 7) are all disclosed or rendered obvious by the prior art. A POSITA would have been motivated to incorporate these features to improve compatibility, modularity, and stability across vehicle interiors. None of the dependent claims reflect a non-obvious advance over the prior art, and each is obvious under §103.

## XI. <u>CONCLUSION</u>

151. Based on the analysis above and for all the previously stated reasons, it is my opinion that Plaintiffs' Accused Products do not meet all the limitations of Defendant Benjamin Cook's '539 Patent and also that Benjamin Cook's '539 Patent is unpatenable for being anticipated and/or obvious over prior art.

152. I reserve the prerogative to amend or supplement this report based on further discovery and preparation in this action, including my review of any expert reports or other expert testimony submitted on behalf of Plaintiffs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

Executed on October 17, 2025

/s/ Eric Noble
Eric Noble



INHOUSE CO. LAW FIRM

# Exhibit 1



Eric Noble

Eric is founder and president of The CARLAB, an advanced product design and consulting firm which helps manufacturers and suppliers plan and design new vehicles. In addition to extensive workfor EU, J3, K2 and Big3 carmakers on vehicles including ICEs, NGVs and BEVs, the company serves utilities (water, natural gas, electric), global auto clubs and consumer product firms such as Samsung and Nike with design consulting and consumer research.

Mr. Noble's primary work is target customer definition, and perception of product, as pioneered by industrial design pioneer Henry Dreyfuss. The planning briefs and design testing that result have included the Ford Focus EV, Bentley Continental GTC, more than 20Hyundais and Subarus, and the 10th Gen Honda Civic, the latter being the most successful generation of that car, ever. His design perception research acumen extends from traditional focus groups to clay model testing of new designs and extensive use of eye-tracking technology with potential buyers. The latter quantitative testing includes mapping where consumers look when evaluating/recognizing a vehicle body design, and also whether elements of a design contribute or detract from consumers' recognition, perception and affinity for a vehicle body design.

Eric is Professor of Vehicle Technology in the Transportation Design Department at ArtCenter College of Design in Pasadena, the foremost car design program in the world, and a former Head Judge for the Active Lifestyle Vehicle Awards (ALV), Lead Judge for Core77 Design Awards, Transportation, and an annual judge for Formula SAE competitions. He has also been held several patents on automotive components. Mr. Noble is an occasional expert witness in automotive design cases, including Straman vs. Volkswagen (settled), and Tesla vs. Fisker (JAMS, settled).

He is a respected commentator and expert analyst on automotive design, a member of the Motor Press Guild, Society of Automotive Engineers(SAE) and the American Society of Mechanical Engineers (ASME). He was formerly the factory track driver for Beck Development and today frequently off-roads with his family to recreation in the U.S. and in Baja California, Mexico.

# Exhibit 2

**MATERIALS CONSIDERED**

1. Patent-in-Suit : The US 11,772,539 B2 utility patent issued on October 3, 2023 and filed on April 21, 2023
2. One physical sample of the "Swigzy" brand cupholder product, ASIN B0752DZ1SB, which allegedly embodies the '539 Patent
3. Defendant Cook's Counterclaim and Answer (Doc. 5)
4. Plaintiff Topfire's First Amended Complaint (Doc. 17)
5. Defendant Cook's Disclosure of Asserted Claims and Infringement Contentions (Doc. 25)
6. Plaintiff Topfire's Joint Invalidity Contentions and Response to Infringement Contentions (Doc. 26)
7. Court's Claim Construction Order dated June 25, 2025 (Doc. 44)
8. One physical sample of the "Upgraded Car Cup Holder Expander Adapter with Offset Adjustable Base, Compatible with Yeti 14/24/36/46oz Ramblers, Hydro Flasks 32/40oz, Other Large Bottles Mugs in 3.4"-4.0", 1 Pack", ASIN B09NBKXSLL. This sample is representative of the Accused Products, which are variations of the same item with differences that are immaterial for the purposes of this Report
9. Patent 4,854,468 A (Dahlquist, II)
10. Patent 5,285,953 A (Smith)
11. Patent 5,330,145 A (Evans)
12. Patent 5,560,578 A (Schenken)
13. Patent 5,655,742 A (Whitman)
14. Patent 5,676,340 A (Ruhnau)
15. Patent 6,113,049 A (Miljanich)
16. Patent 6,705,580 B1 (Bain)
17. Patent 10,562,430 B1 (Veillon)
18. Patent 10,609,872 B2 (Rentzhog)
19. Patent 11,254,253 B1 (Fan)

20. Patent 11,447,053 B1 (Fan)
21. Patent 2017/0108269 A1 (Shin)
22. Patent 9,220,349 B1 (Cashin)
23. Seven Sparta Car Cup Holder Expander (ASIN B07PMHPJJF, first available in March 19, 2019)
24. One physical sample of the "Seven Sparta Car Cup Holder Expander" product, ASIN B07PMHPJJF (old version). This sample reflects the earlier version of the product. Seven Sparta has since released a revised version of the product under the same ASIN, which incorporates design changes and differs from the version reviewed here.
25. CARSA 2-in-1 Multifunctional Cup Holder Expander (ASIN B08H86W469, first available in Sept. 2, 2020)
26. Automaze Car Cup Holder (ASIN B084GTHNWC, first available in Feb. 4, 2020)
27. Northern District California Model Patent Jury Instructions excerpt: 3.4 Infringement Under the Doctrine of Equivalents

# Exhibit 3

amazon Delivering to Chino Hills 91709 Update location | Automotive Parts & Accessories | Search Amazon | EN | Hello, sign in Account & Lists | Returns & Orders | 0 Cart

All | Last Minute Deals | Medical Care | Groceries | Best Sellers | Amazon Basics | Registry | Today's Deals | New Releases | Prime | VS | 00 : 30 : 42

Automotive | Your Garage | Deals & Rebates | Best Sellers | Parts | Accessories | Tools & Equipment | Car Care | Motorcycle & Powersports | Truck | RV | Tires & Wheels | Vehicle Showroom

12 to 46 Ounce Bottles&Cups Universal Car Cup Holder Expander Adapte... 277 $19.99 prime

Sponsored

Automotive › Interior Accessories › Cup Holders




7 VIDEOS

Roll over image to zoom in

# Seven Sparta Expander Car Cup Holder Organizer with Adjustable Base, Compatible with Hydro Flasks 32/40 Ounce, Compatible with Yeti Ramblers 20/26/30 Ounce, Other Bottles in 3.4"-3.8" (Black)

Visit the SEVEN SPARTA Store

4.5 9,332 ratings | 164 answered questions

5K+ bought in past month

Deal

-20% $18.39

Typical price: ~~$22.99~~

Get **Fast, Free Shipping** with Amazon Prime

FREE Returns

Get $80 off instantly: Pay $0.00 ~~$18.39~~ upon approval for the Amazon Store Card. No annual fee.

Available at a lower price from other sellers that may not offer free Prime shipping.

Extra Savings Buy any 2, Save 5% 1 Applicable Promotion

Color: **Black**

$18.39 | $18.39 | $18.39

| | |
|---|---|
| **Color** | Black |
| **Material** | Plastic, Rubber |
| **Brand** | SEVEN SPARTA |
| **Product Dimensions** | 4.4"L x 4.4"W x 6.3"H |

## About this item

- EXPANDABLE BASE FOR DIAMETER 2.5"-3.75" CAR CENTRE CONSOLE CUP HOLDER: Seven Sparta car drink cup holder comes with a base that expands to fill the console cup holder to fit different vehicles, such as motorcycles, boats, trucks, RV's and golf-carts. (Vehicles Not Recommended: Rav4, Mini)
- FIT MOST 32 OUNCE - 40 OUNCE WIDE BOTTLES AND DIAMETER 3.4"-3.8": The car drink cup holder is big enough for oversized thermoses, it also can work with most popular brands bottles and many large fast food cups in 3.4"-3.8" diameter. (not fit for Rambler 14 oz Mug)
- SECURES TIGHTLY WITHOUT TIPPING OR SPILLING: This car cup holder built with solid and thick plastic and the rubber tabs around the top of the cup holder hold the cup firmly in place without tipping or spilling when driving down the road.
- LARGE SLOT FOR CONTAINER WITH HANDLES: It is easy to remover the cup holder from the slot. And the cup holder has a base deep enough to provide great balance for your water bottle.
- UPGRADE VERSION: Thanks for our customers who feedback the problem about the cup base. Please rest assured that customer experience is always our first consideration. Now we have upgraded the material to solve this problem. Please be assured purchase.

› See more product details

prime

**Enjoy fast, free delivery, exclusive deals, and award-winning movies & TV shows with Prime**

Try Prime and start saving today with **fast, free delivery**

Delivery | Pickup

$18.39

Get **Fast, Free Shipping** with Amazon Prime

FREE Returns

FREE delivery **Thursday, December 28** on orders shipped by Amazon over $35. Order within 8 hrs 30 mins

**Arrives after Christmas. Need a gift sooner?** Send an Amazon Gift Card instantly by email or text message.

Delivering to Chino Hills 91709 - Update location

In Stock

Qty: 1

Add to Cart

Buy Now

| | |
|---|---|
| Ships from | Amazon |
| Sold by | Auto Off-roading |
| Returns | Returnable until Jan 31, 2024 |
| Packaging | Ships in product packaging |

See more

Add a gift receipt for easy returns

Add to List

New & Used (5) from $16.92 FREE Shipping on orders over $35.00 shipped by Amazon.

Sponsored

## Frequently bought together



+



+



Total price: $34.37

Add all 3 to Cart

These items are shipped from and sold by different sellers.
Show details

Sponsored

**This item:** Seven Sparta Expander | PULIDIKI Car Cleaning Gel | Amooca Car Seat Headrest Hook 4

Car Cup Holder Organizer with Adjustable Base, Compatible wit... $18.39

Universal Detailing Kit Automotive Dust Car Crevice Cleaner Slime... $8.99

Pack Hanger Storage Organizer Universal for Handbag Purse Co... $6.99

## 4 stars and above

Page 1 of 46

Sponsored



JOYTUTUS Upgraded Car Cup Holder Expander with Offset Base, Compatible... 1,770
Limited time deal
$14.81 prime
List: $24.99 (41% off)



SEVEN SPARTA 2 Pack Car Cup Holder Expander Organizer Adjustable Base,... 5,568
$39.99 prime



Cup Holder Expander for Car, Automotive Drink Cup Holder Adapter with Adjustable Ba... 263
$14.95 prime



Smart Kup Car Cup Holder Expander - Fits Hydro Flasks 32/40 oz, Nalgene, Yeti & Lar... 11,829
$19.95 prime



Swigzy Car Cup Holder Expander Adapter (Adjustable) - Fits Hydro Flask, Yeti, Nalge... 9,058
$26.99 prime



TYKOR Car Cup Holder Expander, Cup Holder Extender for Car with Adjustable Base, Fi... 236
$13.99 prime



Cup Holder Expander for Car, Automotive Drink Cup Holder Adapter with Adjustable Ba... 72
$13.95 prime

## Products related to this item

Page 1 of 35

Sponsored



SEVEN SPARTA Upgraded Car Cup Holder Expander Adapter with Offset Adjustable... 5,129
$24.99 prime
Save 5% with coupon



7 Sparta Expander 2 Pack Car Cup Holder Expander Organizer Adjustable Base,... 5,568
$39.99 prime



Integral Ultimate Expander Car Cup Holder - Adjustable Base - Expander &... 2,472
$24.99 prime



JOYTUTUS Upgraded Car Cup Holder Expander with Offset Base, Compatible... 1,770
Limited time deal
$14.81 prime
List: $24.99 (41% off)



Swigzy Car Cup Holder Expander Adapter (Adjustable) - Fits Hydro Flask, Yeti, Nalge... 9,058
$26.99 prime



Car Cup Holder Expander for Car - Upgraded Extender Cup Holder w/Offset Option... 38
$16.99 prime



Car Cup Holder Expander Adapter with Offset Adjustable Base, Compatible with Yeti 1... 115
$12.95 prime

## Important information

To report an issue with this product or seller, click here.

## From the brand

Seven Sparta was founded in 2011, has more than 100 works, all of which have passed US patent certification. We have a domestic ultra-rigorous conversion workshop and an imaginative development team designed to provide reliable. We always focus on the modification of hard-core off-road vehicles, specializing in the JEEP, Ford, Toyota, Tesla, BMW and other brands of car modification.

**Cup Holder Expander for Car**

Visit the Store

## Product Description

**Seven Sparta Car Cup Holder Expander**

Adapter with Adjustable Base, Fit for Most Car Cup Holder, Holds Large Bottles, Mugs and Other Big Drinks in 3.4"-3.8" Diameter

(Car Models Not Recommended: rav4; mini)

**Compatible with Large Bottles in 3.4"-3.8" Diameter:**

Compatible with Yeti 20/26/30 oz and Mug 10 oz,

Compatible with Hydro Flasks 32/40 oz and Mug 6/12 oz,

Compatible with Stanley Travel Tumbler 20/30 oz,

Compatible with Nalgenes 30/32/38/48 oz,

Compatible with Camelbak 32/40 oz,

(If you have bigger bottles in 3.8"-4", such as Yeti mug 14oz, rambler 36/46oz. Please check the Upgraded Cup Holder of Seven Sparta.)

## Q&A

- ***Q1: Will it fit my vehicle?***

*A1: It should fit any standard size (or slightly smaller/bigger) cup holder in a car because it's completely adjustable!*

- ***Q2: Does this work with my bottle?***

*A2: Seven Sparta cup holder fits the large bottles in 3.4"-3.8" diameter, including 32/40 Ounce Hydro Flasks, 30/32/38/48 Oz Nalgenes, 20/26/30 Ounce Yeti Ramblers etc.*

- ***Q3: What is the difference between the upgrade version and the basic version?***

*A2: The basic version is smaller to hold the 3.4-3.8 inch cup, like yeti mug 10oz, rambler 20oz 26oz and hydroflask 32oz; the upgraded version is larger and can hold the bigger cups in 4in diameter, like yeit mug 14oz and rambler 36oz, 40oz.*

- ***Q4: How sturdy and resilient are the rubber tabs?***

*A3: Made of quality rubber, durable and resilient.*




| | Upgraded Expander | Basic Expander | Basic Expander | Basic Expander | 2 Pack Basic Expander | 2 Pack Basic Expander |
|---|---|---|---|---|---|---|
| Brand | Seven Sparta | Seven Sparta | Seven Sparta | Seven Sparta | Seven Sparta | Seven Sparta |

| | | | | | | |
|---|---|---|---|---|---|---|
| Packaged | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Package quantity | 1 pack | 1 pack | 1 pack | 1 pack | 2 pack | 2 pack |
| Item Fits | Bottles 3.4"-4" in Diameter | Bottles 3.4"-3.8" in Diameter | Bottles 3.4"-3.8" in Diameter | Bottles 3.4"-3.8" in Diameter | Bottles 3.4"-3.8" in Diameter | Bottles 3.4"-3.8" in Diameter |
| Color | Black | Black | Gray | Silver Gray | Black | Silver Gray |

## Product information

### Technical Details

| | |
|---|---|
| Manufacturer | Seven Sparta |
| Brand | SEVEN SPARTA |
| Model | CP1210 |
| Item Weight | 13.7 ounces |
| Package Dimensions | 6.97 x 4.8 x 4.76 inches |
| Country of Origin | China |
| Item model number | CP1210 |
| Manufacturer Part Number | CP1210 |

### Additional Information

| | |
|---|---|
| ASIN | B07PMHPJJF |
| Customer Reviews | 4.5 ★★★★☆ 9,332 ratings<br>4.5 out of 5 stars |
| Best Sellers Rank | #90 in Automotive (See Top 100 in Automotive)<br>#3 in Automotive Cup Holders |
| Date First Available | March 13, 2019 |

### Warranty & Support

Amazon.com Return Policy: **Amazon.com Voluntary 30-Day Return Guarantee:** You can return many items you have purchased within 30 days following delivery of the item to you. Our Voluntary 30-Day Return Guarantee does not affect your legal right of withdrawal in any way. You can find out more about the exceptions and conditions here.

**Product Warranty:** For warranty information about this product, please click here

### Feedback

Would you like to **tell us about a lower price?**

## Compare with similar items

**This Item** | **Recommendations**




Seven Sparta Expander Car Cup Holder Organizer with Adjustable Base, Compatible with Hydro Flasks 32/40 Ounce, Compatibl...

Add to Cart



Upgraded 64oz Large Cup Holder Expander for Car, Expandable Cup Holder Adapter with Adjustable Base, Universal Compatible wit...

Add to Cart



JOYTUTUS Upgraded Car Cup Holder Expander with Offset Base, Compatible YETI, Hydro Flask, Large for Hold 18-40 oz...

Add to Cart



SEVEN SPARTA 2 Pack Car Cup Holder Expander Organizer Adjustable Base, Compatible with Yeti 20/26/30 oz, Hydro...

Add to Cart

| | This Item | Recommendation | Recommendation | Recommendation |
|---|---|---|---|---|
| **Price** | -20% $18.39<br>Typical: ~~$22.99~~ | -9% $19.99<br>List: ~~$21.99~~ | -41% $14.81<br>List: ~~$24.99~~ | -7% $38.99<br>List: ~~$41.99~~ |
| **Delivery** | Get it as soon as **Thursday, Dec 28** | Get it as soon as **Thursday, Dec 28** | Get it as soon as **Thursday, Dec 28** | Get it as soon as **Thursday, Dec 28** |
| **Customer Ratings** | 4.5 ★★★★☆ 9,332 | 4.3 ★★★★☆ 218 | 4.4 ★★★★☆ 1,770 | 4.5 ★★★★☆ 5,568 |
| **Easy To Install** | 4.7 ★★★★★ | 4.4 ★★★★☆ | 4.6 ★★★★★ | 4.7 ★★★★★ |
| **Sturdiness** | 4.6 ★★★★★ | 4.1 ★★★★☆ | 4.4 ★★★★☆ | 4.6 ★★★★★ |
| **Value For Money** | 4.3 ★★★★☆ | 4.3 ★★★★☆ | 4.2 ★★★★☆ | 4.5 ★★★★☆ |
| **Easy To Remove** | 4.7 ★★★★★ | — | 4.4 ★★★★☆ | 4.7 ★★★★★ |
| **Sold By** | Auto Off-roading | Degum Tech | JoyTutus | Auto Off-roading |
| **Material** | Plastic, Rubber | Acrylonitrile Butadiene Styrene | Plastic | Plastic, Rubber |

## Products related to this item

Page 1 of 20

Sponsored

[redacted]

## Products related to this item

Page 1 of 20

Sponsored



SEVEN SPARTA Upgraded Car Cup Holder Expander Adapter with Offset Adjustable...
5,129
$24.99 prime
Save 5% with coupon



Integral Ultimate Expander Car Cup Holder - Adjustable Base - Expander &...
2,472
$24.99 prime



7 Sparta Expander 2 Pack Car Cup Holder Expander Organizer Adjustable Base,...
5,568
$39.99 prime



Swigzy Car Cup Holder Expander Adapter (Adjustable) - Fits Hydro Flask, Yeti, Nalge...
9,058
$26.99 prime



JOYTUTUS Upgraded Car Cup Holder Expander with Offset Base, Compatible...
1,770
Limited time deal
$14.81 prime
List: ~~$24.99~~ (41% off)



Car Cup Holder Expander Adapter with Offset Adjustable Base, Compatible with Yeti 1...
115
$12.95 prime



Car Cup Holder Expander for Car - Upgraded Extender Cup Holder w/Offset Option...
38
$16.99 prime

## Similar brands on Amazon

Page 1 of 2

Sponsored

YESCOO
Shop the Store on Amazon ›






YESCOO Dual Adjustable Cup Holder for Car, Cup Holder Expander for Car, Fits...
31
$17.99 List: ~~$18.99~~

ESSENTIALLY ENGINEERED
Shop the Store on Amazon ›





Integral Hydro Expander - Car Cup Holder Expander Organizer with Adjustable Bas...
2,491
$21.99

KEMIMOTO
Shop the Store on Amazon ›






KEMIMOTO Cup Holder Expander for Car Compatible with Hydro Flask 32/40oz, Ye...
2,021
$19.99 List: ~~$24.99~~

## Looking for specific info?

# Exhibit 4

**United States Patent** [19]
**Dahlquist, II et al.**

[11] **Patent Number: 4,854,468**
[45] **Date of Patent: Aug. 8, 1989**

[54] **CUPHOLDER ADAPTIVE DEVICE**

[76] Inventors: **Charles W. Dahlquist, II,** 10312 S. Vilas Dr.; **Vaughn N. North,** 2486 E. 10375 S., both of Sandy, Utah 84092

[21] Appl. No.: **38,220**

[22] Filed: **Apr. 14, 1987**

[51] **Int. Cl.**$^{4}$ .............................................. **B65D 90/12**
[52] **U.S. Cl.** .............................. **220/85 H;** 229/1.5 H; 215/100 R; 215/100.5; 248/146; 248/346.1; 211/74; 211/75
[58] **Field of Search** .............................. 206/562, 563; 215/100 R, 100.5; 229/1.5 H; 220/85 H, 902, 90.4, 94 A; 248/146, 346, 346.1, 360; 211/74, 75; 269/47, 52, 900; D9/369, 455

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 406,828 | 7/1889 | Fietsch, Jr. | 269/900 |
| 1,920,995 | 8/1933 | Legge | 229/1.5 H |
| 2,122,628 | 7/1938 | Tracy | 220/85 H |
| 2,593,648 | 4/1952 | Aukers et al. | 269/47 |
| 2,666,310 | 1/1954 | Hill | 248/146 |
| 2,698,155 | 12/1954 | Bowman | 211/75 |
| 2,948,452 | 8/1960 | Grogan et al. | 229/1.5 H |
| 3,065,873 | 11/1962 | Plate | 215/100 R |
| 3,090,478 | 5/1963 | Stanley | 220/85 H |
| 3,110,407 | 11/1963 | Dahl | 215/100 R |
| 3,698,675 | 10/1972 | Lerew et al. | 211/75 |
| 3,842,981 | 10/1974 | Lambert | 211/74 |
| 4,055,273 | 10/1977 | Jones | 215/100 R |
| 4,069,996 | 1/1978 | Koziol | 220/85 H |
| 4,088,250 | 5/1978 | Schaefer | 220/85 H |
| 4,678,149 | 7/1987 | Chase | D9/369 |
| 4,691,822 | 9/1987 | Malancon, Jr. | 220/94 A |
| 4,721,216 | 1/1988 | Kinder | 220/85 H |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3027778 | 2/1982 | Fed. Rep. of Germany | 269/52 |

*Primary Examiner*—David T. Fidei
*Attorney, Agent, or Firm*—Thorpe, North & Western

[57] **ABSTRACT**

A device for stabilizing and supporting a large cup whose base diameter exceeds the smaller diameter of a support receptacle such as is typically provided in a moving vehicle. The device includes a tubular support base having a diameter slightly smaller than the diameter of a standard can or cup receptacle and having an axial length of at least approximately ½ inch. A support plate is coupled at one side to a top rim of the tubular support base, the remaining side of the support plate being attached to a base rim of a truncated support cone having a diameter greater in size than the tubular diameter and being adapted in configuration for receiving the container or cup therein. A cantilevered configuration of the adaptor device imposes retention forces which increase with the increased weight contained in the supported cup.

**10 Claims, 1 Drawing Sheet**






FIGURE 1




FIGURE 2




FIGURE 3

# CUPHOLDER ADAPTIVE DEVICE

## BACKGROUND OF THE INVENTION

1. Field of the Invention

This invention pertains to a device for holding a cup in a cup support receptacle. More particularly, the present invention relates to a cup holding device which enables a cup to be supported in a receptacle whose size is too small to receive the base of the cup.

2. Prior Art

The growing popularity of convenience stores having gas and food products has developed a variety of product innovations. One such item has been the super-sized drink which is typically 32 liquid ounces in size or greater. Unfortunately, the cup dimensions for these larger drinks exceed the dimensions of standard drink receptacles provided in motor vehicles. These standard receptacles are generally sized to receive an aluminum can as typically used with soft drinks having a cylindrical shape and a diameter of approximately 2 and ½ inches. As a consequence, persons desiring to purchase a super-sized drink for consumption in the vehicle must either carry the drink in their lap or limit the container to the standard dimensions.

Furthermore, the adaption of large cups to have a smaller base suitable to fit in the standard receptacle is not feasible in most vehicle applications. Specifically, such configuration results in a top-heavy container when filled with liquid. With a moving vehicle, such a top-heavy condition is even more serious, subjecting the container to sudden lateral movements that could dislodge the cup.

In addition to the unsuitability of a top-heavy cup, limited space surrounding the receptacle operates as an impediment. Typically, the standard receptacle is located adjacent to a side wall which is too close to allow space for a wide top container. Because the anticipated use was for cylindrical drink cans with no lateral space requirements, provision for such lateral space was simply not contemplated as a need. Accordingly, even the use of a cup having a small enough base to fit in such standard receptacles could not be inserted simply because lateral space is not available.

## OBJECTS AND SUMMARY OF THE INVENTION

It is therefore an object of the present invention to provide an adaptor which may be inserted in a standard receptacle and which provides a receptacle for supporting a larger cup.

An additional object of this invention is to provide an adaptor which can provide a support for a larger cup which is displaced from any side wall structure.

A further object of this invention is to provide an adaptor which is secured to and becomes part of a cup base and provides an extended insert to enable support of a larger cup at the standard receptacle.

These and other objects are provided in an adaptor comprising a tubular support base having a diameter slightly smaller than the diameter of the cupholder recess and an axial length of approximately one half inch or greater. This support base is attached at one side to a support plate which is attached at its other side to a truncated support cone. The support cone has a smaller base rim whose diameter is greater in size than the tubular diameter of the support base. Gripping means may be provided within the truncated support cone to catch or interlock with a container or cup inserted therein such that the device and cup are retained together during use.



Other objects and features of the present invention will be apparent to those skilled in the art based upon the following detailed description, taken in conjunction with the drawings.

## DESCRIPTION OF THE DRAWINGS

FIG. **1** is an elevated perspective view of a cup adaptor constructed in accordance with the present invention.

FIG. **2** is a bottom view of the adaptor device shown in FIG. **1**.

FIG. **3** shows a second embodiment of the subject invention with a graphic representation in phantom line showing a drink receptacle and the adaptor device seated therein.

## DETAILED DESCRIPTION OF THE INVENTION

FIG. **1** shows an adaptor device **10** for stabilizing and supporting a cup or large container (illustrated as item **17** in FIG. **3**). The adaptor device enables support with respect to a standard cup holder or recess **23** which has a smaller diameter than the base of the cup to be supported.

The device includes a cylindrical support base **11** which has a cylindrical diameter slightly smaller than the diameter of the cupholder recess (item **23** in FIG. **3**) to enable its insertion therein in a restrained manner. This cylindrical support base **11** may be solid or annular in construction and will typically have an axial length **12** of at least one half inch. Sufficient axial length is required in order to maintain the restrained configuration and prevent the cylindrical support base from tilting free from the cupholder recess. By having sufficient length, sidewall structure of the cylindrical base abutts against lateral support structure of the recess or receptacle **23** and prevents the cylindrical base from tilting free or dislodging inadvertently from the receptacle structure.

A cylindrical cross section for the support base is illustrated because conventional drink receptacles for soft drink cans and the like are circular in nature. A typical diameter for such a receptacle is 2⅝ inches, providing a close fit for a standard soft drink can of approximately 2½ inches in diameter. Equivalent structures of differing cross sections could be applied to implement the same principles of the present invention. For example, a square cross section for the support base could be provided where a square receptacle was being used. In general terms, therefore, the support base will consist of a tubular shape which may have variable cross sections, but which provides the desired lateral support to the rest of the device. Although the tubular cross section is illustrated as a cylinder in the figures, it is apparent that a square cross section could similarly be applied. In this event, the diagonal of the square cross section would correspond to the diameter of the cylindrical configuration. In each instance, the required lateral support is provided.

The drink container **17** is supported within a truncated support cone having a similar configuration and inclination angle as exists for a lower portion of the contained cup. The truncated support cone includes a top rim **14** and smaller base rim **15**. The base rim has a

diameter greater in size than the diameter of the support base **11**. Lateral support structure of the support cone extends an axial length **16** of at least one inch to provide adequate support to the contained cup.

The support base and truncated cone are respectively coupled at opposite sides of a support plate **18**. In FIG. **1**, for example, one side of the top rim of the cylindrical support base **11** is attached at the base side of the support plate **18**, while the remaining side of the support plate is coupled to the base rim **15** of the truncated cone. In this configuration, the support plate is disposed intermediate between the respective cylindrical support base and truncated cone, and also provides support to the container or cup **17** which is inserted within the cone. This support plate **18** may be formed in an annular configuration as shown in FIGS. **1** and **2**, or may be formed as a solid disc or other shape adapted to integrate and connect the support base **11** and cup containing device **13**.

Use of the annular configuration for the support disc as shown in FIGS. **1** and **2** enables use of a vertical slot or opening **19** (shown in phantom line). This slotted opening extends upward from a lower terminal rim **21** of the support base, through one annular side of the support plate **18** and continuing upward through the top rim **14** of the support cone. The extension of this slot along the total vertical height of the subject device enables expansion of the component diameters in response to insertion of a cup having a slightly larger base diameter than the diameter of the cone. For example, a base diameter for the cone of 3¼ inches could be expanded by a cup diameter of 3⅜ inches by pushing the cup securely into the base of the cone. The existence of the slotted opening **19** allows the truncated cone to enlarge and impose a frictional grip at the base of the inserted cup. The attached cone and support base then become interlocked with the cup or container during use and enable the user to freely remove or replace the adaptor and contained cup at a conventional standard drink receptacle. The resistance of the adaptor against expansion can be controlled by the thickness and plastic composition selected, as well as the size of the annular opening **20**. Less opening space increases the moment of inertia and stiffness of the disc and attached truncated cone against expansion. The opening of the annular disc is practically limited to be no greater than the base diameter to which the disc must be attached.

The frictional retention of a container **17** within the truncated cone **13** may be further enhanced by the use of gripping means **22** which are positioned at the interior base of the truncated cone near the juncture of the base rim **15** with the support plate **18**. The illustrated gripping means **22** comprise teeth or barbs which interlock with a base rim of the container **17** to more strongly engage and interlock with the container. It will be apparent to those skilled in the art that other forms of gripping means may be applied to accomplish the desired result of an interlocking adaptor device and large-base cup.

Although FIGS. **1** and **2** illustrate an adaptive device wherein the support cone and tubular support base are in common vertical alignment, an offset configuration as illustrated in FIG. **3** may be preferred in some circumstances. For example, the phantom lines in FIG. **3** identify a receptacle or drink recess **23** which is positioned adjacent lateral wall structure **24** such as might exist in a vehicle where the drink receptacle **23** is next to a door or near a dashboard. In such circumstances, the top rim **25** of the cup or drink container may be a diameter which is too large to allow its positioning in a concentric or coaxial relationship with the receptacle **23**. Accordingly, FIG. **3** discloses a second embodiment **26** wherein the truncated cone **27** is axially offset from the tubular support base **28** to provide a displacement gap **29** with respect to side wall structure **24**. In this manner, drink container **17** may be positioned in the truncated cone **27** and will provide the same support as provided by the embodiment of FIGS. **1** and **2**. In this instance, however, the construction includes a cantilevered configuration requiring increased axial length for the base **28**. Generally, this length should be a least ¾ of an inch, as compared to the ½ inch minimum for the concentric or coaxial configuration of FIGS. **1** and **2**. The cantilevered forces will be primarily applied within the support plate **30**, which will need the necessary strength to resist the offset weight of the truncated cone and drink with respect to the tubular base **28**. Where the contained cup holds as much as **44** ounces of liquid, this cantilevered force can be significant.

In the cantilevered configuration, it is possible to include a lateral slotted opening (represented by the edge line between points **27*a*** and **27*b***). This slot is of the same configuration as the phantom slot shown in the truncated cone of FIG. **1**, except that the slot is facing the left side of the page. Where the support plate **30** extends below and beyond the truncated cone toward the left side of Figure **3**, the slotted opening would likewise extend along the side of the truncated cone **27** and through the disc structure **30**. Alternatively, the support disc may terminate at other locations under the cone structure **27**, such as at line **31** representing an extension of the side wall of the support base **28**. In this instance, the truncated cone contains the slot **27*a*–*b*** and enables the cone to more easily spread and grip a container or cup having a slightly larger diameter than the inner diameter of the cone structure. Support at the very base of the container is provided by a portion of the support plate **30*a***. Similarly, gripping teeth or other gripping means may be inserted within the cone structure to enhance frictional attachment of the subject device to a cup or container.

In addition to enabling the unrestricted placement of a large cup at a drink receptacle having limited side space, the cantilevered configuration of FIG. **3** provides the additional advantage of more secure retention of the oversized cup at the receptacle **23**. This results by reason of the offset forces which develop a gripping contact at the remote side wall **34** from the truncated cone **27**. Because of the cantilevered support, the weight of the drink contained within cup **17** applies a downward force **35** which tilts the tubular base **28**, resulting in application of a locking force as shown at **34**. The amount of force is roughly proportional to the weight of liquid contained within the cup **17**. This provides the advantage of increased locking action at side surface **34**, as well as opposing side **35** with the increased contents in the cup. In other words, the cantilevered structure provides the surprising result of variable gripping force for holding the adaptor device within the receptacle **23**, based upon the amount of weight being supported. A full 44 ounce drink is provided much greater retention force at **34** and **35** than a container with only 20 ounces of fluid. This is significant because a 44 ounce container is very top heavy and much more susceptible to being dislodged from the receptacle **23**. As the drink is consumed, the drink level

is lowered and reduces the amount of top heaviness. This results in less restraint required at the receptacle **23**.

Although many sizes of adaptor device may be selected, at least two sizes have shown particular advantage with respect to the proposed invention. A 32 ounce container having a height of approximately $5\frac{7}{8}$ inches, a base diameter of approximately 3 1/16 inches and a top rim diameter of approximately $4\frac{1}{2}$ inches may be well supported in an adaptor device constructed in accordance with the present invention wherein the base rim of the truncated cone has a diameter of approximately 3 to 3 1/16 inches, and the tubular diameter is approximately $2\frac{5}{8}$ inches. Similarly, a 44 ounce drink container having a 3 5/16 base diameter and $4\frac{1}{2}$ inch top rim diameter, with a height of approximately $7\frac{1}{2}$ inches is well supported in an adaptor device wherein the base rim of the truncated cone is approximately $3\frac{1}{4}$ inches to 3 5/16 inches, the tubular diameter having a value of approximately $2\frac{5}{8}$ inches.

It will be apparent to those skilled in the art that the other variations may be applied to the examples disclosed herein. Accordingly, the subject invention is to be limited only with respect to the following claims.

We claim:

**1.** A device for stabilizing and supporting a cup of large base diameter over a cup-holder recess having a smaller diameter than the base of the cup, said device comprising:

a tubular support base having a diameter slightly smaller than the diameter of the cup-holder recess and having an axis with axial length of at least approximately one half inch;

a truncated support cone having a top rim and smaller base rim, said base rim having a diameter greater in size than the tubular diameter, said support cone having an axis with axial length of at least approximately one inch;

a support plate coupled at one side to a top rim of the tubular support base, the remaining side of the support plate being coupled to the base rim of the truncated cone, said support plate being thereby disposed intermediate between the respective tubular support base and truncated cone;

the axes of the respective support cone and tubular support base being in offset but parallel vertical alignment.

**2.** A device as defined in claim **1**, wherein the tubular diameter is at least approximately $2\frac{5}{8}$ inches and the base diameter of the cone is approximately 3 to 3 1/16 inches.

**3.** A device as defined in claim **1**, wherein the tubular diameter is at least approximately $2\frac{5}{8}$ inches and the base diameter of the cone is approximately $3\frac{1}{4}$ to 3 5/16 inches.

**4.** A device as defined in claim **1**, wherein the support plate comprises a solid disc approximately equal in diameter to the diameter of the base rim of the cone.

**5.** A device as defined in claim **1**, wherein the support plate comprises an annular disc having an annular opening no greater in diameter than the tubular diameter and further comprising a slotted opening extending upward from the support base through one annular side of the support plate and continuing upward through the top rim of the support cone, said slot and device providing means for concurrent extension of the diameters of the support plate and cone in response to insertion of a cup having a slightly larger base diameter to develop a frictional grip at the base of the cup to retain the device as part of the cup during use.

**6.** A device as defined in claim **1**, wherein the tubular base has an axial length of at least $\frac{3}{4}$ inch.

**7.** A device as defined in claim **1**, wherein the support plate comprises an annular disc having an annular opening no greater in diameter than the tubular diameter and further comprises a slotted opening extending upward from the support plate and continuing upward through the top rim of the support cone, said slot and device providing means for extension of the diameter of the cone in response to insertion of a cup having a slightly larger base diameter to develop a frictional grip at the base of the cup to retain the device as part of the cup during use.

**8.** A device as defined in claim **1**, wherein opposing interior edges of the base portion of the cone include gripping means operable to engage a base edge of the cup supported therein.

**9.** A device as defined in claim **8**, wherein the gripping means comprise teeth positioned on an interior surface of the truncated cone near the junction of the base rim **15** and support plate **18**.

**10.** A device for stabilizing and supporting a cup of large base diameter over a cup-holder recess having a smaller diameter than the base of the cup, said device comprising:

a tubular support base having a diameter slightly smaller than the diameter of the cup-holder recess and having an axial length of at least approximately one half inch;

a truncated support cone having a top rim and smaller base rim, said base rim having a diameter greater in size than the tubular diameter, said support cone having an axial length of at least approximately one inch;

a support plate coupled at one side to a top rim of the tubular support base, the remaining side of the support plate being coupled to the base rim of the truncated cone, said support plate being thereby disposed intermediate between the respective tubular support base and truncated cone;

wherein the support plate comprises an annular disc having an annular opening no greater in diameter than the tubular diameter and further comprises a slotted opening extending upward from the support plate and continuing upwards through the top rim of the support column, said slot and device providing means for extension of the diameter of the cone in response to insertion of a cup having a slightly larger base diameter to develop a frictional grip at the base of the cup to retain the device as part of a cup during use.

* * * * *

# Exhibit 5

US011254253B1

(12) **United States Patent**
**Fan**

(10) **Patent No.: US 11,254,253 B1**
(45) **Date of Patent: Feb. 22, 2022**

(54) **CARRYING BRACKET FOR CUP HOLDER USED IN VEHICLES**

(71) Applicant: **Eagle Fan**, Chu-Pei (TW)

(72) Inventor: **Eagle Fan**, Chu-Pei (TW)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **17/142,272**

(22) Filed: **Jan. 6, 2021**

(51) **Int. Cl.**
***B60N 3/00*** (2006.01)
***B60N 3/10*** (2006.01)

(52) **U.S. Cl.**
CPC ............ ***B60N 3/103*** (2013.01); ***B60N 3/106*** (2013.01); ***B60N 3/108*** (2013.01)

(58) **Field of Classification Search**
None
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,791,618 A * 8/1998 Lancaster ............. B60N 3/106 248/311.2
5,839,711 A * 11/1998 Bieck ..................... B60N 3/106 248/313
2010/0090079 A1 * 4/2010 Choi ...................... B60N 3/106 248/311.2
2010/0200720 A1 * 8/2010 Kaemmer ............. B60N 3/106 248/311.2
2012/0153113 A1 * 6/2012 Voigt ..................... B60N 3/105 248/316.7
2014/0158852 A1 * 6/2014 Andersson ............ B60N 3/102 248/346.03
2018/0105089 A1 * 4/2018 Inoue ..................... B60N 3/106

* cited by examiner

*Primary Examiner* — Steven M Marsh
(74) *Attorney, Agent, or Firm* — Lin & Associates Intellectual Property, Inc.

(57) **ABSTRACT**

A carrying bracket for a cup holder used in vehicles is provided, including: a base unit, a rotating unit, and a plurality of expansion units; the outer wall of the base unit being disposed with a plurality of through holes; the rotating unit being mounted on the base unit and rotatable without detachment, the rotating unit having a spiral guide groove facing the base unit; the expansion units being installed in the base unit through the through holes at corresponding positions, and the expansion unit comprising a moving part and a wall support; the wall support for installing the moving part with adjustable position to change the length of the expansion unit; each moving part having a guide block and the plurality of guide blocks all located in the spiral guide groove. When the rotating unit rotates, each moving part moves linearly and protruding outward through the through hole.

**10 Claims, 14 Drawing Sheets**






FIG. 1




FIG. 2




FIG. 3



24
16
23
22
2
314
31
3
311
32
15
191
19
321
11
322
181
18
14
324
12
1
13
17


FIG. 4


2
22
21
15
191
19
191
314
312
312
311
311
312
312
11
11
31
3
32
315
12
1
13
181
181
18
181
181
323
322
323
321
14
14
14

FIG. 5




FIG. 6




FIG. 7A




FIG. 7B




FIG. 8




FIG. 9




FIG. 10




FIG. 11




FIG. 12




FIG. 13




FIG. 14

# CARRYING BRACKET FOR CUP HOLDER USED IN VEHICLES

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention relates generally to a carrying bracket, and more particularly, to a carrying bracket to be fixed to the cup holder used in a vehicle for mounting other accessories.

### 2. The Prior Arts

Every vehicle is provided with at least a set of cup holders for drivers or passengers to place canned drinks or coffee cups. However, with the popularity of electronic products, the old design used in vehicles is no longer suitable for use. Some manufacturers have designed a carrying bracket to be installed on the cup holder, and the carrying bracket provides additional clamping devices, extension platforms, larger cup holders, etc., for drivers or passengers to hold mobile phones or for other purposes.

The common carrying bracket generally uses a plurality of outwardly expandable support members to tightly contact the inner wall of the cup holder to achieve a fixing effect. However, different types of vehicles may provide different sizes of the cup holders. Therefore, the carrying bracket is usually only suitable for cup holders within a small size range. For manufacturers, the provision of different sets of carrying brackets to accommodate cup holders of different sizes is a big burden on development costs. For the user, if the car is replaced, the old carrying bracket cannot be used and must be purchased again, which is not cost-effective. For this reason, the inventor of the present invention proposes an improved structure

## SUMMARY OF THE INVENTION

To solve the above problems, the primary objective of the present invention is to provide a carrying bracket for the cup holder used in vehicles, which is mainly provided with an expansion unit that can adjust the length and increase the applicable size, and can still achieve a good pressing effect, so as to bring excellent convenience and reduce costs for users or manufacturers.

In order to achieve the aforementioned objective, the present invention utilizes the following technical solutions:

The present invention is a carrying bracket for cup holder used in vehicles, including: a base unit, a rotating unit, and a plurality of expansion units; the outer wall of the base unit being disposed with a plurality of through holes; the rotating unit being mounted on the base unit and rotatable without detachment, the rotating unit having a spiral guide groove facing the base unit; the expansion units being installed in the base unit through the through hole at corresponding positions, and the expansion unit comprising, from inside to outside, a moving part and a wall support; the wall support for installing the moving part with adjustable position, after adjustment, the length of the expansion unit being changed; each moving part having a guide block and the plurality of guide blocks all located in the spiral guide groove, and when the rotating unit rotating, each of the moving parts linearly moving and protruding outward through the corresponding through hole.

In a preferred embodiment, the moving part has at least two sets of latch slots, each set of the latch slots is distributed



on two corresponding vertical walls of the moving part, and the wall support also comprises a U-shaped sheath element, the sheath element has a convex strip on two opposite inner walls, and the wall support is fixed to the moving part when the convex strip is inserted into the latch slot.

In a preferred embodiment, the latch slot has at least one convex point, the convex strip also has the same number concave notches at corresponding positions of concave notches, when the convex strip is inserted into the latch slot, the convex points are also located inside the corresponding notches.

In a preferred embodiment, the base unit has a plurality of guide channels, each of the guide channels corresponds to the through hole, when the rotating unit rotates, the moving part moves in the guide channel and extends through the through hole.

In a preferred embodiment, a holder is installed in the base unit, the holder has a plurality of sliding grooves, and each of the moving parts also has a holding block, the holding block protruding from the bottom of the moving part and is located in the sliding grooves of the holder when assembled.

In a preferred embodiment, the base unit has a receiving base with an opening facing upward, the bottom of the rotating unit has a round piece, and the spiral guide groove is formed on an end surface of the round piece facing the base unit, the round piece rotates in the receiving base.

In a preferred embodiment, a screw rod is installed in the center of the base unit, and the screw rod penetrates the rotating unit and is locked to the base unit, so that the rotating unit is rotatable but not disengaged from the base unit.

In a preferred embodiment, the outer wall of the top of the base unit further comprises a pivotal circular wall, and the pivotal circular wall comprises a plurality of longitudinal protruding teeth.

In a preferred embodiment, the present invention further comprises a rotating bracket, the rotating bracket has a C-shaped butt clamp, the inner wall of the butt clamp comprises a plurality of vertically distributed tooth grooves, when the rotating bracket is clamped by the butt clamp on the pivotal circular wall, and the protruding teeth are located in the tooth grooves.

Compared with the prior art, the present invention has the following specific effects:

1. The expansion unit of the present invention is composed of the moving part and the wall support. By adjusting the position of the wall support at the moving part, the radial length of the expansion unit can be changed, thereby expanding the applicable size of cup holders.
2. The present invention is easy to operate, easy to use and can be widely used in various products.
3. The present invention can be used with a set of rotating brackets for connecting various accessories of different types, which are convenient for users to choose.

## BRIEF DESCRIPTION OF THE DRAWINGS

The present invention will be apparent to those skilled in the art by reading the following detailed description of a preferred embodiment thereof, with reference to the attached drawings, in which:

FIG. **1** is a perspective view of the first embodiment of the carrying bracket for the cup holder used in vehicles according to the present invention;

FIG. **2** is a perspective view of the first embodiment of the carrying bracket for the cup holder used in vehicles according to the present invention in the expanded state;

FIG. **3** is a perspective view of the first embodiment of a carrying bracket for a cup holder used in vehicles according to the present invention in the expanded state to the largest dimension;

FIG. **4** is an exploded view of the first embodiment of the carrying bracket for the cup holder used in vehicles according to the present invention, with only part of the structure of the rotating unit drawn;

FIG. **5** is an enlarged schematic view of part of the components of the first embodiment of the carrying bracket created for the cup holder used in vehicles according to the present invention, with only one set of the expansion unit drawn;

FIG. **6** is a cross-sectional view of the first embodiment of the carrying bracket for the cup holder used in vehicles according to the present invention;

FIG. **7**A is a transverse cross-sectional view of the first embodiment of the carrying bracket for the cup holder used in vehicles according to the present invention, with the expansion unit not expanded;

FIG. **7**B is a transverse cross-sectional view of the first embodiment of the carrying bracket for the cup holder used in vehicles according to the present invention, with the expansion unit expanded;

FIG. **8** is a schematic view of the second embodiment of the carrying bracket for the cup holder used in vehicles according to the present invention;

FIG. **9** is a schematic view of the third embodiment of the carrying bracket for the cup holder used in vehicles according to the present invention;

FIG. **10** is a schematic view of the fourth embodiment of the carrying bracket for the cup holder used in vehicles according to the present invention;

FIG. **11** is a schematic view of the fifth embodiment of the carrying bracket for the cup holder used in vehicles according to the present invention;

FIG. **12** is a schematic view of the sixth embodiment of the carrying bracket for the cup holder used in vehicles according to the present invention;

FIG. **13** is a schematic view of the seventh embodiment of the carrying bracket for the cup holder used in vehicles according to the present invention; and

FIG. **14** is a schematic view of the eighth embodiment of the carrying bracket for the cup holder used in vehicles according to the present invention.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

The accompanying drawings are included to provide a further understanding of the invention, and are incorporated in and constitute a part of this specification. The drawings illustrate embodiments of the invention and, together with the description, serve to explain the principles of the invention.

Referring to FIG. **1** and FIG. **2**, FIG. **1** is a perspective view of the first embodiment of the carrying bracket for the cup holder used in vehicles according to the present invention; FIG. **2** is a perspective view of the first embodiment of the carrying bracket for the cup holder used in vehicles according to the present invention in the expanded state. The carrying bracket for the cup holder used in vehicles of the present invention includes a base unit **1**, a rotating unit **2** and a plurality of expansion units **3**. The outer wall of the base unit **1** is disposed with a plurality of through holes **11** arranged in a ring manner; the rotating unit **2** is mounted on the base unit **1**, and can rotate but not detach from the base unit **1**. The plurality of the expansion units **3** are installed in the base unit **1** through the through holes **11** at corresponding positions. When the rotating unit **2** rotates, the plurality of expansion units **3** can move linearly and extend outward through the corresponding through holes **11** (as shown in FIG. **2**). When in use, the base unit **1** is placed in a cup holder in the car, and the expansion unit **3** moves outwards to achieve tight fixation. In addition, the expansion unit **3** is formed by sheathing a moving part **31** and a wall support **32**. When the wall support **32** is adjusted the installation position of the moving part **31**, the length of the expansion unit **3** extending outward can be increased (as shown in FIG. **3**), thereby expanding the size suitable for the cup holder. In the present embodiment, the rotating unit **2** provides a large-sized cup holder, but is not limited to the above. The present invention can also be directly designed with the required shape or installed with various accessories, such as a platform, a flexible hose bracket, or clamping device, and so on, to achieve other different usages, which will be described in the following embodiments.

The following first gives a detailed description of the structure of each component. FIG. **4** is an exploded view of the present invention, wherein only a part of the rotating unit **2** is drawn, and FIG. **5** shows an enlarged schematic view of the main component:

The base unit **1** is a cylindrical base with an opening facing upward, and a plurality of through holes **11** is disposed around the outer wall. The base unit **1** may comprise one or more components. In the present embodiment, the base unit **1** comprises a shell **12** and a base **13**, and the plurality of through holes **11** are formed on the outer circumferential wall after the shell **12** and the base **13** are assembled. In addition, a plurality of guide channels **14** is formed at the base **13** by a plurality of upright walls, and each guide channel **14** corresponds to one through hole **11** after assembly. The expansion unit **3** can move in the guiding channel **14** and extend outward through the through hole **11**. A receiving base **15** is formed in the upward opening of the shell **12**, and the receiving base **15** is for installing and rotating the rotation unit **2** herein. The base unit **1** is additionally provided with a screw rod **16**, which penetrates the rotating unit **2** and the base **13** from top to bottom during assembly, and a nut **17** locks the bottom end of the screw rod **16** to fix the position of the shell **12** together with the base **13**. However, the rotating unit **2** is rotatable but will not be separated from the base unit **1**. In addition, the base unit **1** can be optionally disposed with a holder **18** in the base **13**. The holder **18** has a plurality of sliding grooves **181**, and the plurality of sliding grooves **181** are arranged like a cross. The sliding grooves **181** are used to assist the expansion unit **3** to move smoothly. The base unit **1** has a pivotal circular wall **19**, located on the outer wall of the shell **12** close to the top. The pivotal circular wall **19** further comprises several longitudinal protruding teeth **191**. The pivotal circular wall **19** is for other accessories to be installed herein, which will be described in later embodiments.

The rotating unit **2** has a spiral guide groove **21** facing the base unit **1**. In the present embodiment, the bottom of the rotating unit **2** has a smaller round piece **22**, and the spiral guide groove **21** is formed at the end surface of the round piece **22** facing the base unit **1**. After assembling, the round piece **22** rotates in the receiving base **15**. In the present embodiment, the upper half of the rotating unit **2** is a large-sized cup holder, and the lower half is designed

according to usage requirements. Herein, one of the embodiments is provided for explanation. The lower half of the rotating unit **2** includes a matching piece **23** and a round plate **24**. The matching piece **23** is installed in the round piece **22** for the screw rod **16** to penetrate the matching piece **23** and then extend downward to be locked. The round plate **24** is attached to the inside of the rotating unit **2**, as shown in FIG. **6**. When the rotating unit **2** rotates, the round plate **24** and the round piece **22** are rotated synchronously, but the matching piece **23** and the screw rod **16** are fixed.

Refer to FIG. **5**. The expansion unit **3** is in the shape of a three-dimensional rectangular shell, which includes, from inside to outside, a moving part **31** and a wall support **32**. The wall support **32** is installed on the moving part **31** and can be adjusted in position, thereby changing the length of the expansion unit **3** and expanding the applicable size range of the cup holder. Therefore, the moving part **31** has at least two sets of latch slots **311**, and each set of the latch slots **311** is distributed on two opposite two vertical walls of the moving member **31**. Preferably, one of the latch slots **311** is located at the position where the moving part **31** is closest to the base unit **1**, and the other latch slot **311** is far away from the base unit **1**. The wall support **32** has a U-shaped sheath element **321**. The sheath element **321** has a convex strip **322** on each of the facing inner walls. When the convex strip **322** is inserted into the latch slot **311**, the wall support **32** is fixed to the moving part **31**. In addition, to prevent from loosening, the latch slot **311** is provided with at least one convex point **312**, and the convex strip **322** also has the same number of the concave notch **323** at positions corresponding to the convex points. When the convex strip **322** is inserted into the latch slot **311**, the convex point **312** will also be located in the concave notch **323**.

The moving part **31** further comprises a guide block **314** and a holding block **315**. The guide block **314** protrudes from the top of the moving part **31** and is located in the spiral guide groove **21** during assembly. The holding block **315** protrudes from the bottom of the moving part **32** and is located in the sliding groove **181** of the holder **18** during assembly. During assembly, each expansion unit **3** is installed in the guide channel **14**, and the guide block **314** is located in the spiral guide groove **21**, as shown in FIG. **7**A. When the rotating unit **2** rotates, the guide block **314** moves along the spiral guide groove **21**, and each moving part **31** can move linearly and extend out through the corresponding through hole **11**, as shown in FIG. **7**B. In addition, the sliding of the holding block **315** in the sliding groove **181** also assists the moving part **31** to move more smoothly. The outer wall of the wall support **32** facing outward is provided with a non-slip pad **324** to increase the friction at contacting the inner wall of the cup holder.

From the above description, it can be seen that the carrying bracket of the present invention is installed on the cup holder used in the car, and the rotating unit **2** on the base unit **1** can be rotated to drive the expansion unit **3** from the base unit **1** to extend from inside to outside, as shown in FIG. **2** to achieve pressing on the inner wall of the cup holder. When the size of the cup holder is too large, the expansion unit **3** needs to be expanded to the maximum state, then the wall support **32** is pulled downwards to exit the moving part **3**, as shown in FIG. **3**, and then use the convex strip **322** to align with the outermost latch slot **311** and then inserted, so that the position of the wall support **32** on the moving part **31** can be changed. The subsequent operation mode is the same as before. The rotating unit **2** is rotated to partially retract the expansion unit **3** in the base unit **1**, and then placed on the cup holder before rotating the rotating unit **2** to expand.



The design of the present invention is widely applicable to various products. For example, the partial structure of the rotating unit **2** can be changed into a variety of different embodiments. The actual specific embodiments will be explained as follows. As shown in FIG. **2**, the rotating unit **2** is a large-sized cup holder. As such, the carrying bracket of the present invention is installed at the cup holder. Instead of losing a cup holder, the present invention can provide a large-sized cup holder to meet the needs of users. In this embodiment, a mug can be placed.

As shown in FIG. **8**, the top of the rotating unit **2**A is a platform, on which a suction cup holder **41** can be attached onto, and a clamping device **43** is mounted on the suction cup holder **41** to provide a hands-free device for mobile phone.

FIG. **9** is the third embodiment of the present invention. The upper half of the rotating unit **2**B is connected with a hose-type bracket **45**, so that the hose-type bracket **45** can be installed with a clamping device for holding the mobile phone.

FIG. **10** is the fourth embodiment of the present invention. The carrying bracket for the cup holder used in vehicles further includes a rotating bracket **5** with a C-shaped butt clamp **51**. The inner wall of the butt clamp **51** has a plurality of tooth grooves **52** distributed vertically. The rotating bracket **5** is clamped on the pivotal circular wall **19** by the butt clamp **51**, and the position can be adjusted by rotation. When the protruding teeth **191** are located in the tooth grooves **52**, the rotating bracket **5** can be positioned to prevent from rotating freely. The rotating bracket **5** can also be equipped with different accessories here to increase the scope of application of the product.

FIG. **11** is the fifth embodiment of the present invention. In the present embodiment, the rotating bracket **5** is connected to a set of joint components **6**, and another small cup holder **7** can be mounted on the joint components **6**. This design can meet the needs of users who need two sets of cup holders.

FIG. **12** is the sixth embodiment of the present invention. In the present embodiment, a set of receiving plates **8** can also be used. The receiving plates **8** can be installed on the small cup holder **7** to provide more platform surface for users.

FIG. **13** is the seventh embodiment of the present invention. In the present embodiment, the rotating bracket **5** is connected to a set of hose brackets **45**. The hose-type bracket **45** can be equipped with a clamping device for clamping the mobile phone.

FIG. **14** is the eighth embodiment of the present invention. In the present embodiment, the rotating bracket **5** is also connected to a set of shorter bracket type joints **9** which can be equipped with a clamping device for clamping the mobile phone.

Although the present invention has been described with reference to the preferred embodiments thereof, it is apparent to those skilled in the art that a variety of modifications and changes may be made without departing from the scope of the present invention which is intended to be defined by the appended claims.

What is claimed is:

**1**. A carrying bracket for a cup holder used in vehicles, comprising:

a base unit having an outer wall disposed with a plurality of through holes;

a rotating unit mounted on the base unit, the rotating unit having a spiral guide groove facing the base unit and being rotatable without disengagement; and

a plurality of expansion units installed in the base unit through the plurality of through holes at corresponding positions, each of the expansion units comprising a moving part and a wall support for installing the moving part with an adjustable position, the moving part having a guide block located in the spiral guide groove and moving linearly and protruding outward through a corresponding through hole when the rotating unit rotates;

wherein a length of a respective expansion unit of the expansion units changes according to the adjustable position of the moving part of the respective expansion unit.

**2**. The carrying bracket for a cup holder used in vehicles according to claim **1**, wherein the moving part of each of the expansion units has at least two sets of latch slots, each set of the latch slots is distributed on two corresponding vertical walls of the moving part, and the wall support of each of the expansion units also comprises a U-shaped sheath element, the sheath element has two convex strips respectively on two opposite inner walls, and the wall support is fixed to the moving part when the two convex strips are inserted into one set of the latch slots.

**3**. The carrying bracket for a cup holder used in vehicles according to claim **2**, wherein each latch slot has at least one convex point, each convex strip also has at least one concave notch each corresponding to one of the at least one convex point, and when the convex strip is inserted into a corresponding latch slot, each of the at least one convex point is also located inside a corresponding one of the at least one concave notch.

**4**. The carrying bracket for a cup holder used in vehicles according to claim **1**, wherein the base unit has a plurality of guide channels, each of the guide channels corresponds to one of the through holes, and when the rotating unit rotates, the moving part of each of the expansion units moves in a respective guide channel and extends through the through hole corresponding to the respective guide channel.



**5**. The carrying bracket for a cup holder used in vehicles according to claim **1**, wherein a holder is installed in the base unit, the holder has a plurality of sliding grooves, the moving part of each of the expansion units also has a holding block, and the holding block protrudes from the bottom of the moving part and is located in the sliding grooves of the holder when assembled.

**6**. The carrying bracket for a cup holder used in vehicles according to claim **1**, wherein the base unit has a receiving base with an opening facing upward, the bottom of the rotating unit has a round piece, the spiral guide groove is formed on an end surface of the round piece facing the base unit, and the round piece rotates in the receiving base.

**7**. The carrying bracket for a cup holder used in vehicles according to claim **1**, wherein an anti-slip pad is disposed on an outer wall of the wall support of each of the expansion units.

**8**. The carrying bracket for a cup holder used in vehicles according to claim **1**, wherein a screw rod is installed in a center of the base unit, and the screw rod penetrates the rotating unit and is locked to the base unit, so that the rotating unit is rotatable but not disengaged from the base unit.

**9**. The carrying bracket for a cup holder used in vehicles according to claim **1**, wherein the outer wall of the top of the base unit further comprises a pivotal circular wall, and the pivotal circular wall comprises a plurality of longitudinal protruding teeth.

**10**. The carrying bracket for a cup holder used in vehicles according to claim **9**, further comprising a rotating bracket, the rotating bracket having a C-shaped butt clamp, an inner wall of the butt clamp comprising a plurality of vertically distributed tooth grooves; when the rotating bracket is clamped by the butt clamp on the pivotal circular wall, the protruding teeth are located in the tooth grooves.

* * * * *

# Exhibit 6

US005655742A

**United States Patent** [19]
**Whitman et al.**

[11] **Patent Number: 5,655,742**
[45] **Date of Patent: Aug. 12, 1997**

[54] **BEVERAGE HOLDER**

[76] Inventors: **Tom L. Whitman**, 5834 Kuldell, Houston, Tex. 77074; **Danny E. Swindler**, 2404 Messick Loop W., Round Rock, Tex. 78681

[21] Appl. No.: **421,361**

[22] Filed: **Apr. 12, 1995**

[51] **Int. Cl.**[6] .................................................. **A47K 1/08**
[52] **U.S. Cl.** ................ **248/311.2**; 248/131; 248/222.11; 224/926
[58] **Field of Search** ................................ 248/311.2, 314, 248/346.03, 346.04, 346.05, 346.06, 131, 912, 222.11, 222.12; 224/926

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,301,216 | 11/1942 | Koontz | 248/346.03 |
| 2,406,334 | 8/1946 | Keller et al. | 248/311.2 |
| 2,805,017 | 9/1957 | Hill et al. | 248/346.04 X |
| 2,910,219 | 10/1959 | Bennett et al. | 248/346.04 X |
| 3,039,616 | 6/1962 | Proffit | 211/71 |
| 3,664,617 | 5/1972 | Fenwick | 248/314 X |
| 4,596,370 | 6/1986 | Adkins | 248/311 |
| 4,634,016 | 1/1987 | Voss | 220/69 |
| 4,819,843 | 4/1989 | Nakayama | 224/42.5 |
| 4,854,468 | 8/1989 | Dahlquist et al. | 220/85 |
| 4,919,381 | 4/1990 | Buist | 248/311.2 X |
| 5,060,899 | 10/1991 | Lorence et al. | 248/311.2 |
| 5,086,958 | 2/1992 | Nagy | 248/311.2 X |
| 5,102,086 | 4/1992 | Thomason | 248/311.2 |
| 5,135,195 | 8/1992 | Dane | 248/311.2 |
| 5,330,145 | 7/1994 | Evans et al. | 248/311.2 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6270730 | 9/1994 | Japan | 248/311.2 |

*Primary Examiner*—Korie Chan
*Attorney, Agent, or Firm*—Gregory M. Luck

[57] **ABSTRACT**

A beverage holder is disclosed, which holder comprising a base rotatably secured to a body, where the base is removable receivable in a standard beverage tray or rack. In a preferred embodiment, the body is eccentrically attached vis-a-vis the base so as to allow use of the holder where the beverage tray or rack is closely secured to a wall or other fastening surface.

**9 Claims, 4 Drawing Sheets**









FIG. 2




FIG. 1

FIG. 4







FIG. 3

FIG. 5







FIG. 6




FIG. 8




FIG. 7

# BEVERAGE HOLDER

## BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention generally relates to a device for stabilizing and supporting an oversized cup or can. More specifically, the present invention relates to a support device for holding a cup or can provided with a removable insulation element, where said support element is adapted to fit in an ordinary container or beverage rack in a car, boat or other vehicle, where such beverage rack is otherwise rendered useless when an oversized cup or can provided with an insulation element is utilized.

2. Description of the Prior Art

Some years ago, innovations were made in the insulation of hot and cold beverage containers to allow them to retain a preferred temperature for a longer period of time. This innovation was in the nature of a removable styrofoam or foam rubber sleeve which fits around the body of the container. Such insulation devices have been popularly marketed under a variety of names the most familiar of which is Koozie™. The popularity of convenience stores has also made commonplace the oversized drink container which generally contains 32 or more liquid ounces. These drink containers, while distributed in a variety of sizes, generally have base diameters exceeding 2 and ½ inches.

The above innovation in removable container insulators and oversized containers has rendered useless many beverage receptacles or trays as provided in everything from motor vehicles to golf carts and boats. In this connection, standard drink trays are generally sized to receive a standard aluminum beverage can having a cylindrical shape and diameter of approximately 2 and ½ inches. As a consequence, persons desiring to utilize an insulated beverage or purchase an oversized drink must either forego the use of a standard drink rack, risk spillage by carrying the drink in their lap on the floor or dashboard, or limit the container to standard dimensions altogether.

The wholesale modification of beverage receptacles to accommodate oversized drink containers or containers incorporating an insulating sleeve, however, is usually not practical since such modification would render such receptacles useless for standard sized drink containers. Moreover, the adaptation of drink containers themselves to incorporate a small, average sized base is generally not practical from the standpoint of stability.

In addition to the problem of the unsuitability of wholesale modifications to either the drink receptacle or the containers themselves, yet another impediment to their use and enjoyment is seen in the limited space surrounding the beverage rack or tray. Typically, the standard rack or tray is located and/or attached adjacent to a sidewall which is too closely situated to allow space for a wide top container or a container incorporating an insulating sleeve.

## SUMMARY OF THE INVENTION

The present invention addresses the above and other disadvantages of beverage container holders adapted to receive a standard sized container. The beverage holder of the present invention comprises a base adapted to fit in a conventional beverage receptacle or tray, and a body adapted to receive an oversized beverage container. The body is preferably eccentrically mounted to the base so as to allow the two part unit to fit within a conventional receptacle mounting bracket which is itself fitted to a wall, dash or other area where space is a concern.



The present invention therefore offers a number of advantages over the art including the benefit of allowing the use of an existing conventional beverage receptacles or trays even when an insulated or oversized beverage container is preferred by the user. Another advantage includes the ability to use an oversized or insulated beverage container even when the beverage receptacle or tray is mounted in close proximity to a car dash or other mounting surface.

Other advantages and benefits of the present invention will become apparent to those skilled in the art based upon the following drawings and description of the preferred embodiments.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is an isometric view of the top of the mounting base of one embodiment of the present invention.

FIG. **2** is an isometric view of the bottom of the mounting base illustrated in FIG. **1**.

FIG. **3** is an isometric view of the body of one embodiment of the present invention.

FIG. **4** is a second isometric view of the body illustrating an eccentric attachment means.

FIG. **5** is a top view of one embodiment of the mounting base of the present invention.

FIG. **6** is a side view of the mounting base of the embodiment illustrated in FIG.

FIG. **7** is a side cutaway view of a second embodiment of the mounting base.

FIG. **8** is an isometric view of a second embodiment of the mounting base illustrated in FIG. **7**.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

One embodiment of the present invention may be seen by reference to FIGS. **1–6**. As illustrated therein, the present invention comprises an oversize can or cup holder adapted to slidably receive an oversized can or cup, or an insulated can or cup, thereby enabling the combination to be secured in a conventional receptacle, bracket, tray or rack **80**.

By reference to FIGS. **1–6**, there is shown a base **2** adapted to be coupled to a body **60** via a coupling means **35** in a manner specified below. By specific reference to the embodiment illustrated in FIGS. **1** and **2**, base **2** in a preferred embodiment is generally cylindrical in shape and includes a partially closed top end **4** and an open bottom end **6**. By reference to FIG. **2**, base **2** is formed from cylindrical walls **7** defining a generally cylindrical bore **9** partially disposed therethrough ending in top end **4** as above described. Other embodiments of base **2** are also envisioned within the spirit of the invention. For example, base **2** may alternatively define two closed ends or be made from a solid piece of material.

In a preferred embodiment, base **2** is provided with means **11** to retain it in the cylindrical well or cup **78** of a beverage tray or rack **80** (See. FIG. **6**). In the embodiment shown in FIGS. **1–2**, means **11** includes one or more axially disposed flaps **3** formed integrally with base **2** and biased in an outward direction. Flaps **3** are receivable in cooperative grooves or slots **17** formed in walls **7**. In such a fashion, flaps **3** exert an outward force when forced inwardly into slots **17** when base **2** is inserted into a receiving cup **78** of beverage tray **80**. For this reason, it is preferable that base **2**, and thus flaps **3**, be formed of a resilient material, e.g. a deformable plastic, which retains a long term memory. Alternatively, it

is envisioned that flaps **3** may be attached to base **2** via a conventional fastening means, e.g. riveting or gluing, such that base **2** and flap **3** need not be formed of the same material.

By reference to FIGS. **7–8**, there is shown a second embodiment of the base **2** incorporating a discrete biasing element **90** secured to base **2** via a notch or groove **92** formed in bottom **4** as illustrated. Biasing elements **90** are situated in contacting relation to flaps **3** via a second formed groove **93**. Element **90** is preferably formed of a resilient material, e.g. a spring steel, and describes a partial loop. Still alternatively, it is envisioned that other retention means may be used within the spirit of the invention. For example, it is possible to use a series of spring biased pistons (not shown) disposed along the circumference of base **2** to retain base **2** in rack **80**. In each embodiment, however, it is desirable that the outward bias provided by such retention means be located at the uppermost end of base **2** in order to afford maximum stability for the holder of the present invention when secured in beverage tray **80**.

By reference to FIGS. **1–2**, flaps **3** of retention means **11** are further provided with outwardly extending protrusions **20** which contact the inner wall **77** of the cup **78** of beverage tray **80** and thus define point contact surfaces between the base **2** and surface **77** to contribute to the upright stability of the holder. In this connection, while significant stability may be attained by contact between the planar surface defined by the bottommost edges **21** of wall **7** and the bottom surface **74** of cup **78**, protrusions **20** lend still additional stability and furthermore aid in stabilizing the beverage when the floor **74** or sides **77** of cup **78** are warped or irregular in shape or when base **2** does not extend sufficiently to settle flush with floor **74**.

In the embodiment illustrated in FIGS. **1–2**, walls **7** are further provided with one or more axially disposed indentations or grooves **22**. Grooves **22** provide both a means of extracting the holder from the beverage tray **80** as well as providing a drainage path for any liquids which may be spilled from the beverage container **100** itself into cup **78**.

By reference to FIGS. **1–6**, coupling means **35** is comprised of two separate, detachable components formed in both base **2** and body **60**. By specific reference to FIGS. **1–2** and **5–6**, coupling means **35** includes a recessed circular shaft **23** having an upper end **24** and a lower end **27**, where said lower end **27** merges with a recessed planar ring **29** defined about shaft **23**. A concentrically disposed, annular bore **30** is thus formed in base **2**, as illustrated, to receive a complementary configured shaft **40** as illustrated in FIG. **4** and as will be further discussed below, so as to allow rotation between base **2** and body **60**.

In a preferred embodiment, shaft **23** is formed in two or more segments **37** integrally coupled to base **2**. Such segmentation, in conjunction with the pliability of the separate elements **37** themselves, allow shaft **23** to be diametrically compressible during the joinder of base **2** and body **60** as will be discussed below. As illustrated in FIG. **1**, the upper end **24** of each of the separate elements **37** defining shaft **23** is provided with an outwardly extending, downwardly tapered lip **33**. This lip **33** serves as a mechanism to lock together base **2** and body **60**, once the two are joined together, while allowing rotation therebetween.

Referring to FIGS. **3–4**, there is seen the body **60** which is generally cylindrical in shape and defines a base **62** and walls **64**, where walls **64** define a circular bore **65** adapted to receive an oversized can or cup, or, as illustrated, a container **100** disposed within a removable insulation sleeve **102**. In a preferred embodiment illustrated in FIG. **3–4**, walls **64** define a cylindrical bore **65** having substantially identical diameters at their top and bottom ends. In an alternate embodiment, walls **64** may be inwardly tapered at their upper terminal ends so as to define a smaller upper diameter than that diameter defined at base **62**. In such an alternate embodiment, walls **64** may be expanded by manipulation of the user when inserting a container in bore **65**. Such expansion may be facilitated via one or more slots or grooves **69** formed in walls **64** as illustrated in the Figures in a clam shell arrangement so as to define independently moveable sections. The purpose of the above described alternate embodiment of walls **64** is to snugly retain container **100** when utilizing an insulation sleeve **102**. As might be expected, such retention feature is especially helpful when the holder is used in a moving vehicle. This feature also provides for a snug fit with a variety of containers of varying diameters, particularly those containers defining a conical shape.

Other means are also envisioned within the spirit of the invention to accomplish the retention of a container **100**. In yet another embodiment, the uppermost portion of wall **84** may be provided with a toothed or serrated edge in order to better grasp irregular or coned shaped containers.

By reference to FIG. **4**, the bottom surface **71** of base **62** defines an axially disposed shaft **40** which is adapted to cooperate with shaft **23** and bore **30** as formed in base **2** and as described above. In the illustrated embodiment, shaft **40** is configured to fit around shaft **23**, when compressed, and within cylindrical bore **30** such that the upper lip **74** of shaft **40** contacts planar ring **29**. Similarly, surface **71** is brought into an abutting relationship with the upper surface **4** of base **2**. Shaft **40** itself defines a cylindrical bore **79** therethrough adapted to receive shaft **23**. Once shaft **23** is forced through bore **79** in shaft **40**, the upper end **24** of each of the separate elements **37** defining shaft **23** expand outwardly, thereby securely locking shaft **23** in bore **79** via locking lips **33**.

As described above, one difficulty presented by oversized holders is their inability to fit within a beverage rack or tray **80** which is secured to a wall or dash. This problem is addressed by the off-center placement of shaft **40** and cooperative shaft **23** which provides for the eccentric movement of body **60** via base **2**. In such a fashion, conventionally sized beverage trays or racks may be utilized even when closely secured to a wall, dash or other attachment surface by rotating body **60** to an offset position vis-a-vis base **2** so as to provide the necessary clearance between body **60** and the attachment wall or dash.

It is envisioned that body **60** may be rotatably held in place via base **2** by the close fit therebetween. In one embodiment, the friction between the contact surfaces of base **2** and body **60** will serve to hold these elements in a relative pivotal relationship. Alternatively, the lowermost surface **71** of body **60** may be provided with a series of indentation, **43** which receive complementary/protrusion **91** formed in base **2**. In such a fashion, a desired position between base **2** and body **60** may be maintained.

Although particular detailed embodiments of the apparatus and method have been described herein, it should be understood that the invention is not restricted to the details of the preferred embodiment. Many changes in design, composition, configuration and dimensions are possible without departing from the spirit and scope of the instant invention.

What is claimed is:

1. An adapter to allow an oversized container to be used in a beverage tray having recesses smaller than the diameter of the container comprising:

a cylindrically shaped base having an upper mounting surface and a lower surface, where said upper surface is provided with an eccentrically placed opening about which are concentrically situated a series of raised protrusions, where said opening is further provided with a first coupling means to couple said base to a body so as to allow for rotation therebetween, where said base includes an outwardly biased flange cooperative with a linear spring on said base and pivotable in a groove formed in said base; and

said body adapted to receive said oversized container, where said body defines a cylindrical bore partially disposed therethrough and a mounting base, where the body is provided with a second means about mounting base cooperative with said coupling means to rotatably join together the base and body, where said second means is provided with a series of concentric apertures cooperative with the protrusions disposed on said base so as to rotatably lock the body in a desired position vis-a-vis said base.

**2.** The adapter of claim **1** wherein walls defining the bore of said body contain means to allow said walls to flex outwardly so as to accommodate containers of varying diameters.

**3.** The adapter of claim **2** wherein said flexing means includes at least one slot formed in walls defining the base.

**4.** The adapter of claim **1** wherein said first coupling means comprises a countersunk shaft concentrically disposed within a ring in said base so as to define an annulus.

**5.** The adapter of claim **4** wherein said shaft is comprised of a plurality of axially disposed, independently moveable



elements defining a bottom and a top, where said bottom edge contacts said concentric ring and said top edge defines an outwardly projecting lip.

**6.** The adapter of claim **4** wherein said shaft is rotatably receivable in a second bore formed in said body.

**7.** The adapter of claim **1** wherein said base and said body are eccentrically joined together.

**8.** A device for stabilizing a container of a large base diameter in a cup-holder recess having a smaller diameter than the base of the container, said device comprising:

a tubular support base having a diameter slightly smaller than the diameter of the cup-holder recess, where said base is disposed about a longitudinal axis and includes a plurality of hingedly attached flanges in said base cooperative with at least one radially biased element on said base adapted to create a pressure between the base and the recess;

a body defining a cylindrical bore partially disposed therethrough of a diameter slightly greater than the diameter of the cup holder and an end piece, where said body is rotatably coupled to said base via a stem extending downwardly from said end piece, wherein said body defines a wall comprised of at least two independently moveable sections defined by at least one slit formed in said wall.

**9.** The device of claim **8** where said base is eccentrically rotatable vis-a-vis said body.

* * * * *

# Exhibit 7

US009220349B1

(12) **United States Patent**
**Cashin et al.**

(10) **Patent No.: US 9,220,349 B1**
(45) **Date of Patent: Dec. 29, 2015**

(54) **CUP HOLDER ADAPTOR**

(71) Applicants: **James A Cashin**, San Luis Obispo, CA (US); **Gregory M. Chambers**, San Luis Obispo, CA (US)

(72) Inventors: **James A Cashin**, San Luis Obispo, CA (US); **Gregory M. Chambers**, San Luis Obispo, CA (US)

(73) Assignee: **James A. Cashin**, San Luis Obispo, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **14/663,409**

(22) Filed: **Mar. 19, 2015**

(51) **Int. Cl.**

| | |
|---|---|
| ***A47K 1/08*** | (2006.01) |
| ***A47C 7/72*** | (2006.01) |
| ***F16B 2/04*** | (2006.01) |
| ***A47C 7/62*** | (2006.01) |

(52) **U.S. Cl.**
CPC ... ***A47C 7/72*** (2013.01); ***A47C 7/62*** (2013.01); ***F16B 2/04*** (2013.01)

(58) **Field of Classification Search**
USPC ............ 248/311.2, 311.3, 313; 224/556, 558, 224/926; 220/737
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

6,315,153 B1 * 11/2001 Osborn ............. A47G 23/0216 220/737
6,827,318 B1 * 12/2004 Hsu Li ................... B60R 11/00 224/558
8,757,572 B1 * 6/2014 Starr ....................... B60N 3/10 224/556
2005/0082455 A1 * 4/2005 Jones .................... B60N 3/107 248/311.2
2006/0118688 A1 * 6/2006 Kong .................... B60N 3/108 248/311.2
2007/0221805 A1 * 9/2007 Baek ..................... B60N 3/106 248/311.2
2009/0173862 A1 * 7/2009 Lota ........................ B60N 3/10 248/311.2

* cited by examiner

*Primary Examiner* — Steven Marsh
(74) *Attorney, Agent, or Firm* — Andra M. Vaccaro

(57) **ABSTRACT**

An adapter for an existing cup holder in a theater for easily mounting a closed captioned device having a mounting rod or gooseneck while still providing the patron with a cup holder, comprises a base having a top side and a bottom side and at least two holes therein, wherein the mounting rod of the closed captioned device is mounted into the corresponding hole in the base, a cylindrical cup holder having an integral adjustment screw extending from the bottom thereof, which is fed through a corresponding hole in the base; and a clamping mechanism which moves in relation to the movement of the adjustment screw for temporarily clamping the adapter to the existing cup holder. When the cup holder is turned in a first direction, the clamping mechanism fixedly mounts the adapter into the existing cup holder. The adaptor may be removed by turning the cup holder in the opposite direction. Instead of or in addition to providing another cup holder, the patron may be provided with a tray, table, electronics holder or other accessory by using an accessory adaptor. Further, the adapter may be mounted to an armrest by turning the accessory holder so that it clamps onto the armrest.

**19 Claims, 7 Drawing Sheets**





24
30
28
70
12
27
20
38
22c
33
48
18
22d
58
56
31
32
26
16
14
36
22b
34
35
54
40
37
22a
60
10


FIG 1




FIG 2




FIG 3




FIG 4




FIG 6




FIG 5




FIG 7




FIG 8

# CUP HOLDER ADAPTOR

This invention relates to cup holders used in theaters and other venues.

## BACKGROUND OF THE INVENTION

Cup holders that are attached to armrests of seats to hold drinks are well known in the art. They may be used in theaters, at various venues including, but not limited to, sporting and concert venues, arenas, auditoriums, in cars and anywhere else that a cup holder may be needed (hereinafter all such venues shall be interchangeably referred to as "venues."). The cup holders may be permanently or semi-permanently attached to armrests or to a table adjacent to a seat. Cup holders also may vary in shape, diameter and depth.

With the passing of the 1990 Americans with Disabilities Act, Title III requirements, closed captioning (CC) and second language (SAP) features were added to many movies and venue events to provide patrons with hearing impairments the ability to enjoy the programs/movies/entertainment. Closed captioning (CC), for example, displays text for a patron. In a public venue, the text display may be distracting to non-accommodated patrons so that it is preferable that it does not appear on the audience screen nor be displayed in a manner that disturbs patrons adjacent or behind the accommodated patron or disturbs or block their view. Thus, a closed captioning device in intended to be visible to the accommodated patron only.

To comply with mandated ADA requirements, venues must provide captioning devices that take into account the variations in patrons' heights, obstructions of aisle access, obstructions or interferences with the views of other patrons, costs and the ability of a patron to install and adjust the display device. Some display devices are mounted on an adjustable gooseneck or support rod that then must be mounted to the patron's chair and adjusted according to the optimal location for the viewer or attached by some other means.

Since most movie theaters and many venues include cup holders, some close captioning devices use an existing cup holder located in or adjacent to the patron's seat to secure the closed captioning or SAP device. Since some closed captioning display devices are top heavy, a cup holder may lack sufficient stability to support the display device. In addition, cup holders can vary in diameter and depth so that some display devices may not fit into the existing cup holders. In some instances, it may be difficult for a patron to install a closed captioning display device into a venue's cup holder by him/herself.

In order to be ADA compliant in the United States, a mounted closed captioning device must not interfere with the ingress and egress of the patron using the device nor any of the other patrons in the venue should an emergency evacuation of the venue be required.

Further, when a closed captioning device is mounted within an existing cup holder of a patron, that patron will no longer be able to use that cup holder to hold his or her drink. Thus, there is a need for an adaptive cup holder device that can hold a closed captioning device and still provide a cup holder for drinks while still being ADA compliant.

With the advent of more sophisticated food and drink offerings at various venues, there also is need for a cup holder than can hold items in addition to drinks or display devices without having to replace the entire existing cup holder.

The present invention addresses the need of an hearing impaired ADA venue patron by providing a portable, adjustable, self-installable adapter that can securely grip the inside



of an existing cup holder which provides both a secure attachment for a closed captioned or SAP device and a new cup-holder so that there is no inconvenience to the hearing impaired patron at all caused by the use of the closed captioned or SAP device.

## SUMMARY OF THE INVENTION

The present invention is an adapter for an existing cup holder in a theater for easily mounting other accessory devices. By way of example and not limitation, the adapter of the present invention comprises a base which can rigidly mount accessory devices such as a closed captioned device as well as provide other accessories such as, but not limited to, a replacement cup holder. The present invention easily can be temporarily and securely attached to and detached from an existing cup holder or armrest.

A preferred embodiment of the present invention comprises a base having a top side and a bottom side and at least two holes therein, wherein one of the holes is used to mount the rod or gooseneck of a close captioned device. A cup holder or other accessory having an integral adjustment screw extending from the bottom thereof is fed through the other hole in the base. A clamping mechanism is fixedly attached to the base and movable mounted onto the adjustment screw for temporarily clamping the adapter to an existing cup holder. When the adapter cup holder or other accessory is turned in a first direction, the clamping mechanism opens and when it is turned in a contrary direction, it closes. In a preferred embodiment, when the clamping mechanism opens, it creates friction against the sides of an existing cup holder thereby holding the adapter in place such that the adapter is temporarily securely mounted in the existing cup holder. The adaptor may be later removed by turning the adapter cup holder in the opposite direction. In an alternative embodiment where there is no existing cup holder, the adapter is temporarily securely mounted onto an armrest or other stationary area, by turning the accessory holder so that the clamping mechanism can grasp onto the armrest or other stationary area. The adapter may later be removed by turning the accessory holder in the opposite direction to release the clamping mechanism.

In a preferred embodiment, the clamping mechanism comprises a plurality of preferably equi-spaced pivot assemblies that can pivot open and close. The pivot assemblies comprise a plurality of pivot arms which are movably attached to the bottom of the base on the end closest to the base. The clamping mechanism also includes a threaded drive hub that is moveably mounted onto the integral adjustment screw that extends from the bottom of the base. The drive hub has a plurality of arms that in a preferred embodiment correspond in number to the number of pivot arms moveably attached to the base. In a preferred embodiment, there is at least one tooth extending from each of the arms of the drive hub. In that preferred embodiment, each of the pivot arms has at least one channel into which the tooth or teeth of the corresponding drive hub arm can travel. In alternate embodiments of the present invention, the adaptor further comprises an accessory adaptor for mounting a tray, table, box, electronics holder or other type of holder to the base. In order to be ADA complaint, the adapter when fully mounted will not hinder emergency egress.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is an exploded perspective view of a preferred embodiment of a cup holder adapter according to the present

invention where the top is shown on the right side of FIG. **1** and the bottom is shown on the left side of FIG. **1**.

FIG. **2** is a perspective view of an assembled preferred embodiment of the present invention in which the bottom flaps are in a fully closed position.

FIG. **3** is a top plan view of a preferred embodiment of the present invention.

FIG. **4** is a bottom plan view of a preferred embodiment of the present invention showing the bottom flaps in a closed position.

FIG. **5** is an exterior plan view of a preferred flap of the present invention.

FIG. **6** is an interior plan view of the preferred flap of the present invention shown in FIG. **5**.

FIG. **7** is a perspective view of a preferred embodiment of the present invention showing the bottom flaps in an opened position.

FIG. **8** is a cross-sectional side open view of a preferred embodiment of the adapter of the present invention installed into an existing cup holder in a venue, wherein the existing cup holder and arm in which the cup holder is installed are shown in phantom.

## DETAILED DESCRIPTION OF THE INVENTION

Referring to FIGS. **1-6**, a preferred embodiment of a cup holder adapter **10** of the present invention is shown. In FIG. **1**, cup holder adapter **10** comprises a base **12** having a top **14** and a bottom **16** and which, in a preferred embodiment of the present invention, has two holes **18** and **20** extending through the top **14** and bottom **16** thereof. In alternate embodiments (not shown), the base **12** may have just one hole, no holes or multiple holes going therethrough. In a preferred embodiment, the base **12** may be teardrop-shaped (as shown) or a rounded diamond shape; however, any shape that provides a means for securing the adapter of the invention to an existing cup holder while also being capable of supporting a closed captioned display device and/or one or more other accessory holders, so that all may be used. In alternate embodiments, the base could have a different shape to accommodate other accessories such as a tray, table or some other structure that can hold concession or other items for the user.

Referring more particularly to FIGS. **1**, **2**, **3**, **4**, **7** and **8** which show an embodiment in which a closed captioned device is mounted to the adapter, a mounting hole **20** in base **12** is used for securely mounting a gooseneck or a support rod **70** for a close captioned device (not shown). In a preferred embodiment the gooseneck or support rod **70**, may be secured to the base through a screw (not shown) mounted through the base. Alternatively, when a closed captioned device is not used, mounting hole **20** may be used to temporarily and securely mount other types of accessories to the base **12**. Alternatively, there may be other holes placed in the base to attach accessories in addition to a closed captioned device.

In a preferred embodiment such as shown in FIGS. **1-7**, the cup holder adapter **10** of the present invention also comprises an accessory holder **24**. In a preferred embodiment, holder **24** is either cylindrical or tapered into the shape of a cup, although any shape capable of holding a large soft drink, other concession stand purchase or any other type of item may be used. In a preferred embodiment, holder **24** comprises a circular inside bottom **25** (such as shown in FIG. **3**) which is surrounded by a circular wall **28** that together form a cylindrical compartment for holding a cup, soda can or other object. In a preferred embodiment, on the open end **27** of holder **24**, the circular wall **28** has elevations **30** on the outside thereof. The elevations **30** make the holder **24** easier to grasp and turn for someone with poor manual dexterity. In a preferred embodiment, the elevations **30** are mounted equal distances around the circumference of the wall **28**.

In a preferred embodiment, proximate the outside bottom **32** of holder **24**, the holder **24** is indented (as reflected by the area **31** on holder **24**) so as to fit within a reciprocal indention (not shown) in the top **14** of base **12**, such that the non-indented portion of holder **24** will rest on the top of base **12** when it is fully assembled. In alternate embodiments, no indentions are required.

In a preferred embodiment, at the center of bottom **32** of a holder **24**, there is an integral adjustment screw **26** extending from therefrom. In a preferred embodiment, the integral adjustment screw **26** is fed through an opening **18** in base **12** so that screw **26** extends through the base and extends from the bottom **16** of base **12** (as shown in FIGS. **2** and **7**.) In a preferred embodiment such as shown in FIG. **1**, an O-ring **33** is placed around the integral adjustment screw **26** between the top **14** of base **12** and the bottom of holder **24**. In a preferred embodiment, the O-ring **33** cushions the holder **24** and also provides friction against the loosening of the clamping mechanism **60** as described in more detail below.

In a preferred embodiment such as shown in FIG. **1**, the holder **24** with integral adjustment screw **26** and O-ring **33** are held in place in base **12** by another O-ring **35**.

In a preferred embodiment such as shown in FIGS. **2** and **7** (see also FIGS. **5** and **6**), the cup holder adapter **10** also comprises a clamping mechanism **60** located on the underside thereof. In a preferred embodiment, the clamping mechanism comprises a plurality of pivot arm assemblies **22** *a, b, c* and *d* which are mechanically mounted to the bottom **16** thereof proximate to hole **18** and a drive hub **40**, although any mechanically controllable clamping mechanism may be used that can extend and withdraw so as to hold the adapter **10** in place within an existing cup holder.

In a preferred embodiment, each pivot arm assembly **22** comprises a pivot arm body **34** and a pivot arm pad **36** at the bottom thereof. In a preferred embodiment, the pivot arm body **34** and the pivot arm pad are one piece. In a preferred embodiment, each pivot arm pad **36** is shaped so that the outside **38** thereof will rest against the inside surface of any cylindrical or square cup holder such as is shown in FIG. **8**. The pivot arm pad **36** provides both cushioning and retention friction when an assembled cup holder adapter **10** is installed into a cup holder as also shown in FIG. **8**. In a preferred embodiment, the pivot arm pad may be comprised of rubber, or plastic or any other materially that will not degrade significantly over repetitive use and which will adapt to minor surface variations.

In a preferred embodiment such as is shown in FIGS. **5** and **6**, the pivot arm assemblies **22** are mounted into pivot retainers **48** which are molded into the bottom **16** of base **12**. The pivot arm assemblies include a notch **50** and bevel **52** arrangement such that one side of the top of the assembly can be slipped into a pivot retainer and then the other side can be slipped into the corresponding pivot retainer for that arm so that the arm can be locked into place without the need for any tools. In alternative embodiments, other known methods of creating a pivoting arm can be used.

In preferred embodiments such as are shown in FIGS. **1**, **2**, **4** and **7**, the drive hub **40** of clamping mechanism **60** has a threaded center hole which is threaded onto the end of the integral adjustment screw **26**. In a preferred embodiment, the drive hub **40** has at least 4 arms **54** extending perpendicular therefrom. In a preferred embodiment, each drive arm **54** comprises one or more teeth **56** extending from the end thereof. In a preferred embodiment, drive hub **40** has two

teeth **56** extending from the end thereof as shown in FIGS. **1**, **2**, **4** and **7**. In an alternative preferred embodiment (not shown), there is only one tooth **56** extending from the middle of the end of each arm **54**. In other alternative embodiments, only some of the drive hubs arms have teeth or may have no teeth extending therefrom.

On the inside of each of the pivot arm assemblies **22**, there are one or more guide tracks **58** into which a corresponding tooth **56** on the end of each of the corresponding arms **54** of the drive hub **40**, travels. In alternative embodiments in which the drive hub arms have no teeth, the end of the arms are shaped so that they may fit entirely within the guide track.

When the cup holder assembly **24** of adapter **10** is turned towards the base (which in a preferred embodiment is clockwise), the drive hub **40** travels up adjustment screw **26** towards the bottom **16** of base **12** causing the pivot arm assemblies **22** to be forced outwards. As the drive hub **40** travels away from the base **12** (which in a preferred embodiment is counterclockwise), the pivot arm assemblies **22** start to close inwardly. A retention O-ring **37** is placed at the bottom of adjustment screw **26** to prevent the threaded drive hub **40** from detaching from the adjustment screw **26** and to keep teeth **56** from coming out of the guide tracks **58** in pivot arms **22**.

When the cup holder adapter **10** of the present invention is used, it is installed into an existing cup holder by placing the adapter **10** directly on top of an existing cup holder, such as is shown in FIG. **8**. In a preferred embodiment, a close captioned device is already attached thereto. The adapter **10** is temporarily securely mounted to the existing cup holder by turning the holder **24** in a direction (which in a preferred embodiment is clockwise) that causes the threaded drive hub **40** to move upward until it can no longer be turned. The turning motion forces each of the pivot arm assemblies **22** outward against the existing cup holder inside walls, thereby clamping the present invention into an existing cup holder. To remove the cup holder adapter the adapter is turned in an opposite direction (which in a preferred embodiment is counterclockwise), which drives the threaded drive hub **40** downward thereby releasing the clamping pressure and making it so that the adapter may be removed.

In an alternate preferred embodiment instead of a cylindrical cup holder assembly **24** such as is shown in FIGS. **1**-**8**, the holder may be, but is not limited to, a folding or rigid tray table, a popcorn holder, an electronics holder, or other accessory or food holder that a patron may require provided it either has an integral adjustment screw such as screw **26** or there is an accessory adapter having an integral adjustment screw that can be moved in a clockwise and counterclockwise direction to open and close a clamping mechanism **60** affixed to the bottom thereof for temporarily and securely mounting the holder to an existing cup holder.

Once assembled, one of the advantages of the present invention is that it does not require the use of any tools to be installed by a user. Another advantage is that it does not require venues to replace their existing cup holders to comply with ADA rules. A further advantage is that the adapter provides a replacement cup holder as well as a base for mounting a closed captioned display or other accessory(s).

An alternative embodiment of the present invention (not shown) provides for inclusion of an additional or alternative mounting hole for mounting other accessories such as a tray, table, box or other type of holder that does not hinder emergency egress.

In a further alternative embodiment of the present invention (not shown), the clamping mechanism and the installation of the drive hub are reversed so that the adapter can clamp onto an armrest or other stationary support device that does not have an existing cup holder. This alternative embodiment provides a cup holder or stable means to attach another accessory where none previously existed.

Although the invention is intended for theater use, the invention may have other applications. By way of example and not limitation, the adapter of the present invention may be used in a vehicle to provide a cup holder. In addition, it can also be used in a vehicle to mount a close captioned device in a car by mounting it within the vehicle's cuphholder.

The presently disclosed embodiments are to be considered in all respects as illustrative and not restrictive, the scope of the invention being indicated by the appended claims rather than the foregoing description, and all changes which come within the meaning and range of equivalency of the claims are therefore intended to be embraced therein. The embodiments and methods described above are exemplary embodiments and methods of the present invention. And while these particular embodiments and techniques of the present invention have been shown and illustrated herein, it will be understood that many changes, substitutions and/or modifications may be made by those persons skilled in the art. It will be appreciated from the above description of presently preferred embodiments and techniques that other configurations and techniques are possible and within the scope of the present invention. Thus, the present invention is not intended to be limited to the particular embodiments and techniques specifically discussed hereinabove.

The invention claimed is:

**1**. An adapter for an existing cup holder in a theater for temporarily mounting a closed captioned device having a mounting rod or gooseneck, comprising:

- a base having a top side and a bottom side and at least two holes therein, wherein the mounting rod of the closed captioned device is mounted into a corresponding hole in the base;
- a cup holder having an integral adjustment screw extending from the bottom thereof, which is fed through the corresponding hole in the base;
- a clamping mechanism which moves in relation to the movement of the adjustment screw for temporarily clamping the adapter to the existing cup holder;
- whereby when the cup holder is turned in a first direction, the clamping mechanism opens such that the adapter is temporarily securely mounted into the existing cup holder and whereby the adaptor may be removed by moving the cup holder in a direction opposite the first direction.

**2**. The adapter of claim **1** wherein the clamping mechanism comprises a plurality of equi-spaced pivot assemblies which can open and close to respectively mount and remove the adapter from the existing cup holder.

**3**. The adaptor of claim **2** wherein the pivot assemblies comprise a plurality of pivot arms, each arm having a proximal end and a distal end, wherein the distal ends of each arm comprise mounting pads, whereby each pivot arm is pivotably mounted to the bottom of the base at its proximal end, which is the end closest to the base.

**4**. The adapter of claim **1** wherein the clamping mechanism comprises a plurality of equi-spaced pivot arms, each are having a proximal and a distal end with a center portion extending between the ends, which are pivotably mounted at the proximal ends to the bottom of the base, each pivot arm having at least one guide channel extending along the center portion thereof, and a drive hub which is moveable threaded onto the integral adjustment screw, the drive hub comprising arms corresponding to the number of pivot arms, wherein the

arm of each drive hub arm travels up and down within the corresponding guide channel in the corresponding pivot arm.

**5**. The adapter of claim **1**, further comprising an accessory adaptor for mounting a tray, table, box, electronics holder or other type of holder.

**6**. An adapter for mounting a closed captioned device having a mounting rod or gooseneck, comprising:

a base having a top side and a bottom side and at least two holes therein, wherein the mounting rod of the closed captioned device is mounted into a corresponding hole in the base;

an accessory having an integral adjustment screw extending from the bottom thereof, which is fed through a corresponding hole in the base;

a clamping mechanism which moves in relation to the movement of the adjustment screw for temporarily mounting the adapter to another object;

whereby when the accessory is turned in a first direction, the clamping mechanism opens such that the adapter is clamped onto the other object and whereby the adaptor may be removed by moving the accessory in a direction opposite the first direction.

**7**. The adapter of claim **6** wherein the clamping mechanism comprises a plurality of pivot assemblies which can fixedly open and close.

**8**. The adaptor of claim **7** wherein the pivot assemblies comprise a plurality of pivot arms, each arm having a proximal end and a distal end, wherein the distal ends of each arm comprise mounting pads and means for mounting the pivot arms to the bottom of the base on the proximal ends which are the ends of the pivot arms closest to the base.

**9**. The adapter of claim **6** wherein the clamping mechanism comprises a plurality of pivot arms which have a channel into which a teeth of a drive hub can travel, the drive hub being moveably threaded onto the integral adjustment screw.

**10**. The adapter of claim **6**, wherein the accessory may be a cup holder, tray, table, box, electronics holder or other accessory holder that does not hinder emergency egress.

**11**. A removable adapter for adding additional accessories to an existing cup holder or armrest, comprising:

a base having a top side and a bottom side and at least one hole therein,

an accessory having a bottom side comprising an integral adjustment screw extending therefrom, which is fed through a corresponding hole in the base;

a clamping mechanism which moves in relation to the movement of the adjustment screw for temporarily clamping the adapter to the existing cup holder or armrest;

whereby when the accessory is turned in a first direction, the clamping mechanism temporarily securely mounts the adapter to the existing cup holder or armrest and whereby the adaptor may be removed by turning the accessory in a direction opposite the first direction.

**12**. The adapter of claim **11**, wherein the accessory may be a cup holder, tray, table, box, electronics holder or other accessory holder.

**13**. The adapter of claim **11** wherein the clamping mechanism comprises:

a plurality of pivot arms pivotably attached to the base and a drive hub threaded onto the integral screw and comprising arms which are movable mounted within a substantially vertical channel on the pivot arms, whereby when the accessory holder is turned in the first direction, the integral screw drives the hub to force the plurality of pivot arms to clamp the adaptor to the existing cup holder or armrest and when the accessory holder is turned in a direction opposite the first direction, the adapter is unclamped.

**14**. The adapter of claim **11** in which the base further comprises a mounting hole for mounting a personal display device.

**15**. The adapter of claim **11** in which the base further comprises holes, slots or an accessory adapter to which additional accessories or devices may be attached or mounted.

**16**. The adapter of claim **13** wherein each of the drive hub arms comprise at least one tooth which fits within the corresponding channel on the pivot arms.

**17**. The adapter of claim **13** wherein each of the drive hub arms comprise at least two teeth each of which fits within the corresponding channel on the pivot arms.

**18**. The adapter of claim **13** wherein each pivot arm comprises a distal end comprising a pad.

**19**. The adapter of claim **11** further comprising a retention device for preventing the clamping mechanism from becoming detached from the adjustment screw.

* * * * *

# Exhibit 8

amazon
Delivering to Chino 91710
Update location
Automotive Parts & Accessories
Search Amazon
EN
Hello, sign in
Account & Lists
Returns
& Orders
0

All | Medical Care | Best Sellers | Amazon Basics | New Releases | Registry | Today's Deals | Gift Cards | Smart Home | Groceries

Automotive | Amazon Autos | Your Garage | Deals & Rebates | Best Sellers | Parts | Accessories | Tools & Equipment | Car Care

Browse jump starters
Shop now

## Consider these available items



Aiishow Multifunctional 2-in-1 Car Cup Holder Expander Adapter -
3.7 ★★★★☆ 32
$11.18

Automotive › Interior Accessories › Cup Holders





Click to see full view

# 2 in 1 Multifunctional 2 Cup Holder,Car Cup Holder Expander Adapter,Mount Extender with 360° Rotating Adjustable Base to Hold Most 17oz - 20 oz Bottles Drink Coffee up to 5.9" (2 in 1 Cup Holder)

Brand: CARSA
3.1 ★★★☆☆ 455 ratings

Currently unavailable.
We don't know when or if this item will be back in stock.

| | |
|---|---|
| **Color** | Black |
| **Material** | Polycarbonate |
| **Brand** | CARSA |
| **Product Dimensions** | 3.35"L x 3.35"W x 7.32"H |
| **Manufacturer** | CARSA |

## About this item

- ★CREATIVITY- You can keep 2 cups drinks at the same time. It's also a storage box or holder for your smartphone, glasses, cables, coins, keys etc.Innovative with a dual purpose adjustable brackets design keeps your phone and drinks at the same location at the place that it is the most comfortable for you to reach.
- ★2-IN-1 DESIGN - The bracket is equipped with two storage cups by adjusting the rotatable base, small in size and large in capacity, for the purpose of saving car space, and can hold two drinks at the same time.
- ★360° ROTATING BASE - The base of the upper cup holder can rotates 360 degrees freely. The position can be shifted and adjusted according to the

**Currently unavailable.**
We don't know when or if this item will be back in stock.
Delivering to Chino 91710 - Update location

Add to List

Sponsored

space of the car body, which is the most comfortable place for you to reach your drink, and save car interior space.

- ★EXTENDER UPPER CUP MOUTH - Adapter works best with bottles/cups 3.0"-5.9" in diameter, fits most 20 oz water bottles. The cup body can be bounce off automaticly, also can be closed automatically when the cup holder is not in use to keep your car clean.
- ★SAFE WHILE DRIVING - This 2 IN 1 car cup holder will save you countless times from digging between the seat and center console to find your dropped cell phone, credit cards, money, keys, coins, pens, wallet, etc. Make your family and friends happy and safe during driving, perfect gift for the people that you care about.

› See more product details

Report an issue with this product or seller

## 4+ star item to consider



Amazon Basics Car Cup Holder Expander with Adjustable Base, Fits Large Bottles 3.4 to 3.8 in Diameter, Securely Holds Yeti, Hydro Flask and More, Black
★★★★☆ (3650)
$16.99

Sponsored

## Products related to this item Sponsored

Page 1 of 58



Cup Holder Expander for car 2 in 1 Multifunctional Car Cup Holder Extender Adapter ...
★★★★☆ 1,168
$17.99
prime



Car Cup Holder Phone Holder with Expandable Base, 2 in 1 Cup Phone Holder Adapter f...
★★★★½ 22
Amazon's Choice
$18.99
prime



JINKEY Upgrade 2 in 1 Multifunction Cup Holder Extender, 360°Adjustable Rotating Du...
★★★★☆ 10
$15.89
prime
Save 5% with coupon



DYLEN Car Cup Holder Expander, 2 in 1 Cup Holder Adapter Extender for Car with Expa...
★★★★½ 376
Limited time deal
-15% $16.99
List: ~~$19.99~~
prime



Car Cup Ho
Expander A
Base 2 in 1
Extender Du
★★☆☆☆
$14.99
prime
Save 5% with

## Frequently purchased items with fast delivery

Page 1 of 7



Reofrey 2-in-1 Multifunctional Car Cup Holder Expander Adapt…
26
Save 15%
$14.44
Typical: ~~$16.99~~
Lowest price in 30 days
Get it as soon as **Thursday, Oct 16**
FREE Shipping on orders over $35 shipped by Amazon



Humview Cup Holder Expander for car 2 in 1 Multifunctional Car Cup Holder Extender Adapter with Adjustable Base…
1,168
$17.99
Get it as soon as **Thursday, Oct 16**
FREE Shipping on orders over $35 shipped by Amazon



JINKEY Dual Cup Holder Expander for Car, 2 in 1 Multifunctional Large Car Cup Holder Expander Adapter with expanded…
133
$23.89
Get it as soon as **Thursday, Oct 16**
FREE Shipping on orders over $35 shipped by Amazon



KUPAO Multifunctional 2 in 1 Cup Holder Expander for car，DualCup Holder Extender with Adjustable Base,Fits Yeti, Hydro…
45
$19.99
Get it as soon as **Thursday, Oct 16**
FREE Shipping on orders over $35 shipped by Amazon



Car Cup Hol Carbon Fibe Drink Cup H 16oz Hot Cu Cups as We
$15.99
Get it as soon
**Oct 16**
FREE Shippin
$35 shipped b

**WARNING:**

CHOKING HAZARD -- This toy is a marble. Not for children under 3 yrs.

## Product Description

Multifunctional cup holder
--You can keep 2 cups drinks at the same time. It's also a storage box or holder for your smartphone, glasses, cables, coins, keys etc.
--Innovative with a dual purpose adjustable brackets design keeps your phone and drinks at the same location at the place that it is the most comfortable for you to reach.
--Most importantly, you don't have to worry about messing up your car, because once you place the items into the holder, they will stay firmly even during the most dangerous driving conditions.
--Make a perfect gift for yourself, your family, and friends!
Specification:
Product Color: Black
Product Size: 18.6*8.5cm
Material: PC
NOTE:
Since the cup holder is thin and long and consists of two parts, Please compare the height of the cup body and the cup holder before placing an order. This cup holder is not suitable for a particularly long and thin cup body, and it is better to put a cup of the size of KFC or McDonald's in it, so as to ensure that the cup above will not tip over when driving.

# Product information

## Technical Details

| | |
|---|---|
| **Color** | Black |
| **Material** | Polycarbonate |
| **Brand** | CARSA |
| **Product Dimensions** | 3.35"L x 3.35"W x 7.32"H |
| **Manufacturer** | CARSA |
| **UPC** | 791568967729 |
| **Model** | CARSA |
| **Item Weight** | 1.65 pounds |
| **Item model number** | CARSA |
| **Manufacturer Part Number** | CARSA |

## Additional Information

| | |
|---|---|
| **ASIN** | B08H86W469 |
| **Customer Reviews** | 3.1 455 ratings<br>3.1 out of 5 stars |
| **Best Sellers Rank** | #1,244,241 in Automotive (See Top 100 in Automotive)<br>#4,869 in Automotive Cup Holders |
| **Date First Available** | September 2, 2020 |

## Warranty & Support

Amazon.com Return Policy: **Amazon.com Voluntary 30-Day Return Guarantee:** You can return many items you have purchased within 30 days following delivery of the item to you. Our Voluntary 30-Day Return

Guarantee does not affect your legal right of withdrawal in any way. You can find out more about the exceptions and conditions here.

## Feedback

Would you like to **tell us about a lower price?**

## What's in the box

- CARSA

## Related products with free delivery on eligible orders

Page 1 of 26

Sponsored | Try Prime for unlimited fast, free shipping



2 Pack Newest 2 in 1 Phone Mount for Car Cup Holder with Adjustable Base, Phone Ho...
497
$35.99
prime



Car Cup Holder Expander, 3-in-1 Cup Holder for with Detachable Food Tray…
$21.99
prime



Car Cup Holder Expander Adjustable Base 2 in 1 Drink Holder Extender Dual Car Cup…
1
$14.99
prime
Save 5% with coupon



2-in-1 Multifunctional Car Cup Holder Expander, Large Auto Dual Cup Holder Expander...
2
$22.99
prime



Car Cup Hol Holder with Base, 2 in 1 Holder Adap
$18.99
prime

## Videos

Help others learn more about this product by uploading a video!

Upload your video

## Customer reviews

3.1 out of 5

455 global ratings

| | |
|---|---|
| 5 star | 30% |
| 4 star | 14% |
| 3 star | 21% |
| 2 star | 11% |
| 1 star | 24% |

How customer reviews and ratings work

## Review this product

Share your thoughts with other customers

Write a customer review

## Customers say

Customers report that the cup holder is not stable, falling over constantly, and doesn't fit properly in cup holders, being too small for most cups. Moreover, the build quality and functionality receive mixed reviews, with some saying it works well while others find it absolutely useless. Additionally, the rotational speed feature receives mixed feedback, with one customer appreciating the swivel action while another finds it bulky.

Generated from the text of customer reviews

**Select to learn more**

Quality | Functionality | Rotational speed | Build quality | Stability | Fit | Cup holder stability | Size

## Top reviews from the United States

Amazon Customer

**Sturdy and perfect for a fatter cups with handles.**

Reviewed in the United States on September 30, 2023

Verified Purchase

I love the variability in the size. And I love having the little cubby underneath. Too small for most cups but great to put things in. The to portion is easily moveable and I sometimes put my charging phone in it without any worry of damaging the wire. Surprisingly holds my big hydro flask but I don't temp fate too much with that.

One person found this helpful

Helpful | Report

Sponsored

Nicholas Nokovic

**Terrible product**

Reviewed in the United States on February 6, 2022

**Verified Purchase**

The premise behind this product is great. However, this product was not executed well. I have a 2016 Honda Pilot and the base of this product was so small, it didn't even come close to fitting. I attempted to use the extra foam that came with this, and even that didn't make it fit. I then had my husband attempt to use foam to make it fit. It still did not with about 2 inches of foam. It was wobbly and unsteady for my 24 oz Yeti mug. My cup holders are large, just not large enough for the yeti mugs I use regularly.

One person found this helpful

Helpful | Report

Nana Purple

**Wouldn't purchase again or recommend to anyone else.**

Reviewed in the United States on May 23, 2021

**Verified Purchase**

It was not sturdy. The part that was the cup holder was to small to hold a cup. So it is moves around if not position against something. Disappointed 😞 with it.

4 people found this helpful

Helpful | Report

AROLAND

**Only cup holder I found that would fit a yeti coffee mug.**

Reviewed in the United States on June 8, 2021

**Verified Purchase**

Love how easy it was to install. It was the only apparatus that would hold my yeti coffee mug. Love that you can add another bottle or can. It's not very secure within the cup holder. Wish it was a little more steady but please overall. Better than holding it while driving or sitting it somewhere where it would've easily fallen, which it had many times before. A reasonable solution for transporting my yeti mug.

5 people found this helpful

Helpful | Report

Chad bamf

**Not for tall cups**

Reviewed in the United States on March 5, 2021

**Verified Purchase**

It was designed decent, however the plastic is thin, and one side of each cup holder is spring loaded side which is good if the spring were a bit stronger, furthermore if your cup is much higher than a coffee mug, your cup will fly out going around a corner as the height of the cup gripping sides either isn't tall enough as your cup will be to top heavy for it, or the spring tension holding the cup is to weak to hold your nice tall coffee mug. So there is definitely room for improvement

8 people found this helpful

Helpful | Report

Autiana Hall

★★★★★ **Functional**

Reviewed in the United States on July 4, 2021

**Verified Purchase**

Functional but not as useful for me. I hve a large cup I was hoping would fit, but in my cup holder it was not stable enough. It seems the cushions were not able to help. If I wanted to keep it I could have added additional padding, but I didn't want to tape it to my cup holder. Good for water bottles and maybe sbux cups, since they have a smaller base

4 people found this helpful

Helpful | Report

Amazon Customer

★☆☆☆☆ **Absolutely useless**

Reviewed in the United States on February 17, 2022

**Verified Purchase**

This product was not at all what I thought it was going to be. First it did not have any adjustable way to make it fit into my cup holder. It was loose and wobbled all over the place. The bottom piece that you insert into your car cup holder didn't fit even a small water bottle, so that was useless. The top part that swivels around was bulky and really hard to use. The sides were difficult to adjust and it had layers so when you put a cup in there, even if you closed each of the sides tightly, drinks would still fall out. That is most likely because the base didn't fit right to begin with. There have to be better ones out there and I will keep looking.

2 people found this helpful

Helpful | Report

Robin Davis

★★★☆☆ **Not an exact fit**

Reviewed in the United States on January 19, 2024

**Verified Purchase**

Fits loosely in car cupholder. There are sticky cushions to attach.

Helpful | Report

**See more reviews ›**

Back to top

**Get to Know Us**
- Careers
- Amazon Newsletter
- About Amazon
- Accessibility
- Sustainability
- Press Center
- Investor Relations
- Amazon Devices
- Amazon Science

**Make Money with Us**
- Sell on Amazon
- Sell apps on Amazon
- Supply to Amazon
- Protect & Build Your Brand
- Become an Affiliate
- Become a Delivery Driver
- Start a Package Delivery Business
- Advertise Your Products
- Self-Publish with Us
- Become an Amazon Hub Partner

**Amazon Payment Products**
- Amazon Visa
- Amazon Store Card
- Amazon Secured Card
- Amazon Business Card
- Shop with Points
- Credit Card Marketplace
- Reload Your Balance
- Gift Cards
- Amazon Currency Converter

**Let Us Help You**
- Your Account
- Your Orders
- Shipping Rates & Policies
- Amazon Prime
- Returns & Replacements
- Manage Your Content and Devices
- Recalls and Product Safety Alerts
- Registry & Gift List
- Help

› See More Ways to Make Money

amazon English United States

Amazon Music
Stream millions of songs

Amazon Ads
Reach customers wherever they spend their time

6pm
Score deals on fashion brands

AbeBooks
Books, art & collectibles

ACX
Audiobook Publishing Made Easy

Sell on Amazon
Start a Selling Account

Veeqo
Shipping Software Inventory Management

Amazon Business
Everything For Your Business

Amazon Fresh
Groceries & More Right To Your Door

AmazonGlobal
Ship Orders Internationally

Home Services
Experienced Pros Happiness Guarantee

Amazon Web Services
Scalable Cloud Computing Services

Audible
Listen to Books & Original Audio Performances

Box Office Mojo
Find Movie Box Office Data

Goodreads
Book reviews & recommendations

IMDb
Movies, TV & Celebrities

IMDbPro
Get Info Entertainment Professionals Need

Kindle Direct Publishing
Indie Digital & Print Publishing Made Easy

Amazon Photos
Unlimited Photo Storage Free With Prime

Prime Video Direct
Video Distribution Made Easy

Shopbop
Designer Fashion Brands

Amazon Resale
Great Deals on Quality Used Products

Whole Foods Market
America's Healthiest Grocery Store

Woot!
Deals and Shenanigans

Zappos
Shoes & Clothing

Ring
Smart Home Security Systems

eero WiFi
Stream 4K Video in Every Room

Blink
Smart Security for Every Home

Neighbors App
Real-Time Crime & Safety Alerts

Amazon Subscription Boxes
Top subscription boxes – right to your door

PillPack
Pharmacy Simplified

Amazon Renewed
Like-new products you can trust

Conditions of Use   Privacy Notice   Consumer Health Data Privacy Disclosure   Your Ads Privacy Choices

© 1996-2025, Amazon.com, Inc. or its affiliates

# Exhibit 9

amazon.in
Delivering to Mumbai 400001
Update location
Car & Motorbike
Search Amazon.in
EN
Hello, sign in
Account & Lists
Returns
& Orders
0

All | Fresh | MX Player | Sell | Bestsellers | Today's Deals | Mobiles | Electronics | New Releases | Customer Service | Prime

**Car & Motorbike** | Best Sellers | Motorbike Accessories & Parts | Car & Motorbike Care | Car Accessories | Car Parts

Car & Motorbike › Car Accessories › Interior Accessories › Consoles & Organizers





Click to see full view

# Automaze 5 in 1 Smart Adjustable Auto Car Multi Cup Holder Tumbler for All Car/Sunglasses/Cup/Mobile/Storage, Car Interior Accessories

Visit the Automaze Store

4.0 1 rating

Returns Policy | Top Brand | Secure transaction

Currently unavailable.
We don't know when or if this item will be back in stock.

**Colour** Black, Brown
**Brand** Automaze
**Manufacturer** Prayash Tradewell

## About this item

- 360 degree rotation for top 3 layers, increases more space to hold drinks, snacks or other items, more space saving to make your car interior tidy and clean
- One equals several storage boxes, enough space to meet your different needs, compatible with almost all types of car
- Insert coin, place fragrances and different accessories beneath the circular plate, 5 in one holder : SmartPhone, Drink & Thumbler Holder, dark glasses
- The automobile five in one multi cup holder sits simply between your seat and your console, providing your automobile with extra-large cup holders, equipped match mugs with handles and many of space for storing

Report an issue with this product

amazon business
**Are you a business? Get GST invoice and bulk discounts**
**Sign in/Create a free business account**

**Currently unavailable.**
We don't know when or if this item will be back in stock.
Delivering to Mumbai 400001 - Update location

Add to Wish List

Sponsored

Shop now

Sponsored

Top Brand **Automaze**

- 80% positive ratings from 10K+ customers
- 10K+ recent orders from this brand
- 9+ years on Amazon

## Product description

Description:

5 in one holder: Smart Phone, Drink & Tumbler Holder, Dark glasses Holder, Card & Coin Holder, Small accessories Holder. Use EVA (sponge) when the gap is wider than 1cm.

(12mm thick) Auto multi useful holder is found that it's straight forward install and use. Suitable for many of the automotive. Compact style and trendy. Adjustable automobile multi cup holder.

360 degree rotation for top 3 layers, increases more space to hold drinks, snacks or other items, more space saving to make your car interior tidy and clean.

# Product information

### Technical Details

| | |
|---|---|
| **Manufacturer** | Prayash Tradewell |
| **Brand** | Automaze |
| **Product Dimensions** | 10 x 10 x 4 cm; 200 g |
| **Item part number** | Multi.Cup.Holder |
| **Manufacturer Part Number** | Multi.Cup.Holder |
| **Colour** | Black, Brown |
| **Manufacturer** | Prayash Tradewell |
| **Item Weight** | 200 g |

### Additional Information

| | |
|---|---|
| **ASIN** | B084GTHNWC |
| **Customer Reviews** | 4.0 ★★★★☆ 1 rating<br>4.0 out of 5 stars |
| **Date First Available** | 4 February 2020 |
| **Item Dimensions LxWxH** | 10 x 10 x 4 Centimeters |

### Feedback

Would you like to **tell us about a lower price?**

## What is in the box?

- 1 X Drink Holder

# Customer reviews

★★★★☆ 4 out of 5

1 global rating

| | |
|---|---|
| 5 star | 0% |
| 4 star | 100% |
| 3 star | 0% |
| 2 star | 0% |

**No customer reviews**

There are 0 customer reviews and 1 customer rating.

1 star 0%

How are ratings calculated?

## Review this product

Share your thoughts with other customers

Write a product review

Sponsored

## See personalized recommendations

Sign in

New customer? Start here.

Back to top

**Get to Know Us**

About Amazon
Careers
Press Releases
Amazon Science

**Connect with Us**

Facebook
Twitter
Instagram

**Make Money with Us**

Sell on Amazon
Sell under Amazon Accelerator
Protect and Build Your Brand
Amazon Global Selling
Supply to Amazon
Become an Affiliate
Fulfilment by Amazon
Advertise Your Products
Amazon Pay on Merchants

**Let Us Help You**

Your Account
Returns Centre
Recalls and Product Safety Alerts
100% Purchase Protection
Amazon App Download
Help

amazon English India

AbeBooks
Books, art
& collectibles

Amazon Web Services
Scalable Cloud
Computing Services

Audible
Download
Audio Books

IMDb
Movies, TV
& Celebrities

Shopbop
Designer
Fashion Brands

Amazon Business
Everything For
Your Business

Prime Now
2-Hour Delivery
on Everyday Items

Amazon Prime Music
100 million songs, ad-free
Over 15 million podcast episodes

Conditions of Use & Sale Privacy Notice Interest-Based Ads
© 1996-2025, Amazon.com, Inc. or its affiliates

# Exhibit 10

| **Claim Limitation ('539 Patent)** | **Disclosure in Prior Art (Exhibits)** | | | | | | | **Analysis** |
|---|---|---|---|---|---|---|---|---|
| | Exhibit 3 Expander Product | Exhibit 4 Dahlquist, II | Exhibit 5 Fan | Exhibit 6 Whitman | Exhibit 7 Cashin | Exhibit 8 CARSA Cupholder | Exhibit 9 Automaze Cupholder | |
| **1.** A cupholder adapter configured for use with an existing cupholder on a vehicle, the cupholder adapter comprising: | Yes | Yes | Yes | Yes | -- | Yes | Yes | Anticipated by Expander (§102); also obvious in view of Expander combined with Fan and CARSA and Automaze. |
| a cylindrical cupholder having a hollow internal volume; | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Anticipated by Expander (§102); cumulative anticipation across all references. |
| a collar attached to a top portion of the cylindrical cupholder, wherein the collar includes a plurality of tabs extending perpendicularly into the hollow internal volume; | Yes | -- | Yes | -- | -- | -- | -- | Anticipated by Expander and Fan (§102). |
| an adapter base coupled to the cylindrical cupholder, wherein the adapter base includes a plurality of legs configured to expand and retract such that the diameter of the adapter base is configured to expand from a minimum diameter to a maximum diameter; | Yes | -- (adapter base only) | Yes | -- (adapter base only) | Yes | -- (adapter base only) | -- (adapter base only) | Anticipated by Expander, Fan, and Cashin (§102); obvious in view of Expander + CARSA/Automaze (§103). |
| an attachment member positioned on a bottom surface of the cylindrical cupholder, wherein the attachment member enables the coupling of the adapter base and the cylindrical cupholder; and, | Yes | -- | Yes | Yes | Yes | -- | -- | Anticipated by Expander (§102); also obvious in view of Expander + Fan/Whitman/Cashin (§103). |
| wherein the attachment member comprises a number of mounting holes and the adapter base or a spacer comprises a number of protrusions, at least one protrusion of the number of protrusions having a hole, wherein a mounting hole of the number of mounting holes is configured to align with the hole such that | Yes | -- | Yes | Yes | Yes | -- | -- | Anticipated by Expander (§102); obvious in view of Expander + Fan/Whitman/Cashin (§103). |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| a fastener can extend through the mounting hole and the hole of the at least one protrusion of the number of protrusions. | | | | | | | | |
| **2.** The cupholder adapter of claim 1, wherein the plurality of legs are configured to expand and retract via rotation of the cupholder. | Yes | -- | Yes | -- | Yes | -- | -- | Anticipated by Expander and Fan(§102). |
| **3.** The cupholder adapter of claim 1, wherein the cylindrical cupholder is configured to be coupled to the adapter base in a variety of configurations including at least (a) the cylindrical cupholder's axis is aligned with the adapter base's axis; and (b) the cylindrical cupholder's axis is not aligned with the adapter base's axis. | -- | Yes | Yes | -- | -- | Yes | Yes | Anticipated by Fan, CARSA, and Automaze (§102); obvious in view of Expander + Dahlquist/Fan/CARSA/ Automaze (§103). |
| **4.** The cupholder adapter of claim 1, wherein the number of mounting holes of the attachment member enable multiple configurations of the cylindrical cupholder in relation to the adapter base including an aligned configuration and off-set configuration. | -- | -- | Yes | -- | -- | Yes | Yes | Obvious in view of Expander + Fan/Cashin CARSA, and Automaze (§103). |
| **5.** The cupholder adapter of claim 1, further comprising at least one spacer positioned between the cylindrical cupholder and the adapter base. | -- | -- | Yes | -- | Yes | -- | -- | Anticipated by Fan and Cashin (§102); obvious in view of Expander + Fan/Cashin(§103). |
| **6.** The cupholder adapter of claim 2, wherein a screw gear is provided to enable the movement of the plurality of legs via rotation. | Yes | -- | Yes | -- | Yes | -- | -- | Anticipated by Expander, Fan, and Cashin (§102). |
| **7.** The cupholder adapter of claim 1, wherein the minimum diameter is 2.6 inches and the maximum diameter is 3.8 inches. | Yes | -- | -- | -- | -- | Yes | Yes | Anticipated by Expander (§102); obvious in view of Expander + CARSA/Automaze/common industry practice (§103). |