Exhibit 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TOPFIRE LIMITED, a foreign )
company; HK MIUSON INTERNATIONAL, ) CASE NO.:
CO., LIMITED, a foreign company, et) 2:23-cv-02503-DAD-JDP
al., )
 )
        Plaintiffs, )
 )
   VS. )
 )
 )
BENJAMIN D. COOK, an individual; )
and DOES 1 through 10, inclusive. )
 )
       Defendant. )
_____)

**CERTIFIED COPY**

REMOTE DEPOSITION OF AMIR SADJADPOUR

Via Zoom Deposition

Wednesday, November 12, 2025

Job No.: 101964

Reported by:

Shirley R. Lynn, C.S.R. NO. 13784

```
 1                  UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF CALIFORNIA

 3

 4   TOPFIRE LIMITED, a foreign        )
     company; HK MIUSON INTERNATIONAL, ) CASE NO.:
 5   CO., LIMITED, a foreign company, et) 2:23-cv-02503-DAD-JDP
     al.,                              )
 6                                     )
                    Plaintiffs,        )
 7                                     )
          VS.                          )
 8                                     )
                                       )
 9   BENJAMIN D. COOK, an individual;  )
     and DOES 1 through 10, inclusive. )
10                                     )
                    Defendant.         )
11   _____)

12

13          REMOTE DEPOSITION OF AMIR SADJADPOUR, taken on

14   behalf of the Plaintiff, via Zoom videoconference,

15   commencing at 10:02 a.m., Wednesday, November 12, 2025,

16   before Shirley R. Lynn, Certified Shorthand Reporter,

17   License No. 13784, for the State of California, pursuant to

18   Notice.

19

20

21

22

23

24

25
```

1  A   No.
2  Q   Okay. How much time did you -- well, strike
3  that.
4      Can I ask: Where are you right now, sir?
5  A   Pasadena, California.
6  Q   Okay. Okay. Are you at counsel's office? By
7  "counsel," I mean Mr. Louis Teran, the attorney for the
8  defender in this case.
9  A   No.
10 Q   Okay. Are you in your office or at your
11 residence right now?
12 A   I'm in my home office.
13 Q   Can I ask: How much time did you spend in
14 preparation for this deposition?
15 A   I mean, the initial time spent when I prepared
16 the expert witness report is something around 14 hours.
17 Q   All right. And what about in preparation to
18 come to this deposition, you know, specifically for this
19 deposition?
20 A   Around ten hours.
21 Q   So you spent ten hours for this deposition?
22 A   I spent, yeah, the time to review the material
23 that was presented by the Court since I prepared the
24 report.
25 Q   Okay. And -- but you said you prepared -- you

```
 1     A    No.
 2     Q    So as we sit here right now, you don't have it?
 3     A    That's correct.
 4     Q    Okay.  Do you know where it is?
 5     A    I don't know where it is right now, but, I
 6  mean, counsel can respond to that.
 7     Q    That's fine.
 8          Amir, is it correct that -- at least it is your
 9  testimony that you don't have it in your possession and
10  that I should ask counsel where that is?
11     A    That's correct.
12     Q    When did you last have possession of this
13  device that you examined?
14     A    Let me check my record.
15          MR. TERAN:  Amir, if you know, you can provide
16  an answer.  If you don't know, that's okay too.
17          THE WITNESS:  Yeah, I'm just checking.
18          At this point, I -- I'm not too sure about
19  that.
20   BY MR. CHEN:
21     Q    Okay.  Are you aware that -- as you read and
22  testified yesterday, that one of the requests is for you
23  to bring to the deposition all devices and materials to
24  which you considered and relied in forming this opinion?
25     A    Let me check.
```

1        THE COURT REPORTER:  At --
2        THE WITNESS:  I do not have this item in my
3   possession.
4        THE COURT REPORTER:  Thank you.
5   BY MR. CHEN:
6   Q    Is there a reason why you don't have this item
7   in your possession?
8   A    I've returned that back to the counsel.
9   Q    When did you return that back to counsel?
10  A    After I was done preparing the exce- -- the
11  expert witness on my account.
12  Q    Okay.  And so would it be about a day after you
13  prepared your expert report or about a week after you
14  prepared your expert report?
15  A    I do not recall the exact date, but it was a
16  few days after -- when -- when I prepared the report.
17  Q    But it is your testimony that you spent
18  two hours yesterday reading through this notice --
19  Amended Notice of Deposition.
20       Then sure you must have read Request No. 15,
21  did you not?
22       MR. TERAN:  Are you badgering the witness,
23  Counsel?
24       MR. CHEN:  Please let me do my examination.
25       MR. TERAN:  No, I'm not going to let you badger

```
 1  the witness.  Are you accusing him of wrongdoing?
 2          MR. CHEN:  I'm not.
 3          MR. TERAN:  He already testified that he spent
 4  two hours reading the Amended Notice of Deposition.  He
 5  already explained to you what he has in front of him and
 6  what he doesn't have in front of him.
 7          MR. CHEN:  I would like to continue with my
 8  examination, Counsel.
 9          MR. TERAN:  You can continue with your
10  examination.
11          MR. CHEN:  If you feel like --
12          MR. TERAN:  Do not badger the witness.
13          MR. CHEN:  If you feel --
14          MR. TERAN:  Do not badger the witness.
15          MR. CHEN:  If you feel like badgering --
16          MR. TERAN:  Do not try to -- Counsel --
17  Counsel, hold on.
18          MR. CHEN:  I'm not going to let you --
19          MR. TERAN:  Hold on.  Hold on, Counsel.
20          MR. CHEN:  -- prolong my deposition --
21          MR. TERAN:  Hold on, Counsel.
22          MR. CHEN:  -- any more, sir.
23          MR. TERAN:  The court reporter can only take
24  one person at a time.
25          MR. CHEN:  And you can --
```

1        (Court reporter clarification.)
2           MR. TERAN:  Hold on.  Mr. Chen, do not badger
3    the witness.  Do not accuse him of wrongdoing.  Do not
4    intimidate the witness.  Simply ask your factual
5    questions, and he'll be there ready to provide answers.
6           MR. CHEN:  Are you done, Counsel?
7           MR. TERAN:  Yes.
8           MR. CHEN:  Okay.
9           Court Reporter, can you read that question back
10   to the witness?
11          THE COURT REPORTER:  Yeah.  Just let me scroll
12   one second.
13             (The following record was read:
14             "But it is your testimony that you
15             spent two hours yesterday reading
16             through this notice -- amended notice
17             of deposition.
18             "Then sure you must have read
19             Request No. 15, did you not?")
20          THE WITNESS:  I did.
21   BY MR. CHEN:
22       Q    Okay.  Thank you.
23            Is there a reason why you don't have the device
24   with you right now?
25          MR. TERAN:  Asked and answered.  I believe he

1  testified that he gave it to me.
2   BY MR. CHEN:
3       Q    You can answer, please.
4       A    I returned the device back to the counsel.
5       Q    Did you make any attempt to contact counsel so
6  that the device would be ready for examination today by
7  you -- with you in my examination of you?
8       A    I did not request the item to be returned back
9  to me.
10      Q    Okay.  Thank you.
11           Asking now to refer to the expert report, which
12 is Exhibit 2.
13           I'm now going to ask you to look at page 3,
14 which I will scroll to page 3.
15           Okay.  Looking at page 3 --
16      A    Your page 3 and the version of the document --
17 give me one moment.  Sorry.  I was --
18      Q    It's the same --
19      A    Yeah, got it.  Yeah.
20      Q    Okay.  On the top, in paragraph C --
21      A    Uh-huh.
22      Q    -- you stated -- because you said this is your
23 opinion; right? -- that a sample of an adjustable car
24 cup holder expander sold by Plaintiff, Topfire --
25           (Court reporter clarification.)

```
 1            And, I mean, yeah, that's what I can say.
 2       Q    Okay.
 3            MR. CHEN:  I'm going to go ahead and move again
 4  to strike the answer as nonresponsive.
 5            But okay.  I will ask one more time.  At the
 6  risk of not badgering the witness, I certainly will move
 7  on.  Okay?
 8   BY MR. CHEN:
 9       Q    I'm going to ask again.  The question is very
10  clear.
11            Do you know what is the ASIN part number that
12  is associated with the item to which you exammed in this
13  report?  A hint is that part number is within this
14  particular paragraph that you prepared.
15            MR. TERAN:  Objection.  Vague and ambiguous.
16  Unintelligible.
17            Go ahead, Amir, if you have an answer.
18            THE WITNESS:  I believe the ASIN number --
19  yeah, I can correct myself.  The ASIN number is the one
20  ending with "8Y."
21   BY MR. CHEN:
22       Q    Okay.  Okay.  And how did you come to realize
23  that it is AY [sic]?  Were you receiving any indications
24  from counsel just now?
25       A    No.
```

1       I am not sure whether this product had the ASIN
2  number as H -- ending with 8Y or the other four ASIN
3  numbers noted the -- on the report.  I do not remember
4  that right now.
5       Q    Okay.  Okay.
6            MR. CHEN:  Court Reporter, can you read his
7  answer back to me, please?
8            THE COURT REPORTER:  Yes.
9            (The following record was read:
10           "Answer:  The product that I reviewed
11           included two of this car cup holder
12           expanders.  And considering that the
13           ASIN number SLL contains apparently
14           one large cup holder, that will be
15           not the one that is reviewed.
16           "I am not sure whether this
17           product had the ASIN number ending
18           with 8Y" -- sorry.  Hold on  -- "8Y
19           or the other four ASIN numbers noted
20           on the report.  I do not remember
21           that right now.")
22   BY MR. CHEN:
23      Q    Do you know if any of the six part numbers --
24  if they are associated with the same type -- let me
25  strike that.

1  Q   And tell me about what part of your experience
2  to which you based or relied on in forming your opinion
3  of the definition "integrate."
4  A   My engineering experience.
5  Q   Can you be a little more specific if there's
6  any clear aspect of your engineering experience that
7  lends to your ability to opine on the definition here?
8  A   I mean, you're asking me specific engineering
9  skills, or what exactly the question is about?
10        MR. CHEN:  Court Reporter, can you read that
11 question back to the witness, please?
12        THE COURT REPORTER:  Yes.
13            (The following record was read:
14        "Question:  Okay.  All right.  So
15        other than your knowledge and
16        experience, are there any other data
17        or materials or facts or anything you
18        relied on to opine on a definition of
19        'integrate,' as you so state here?")
20        MR. TERAN:  Let me interject really quick,
21 Amir.
22        MR. CHEN:  Please don't interject, Counsel.
23        MR. TERAN:  I will interject.
24        MR. CHEN:  Just state your objection, sir.
25        MR. TERAN:  I will interject.  I will

1   Q   So the experience to which you relied on is
2   referring to the examination and the observation of the
3   accused products.
4       Are there -- did you perform, also, a teardown
5   on this product that you received?
6       MR. TERAN: Objection. Vague and ambiguous as
7   to the word "teardown."
8   BY MR. CHEN:
9   Q   Well, I can ask the question again.
10      Thank you for your answer. I note that your
11  experience is based on your observation and examination
12  of the product.
13      Is it also based on you doing any physical
14  removal of any parts of this accused device that you
15  received?
16  A   I was careful not to break the accused product
17  sample that I received. But I tried removing or
18  detaching the tab and the circular lip device by hand,
19  and I could not. So my opinion is that the two features
20  of the accused product that I just mentioned are
21  integrated to form or blend into a unified whole.
22      MR. TERAN: I'm sorry. I didn't hear the last
23  part. You said "unified whole"?
24      THE WITNESS: Yes.
25      MR. TERAN: Okay.

```
 1      A    I believe it's also that question to some
 2  extent.  The -- the En- -- the common -- I mean, the
 3  common English definition for the word -- for the term
 4  "integrate" is, as noted here, to form or blend into a
 5  functioning or unified whole.
 6      Q    I see.
 7           So is it correct that you are saying the
 8  knowledge that you are relying on comes from the common
 9  language English definition of "integrate," which is to
10  form or to blend?  Am I correct?
11      A    That's correct.
12      Q    And where did you get this common English
13  language definition?  Can I ask?
14           MR. TERAN:  Is that a question, can you ask?
15           Amir, I mean, if he can ask that question, you
16  can let him know.
17           MR. CHEN:  All right.  I'll take that as a
18  mockery and an objection.  And that's fine, you know, if
19  you find it amusing.
20   BY MR. CHEN:
21      Q    Amir, can I ask:  Where did you get this common
22  definition of "integrate" that you just defined?
23      A    I do not recall a specific dictionary, if you
24  are referring to that, if your question is about a
25  particular version of a dictionary that I have used to
```

1  look up the term.  But I believe, I mean, Oxford
2  language dictionary would define the term "integrate" as
3  combining with another so that they become a whole.
4     Q    Got it.
5          You got this from a dictionary, which could be
6  Oxford; correct?
7     A    Yes.
8     Q    Are there any other knowledge -- strike that.
9          When you reviewed the accused product -- and I
10 understand you have already opined that -- to the extent
11 parts are separate -- did you perform or try to analyze
12 if the separated parts are of the same or different
13 materials?
14    A    I focused my review on the specifics of the
15 Claim No. 1 of the patent of Mr. Teran's client.
16         MR. CHEN:  I really have to strike that as
17 nonresponsive.
18         Court Reporter, can you just read that question
19 back to Amir?
20         MR. TERAN:  Yeah, so really quick, let me
21 explain this to Amir.
22         He says he needs to strike it, it doesn't mean
23 anything.  Your answer is still fine.  I'm not sure why
24 he says that.  It -- it's a very improper thing to say
25 in a deposition.  He has no authority to strike

1    A    I did.
2    Q    And was there anything in the patent that help
3  you came up with the word "blend," as you so defined --
4  used to define here?
5    A    As I noted before, I do not recall that.
6    Q    Okay.  What about the words "unified whole"?
7  Can you tell me what -- where you came up with the term
8  "unified whole" -- or strike that.
9         Let me ask:  What is the basis of the term a
10 "unified whole" that you came up with here?
11   A    So as I repeated, as I quoted, the Oxford
12 language dictionary definition for the term "integrate,"
13 that is one -- one dictionary for reference you may use.
14 The term is defined as: "Combine one thing with another
15 so that they become a whole."
16   Q    All right.  The next one is paragraph 35.  It
17 reads, "More specifically, these parts appear to be
18 attached by glue, welding, sonic welding, or other
19 process."
20        Do you read that?
21   A    Yeah.
22   Q    Okay.  And as it is a sentence that seems to be
23 describing the interaction between collar and the tabs,
24 can I ask you:  What is it that you were able to observe
25 that you were able to determine that the tabs and the

```
 1   BY MR. CHEN:
 2       Q    You can answer.
 3       A    Yeah, the parts appear to be attached by any or
 4   all of the processes noted.
 5       Q    Okay.  So help me out.
 6            What did you observe?  Okay.  Explain that to
 7   me.  What did you observed that helped you formed the
 8   opinion that they appear to be attached by glue or
 9   welding or sonic welding or other processes?
10            MR. TERAN:  Objection.  Asked and answered.  I
11   think that was explained very thoroughly already.
12            But go ahead, Amir.  If you can provide him
13   this one last explanation, it's fine.
14            THE WITNESS:  Sure.
15            So when we were reviewing -- let me check.  Was
16   it -- Mr. Chen, was it paragraph No. 32 that we were
17   focusing on a minute ago?
18   BY MR. CHEN:
19       Q    I'm asking you questions relating to
20   paragraph 35.
21            Would you --
22       A    I know --
23       Q    -- like me to --
24       A    Yeah.
25       Q    -- read the question back?
```

```
 1      A    No, no, no.  I know that.  But, yeah, before
 2   this, I believe you exhausted that question already.
 3   You asked me whether -- I mean, how I formed the opinion
 4   that these features of your product or these parts of
 5   your -- of the accused product are integrated to each
 6   other.
 7           And I explained that I -- I performed an
 8   examination trying to disattach the collar and the lip,
 9   the circular lip device and the tabs, from each other
10   without breaking the accused product, and I could not.
11      Q    Okay.  And you are saying that is why they
12   appear -- the collar and the tabs, that they appear to
13   be attached by glue, welding, sonic welding, or other
14   process; correct?
15      A    Correct.
16      Q    So if we were to go back to 33 -- and it says,
17   "More specifically, the tabs and the circular lip device
18   of the accused product appear to be separate parts."
19           So, now, help me understand.  How did you come
20   to the conclusion that the tabs and the collar appear to
21   be separate parts?
22      A    They appear -- I mean, by the physical
23   appearance of these parts.
24      Q    Can you help me ex- -- understand more?  What
25   did you observe physically?
```

1  to ask again in a different way. Okay?
2   BY MR. CHEN:
3      Q    Is it correct that you observed a state of glue
4  or welding or sonic welding or other processes between
5  the tab and the collar on the accused device?
6      A    You know, the question is rather subtle and
7  ambiguous. Let me repeat what I said and is noted on my
8  report.
9           After close inspection, I determined that the
10 collar or circular lip device and the tabs are
11 permanently attached to the cup holder of the accused
12 product. More specifically, these parts appear to be
13 attached by glue, welding, sonic welding, or other
14 process.
15          As such, the tabs or cantilever structures are
16 integrated to the circular lip device or collar. So
17 that includes, I mean, a par- -- parts appearing to be
18 attached to each other by the methods noted here or
19 other processes.
20          And, again, the opinion was formed based on my
21 examination of trying to separate them apart without
22 breaking the accused product sample that I received.
23     Q    Going back to paragraph -- paragraph 5,
24 Subsection C, top of page 3.
25          So my question to you is that to the extent

```
 1                    CERTIFICATE

 2                         OF

 3                  SHORTHAND REPORTER

 4                    *   *   *   *

 5

 6         I, Shirley Lynn, CSR No. 13784, a Certified

 7   Shorthand Reporter in and for the State of California,

 8   do hereby certify:

 9         That prior to being examined, the witness AMIR

10   SADJADPOUR, named in the foregoing proceedings declared

11   under penalty of perjury to testify to the truth, the

12   whole truth, and nothing but the truth;

13         That said proceedings were taken by me in

14   shorthand at the time and place herein named and were

15   thereafter transcribed into typewriting under my

16   direction, said transcript being a true and correct

17   transcription of my shorthand notes;

18         Pursuant to Federal Rule 30(e), transcript

19   review was not requested;

20         I further certify that I have no interest in

21   the outcome of this action.

22         Dated:  December 3, 2025

23

24         _____
           SHIRLEY LYNN
25         CSR NO. 13784
```